FILED
2021 May-18 PM 06:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 8

STATEMENT OF ACTUARIAL OPINION

Annual Statement of the ProAssurance Specialty Insurance Company, Inc.

For the Year Ended December 31, 2017

Page 1 of 5

## IDENTIFICATION

I, James D. Hurley, am associated with Willis Towers Watson. I am a member of the American Academy of Actuaries and meet its qualification standards for signing statements of actuarial opinion regarding property and casualty insurance company statutory annual statements. I am an Associate of the Casualty Actuarial Society. I was appointed by the Board of Directors of ProAssurance Specialty Insurance Company, Inc. ("Company") on May 31, 2017 to render this opinion.

## SCOPE

I have examined the reserves listed in Exhibit A, as shown in the Annual Statement of the Company as prepared for filing with state regulatory officials, as of December 31, 2017. The items in Exhibit A, where applicable, reflect the disclosure items 8 through 13 in Exhibit B. The applicable accounting standards are statutory accounting practices prescribed or permitted by the insurance regulatory authority of Alabama, as per Note 1 in the Company's Notes to Financial Statements.

My examination of these loss and loss adjustment expense reserves was based upon data and related information prepared by the Company. In this regard, I relied on Mr. Edward L. Rand, Jr., Treasurer, ProAssurance Specialty Insurance Company, Inc. as to the accuracy and completeness of the data. I evaluated the data used directly in my analysis for reasonableness and consistency. My evaluation did not reveal any data points materially affecting my analysis that fell outside of the range of reasonable possibilities. In performing this evaluation, I have assumed that the Company (a) used its best efforts to supply accurate and complete data and (b) did not knowingly provide any inaccurate data. I also reconciled the net and gross paid and case loss and allocated loss adjustment expense amounts, and earned premium as of December 31, 2017 used in my analysis against Schedule P - Part 1 of the current Annual Statement. In other respects, my examination included the use of such actuarial assumptions and methods and such tests of calculations as I considered necessary.

My examination was based on data and related information through the valuation date of December 31, 2017. My opinion was formed based on information provided to me through the review date of February 22, 2018 and my projections do not take into account any developments subsequent to this date.

My review was limited to the items in Exhibit A and did not include an analysis of any income statement items or other balance sheet items. My opinion on the reserves is based upon the assumption that all reserves are backed by valid assets which have suitably scheduled maturities and/or adequate liquidity to meet cash flow requirements.

## RELEVANT COMMENTS

Based solely on discussions with Company management and their description of the Company's ceded reinsurance, I am not aware of any reinsurance transaction that either has been or should have been accounted for as retroactive reinsurance or as financial reinsurance defined as contractual arrangements that do not include a transfer of both timing and underwriting risk.

My opinion on the loss and loss adjustment expense reserves net of ceded reinsurance assumes that all ceded reinsurance is valid and collectible. Substantially all of the Company's ceded loss and loss expense reserves are ceded to its affiliate which is rated secure by a reputable insurance rating agency. In addition, the Company has represented to me that it knows of no uncollectible reinsurance cessions. I have not anticipated any contingent liabilities that could arise if the reinsurers do not meet their obligations to the Company as reflected in the data and other information provided to me.

STATEMENT OF ACTUARIAL OPINION

Annual Statement of the ProAssurance Specialty Insurance Company, Inc.

For the Year Ended December 31, 2017

Page 2 of 5

The Company has represented to me that it has no unearned premium for long duration contracts, defined as single or fixed premium policies with coverage periods of thirteen months or greater which are non-cancelable and not subject to premium increase.

The Company does not discount loss and loss adjustment expense reserves.

Reserves are established gross of anticipated salvage and subrogation; however, these amounts are not expected to be material.

The Company does not participate in voluntary or involuntary pools.

I have reviewed the Company's exposure to asbestos and environmental claims. In my opinion, the chance of material liability related to asbestos and environmental claims is remote, since the Company did not write lines of business which are typically exposed to such losses.

The Company provides extended reporting coverage at no additional premium in the event of death, disability or qualifying retirement (DD&R) of an insured on a small number of its professional liability claims-made policies. The associated liability is fully ceded.

I have reviewed the calculation of IRIS Ratios 11, 12, and 13. No exceptional values were observed.

*Risk of Material Adverse Deviation*

In my evaluation, I considered the following risk factors which increase the uncertainty inherent in the Company's loss and loss adjustment expense reserves:

- long tail nature and high claim severity potential of the business, being predominantly medical professional liability

- prevalence and significant growth of excess and surplus coverage with small historical volume, limited historical data and associated volatile loss development patterns

- reinsurance leverage given the business is 100% reinsured

In consideration of the use of this opinion for purposes of solvency monitoring, I consider $6,696,883 to be material for this Company, calculated as 20% of policyholder surplus.

I believe that there are significant risks and uncertainties which could result in material adverse deviation in the Company's loss and loss adjustment expense reserves. Among the risks and uncertainties described above, I have identified the following as significant: reinsurance leverage, since the Company's total ceded reserves are large in relation to surplus although mitigated by the fact the cession is to a securely-rated affiliate; the Company's entry into new markets with limited historical experience; and the fact that the Company writes predominately, and has significantly grown, the medical professional liability excess and surplus lines coverage which is characterized by having a long tail. The absence of other significant risks and uncertainties from this listing does not imply that additional factors will not be identified in the future as having been a significant influence on the Company's reserves.

STATEMENT OF ACTUARIAL OPINION

Annual Statement of the ProAssurance Specialty Insurance Company, Inc.

For the Year Ended December 31, 2017

Page 3 of 5

## OPINION

In my opinion, the amounts recorded in the Annual Statement of the Company for the sum of items 1, 2, 5, 6 and 9 as well as the sum of items 3, 4, 5, 6 and 9 on Exhibit A:

a)  meet the requirements of the insurance laws of Alabama;

b)  are consistent with amounts computed in accordance with the Casualty Actuarial Society Statement of Principles Regarding Property and Casualty Unpaid Claim Estimates and relevant standards of practice promulgated by the Actuarial Standards Board; and

c)  make a reasonable provision for all unpaid loss and loss adjustment expense obligations of the Company under the terms of its contracts and agreements, including the reserve for yet-to-be-issued DD&R extended reporting coverage.

## VARIABILITY

In evaluating whether the reserves make a reasonable provision for unpaid losses and loss adjustment expenses, it is necessary to project future loss and loss adjustment expense payments. Actual future losses and loss adjustment expenses will not develop exactly as projected and may, in fact, vary significantly from the projections.

Further, my projections make no provision for extraordinary future emergence of new classes of losses or types of losses not sufficiently represented in the Company's historical data or which are not yet quantifiable.

An actuarial report, including underlying workpapers supporting the findings expressed in this Statement of Actuarial Opinion, will be provided to the Company to be retained for a period of seven years at its administrative offices and available for regulatory examination. This Statement of Actuarial Opinion is solely for the use of, and only to be relied upon by, the Company and the various state insurance departments with which it files its Annual Statement.

James D. Hurley, ACAS, MAAA
Willis Towers Watson
Five Concourse Parkway, Floor 18
Atlanta, Georgia 30328
678-684-0590
jim.hurley@willistowerswatson.com
February 24, 2018

STATEMENT OF ACTUARIAL OPINION

Annual Statement of the ProAssurance Specialty Insurance Company, Inc.

For the Year Ended December 31, 2017

Page 4 of 5

### Exhibit A: SCOPE

| Loss and Loss Adjustment Expense Reserves: | Amount |
|---|---|
| 1. Unpaid Losses (Liabilities, Surplus and Other Funds page, Col 1, Line 1) | $0 |
| 2. Unpaid Loss Adjustment Expenses (Liabilities, Surplus and Other Funds page, Col 1, Line 3) | $6,800,518 |
| 3. Unpaid Losses – Direct and Assumed (Should equal Schedule P, Part 1, Summary, Totals from Cols. 13 and 15, Line 12 * 1000) | $85,111,000 |
| 4. Unpaid Loss Adjustment Expenses – Direct and Assumed (Should equal Schedule P, Part 1, Summary, Totals from Cols. 17, 19 and 21, Line 12 * 1000) | $36,701,000 |
| 5. The Page 3 write-in item reserve, "Retroactive Reinsurance Reserve Assumed" | $0 |
| 6. Other Loss Reserve items on which the Appointed Actuary is expressing an Opinion (list separately) | $0 |

| | Amount |
|---|---|
| **Premium Reserves:** | |
| 7. Reserve for Direct and Assumed Unearned Premiums for Long Duration Contracts | $0 |
| 8. Reserve for Net Unearned Premiums for Long Duration Contracts | $0 |
| 9. Other Premium Reserve items on which the Appointed Actuary is expressing an Opinion (list separately)\ | |
| a. Extended Loss (DD&R) reserve – direct | $500,000 |
| b. Extended Loss (DD&R) reserve – net | $0 |

# STATEMENT OF ACTUARIAL OPINION

## Annual Statement of the ProAssurance Specialty Insurance Company, Inc.

### For the Year Ended December 31, 2017

Page 5 of 5

### **Exhibit B: DISCLOSURES**

Note:  Exhibit B should be completed for Net dollar amounts included in the SCOPE. If an answer would be different for Direct and Assumed amounts, identify and discuss the difference within RELEVANT COMMENTS.

| | | Column 1 | Column 2 | Column 3 | Column 4 |
|---|---|---|---|---|---|
| 1. | Name of the Appointed Actuary | | Hurley | James | D. |
| 2. | The Appointed Actuary's relationship to the Company. Enter E or C based upon the following: | | | | |
| |   E  if an Employee of Company or Group | | | | |
| |   C  if a Consultant | | | C | |
| 3. | The Appointed Actuary has the following designation: | | | | |
| |   F  if a Fellow of the Casualty Actuarial Society (FCAS) | | | | |
| |   A  if an Associate of the Casualty Actuarial Society (ACAS) | | | | |
| |   M  if not a Member of the Casualty Actuarial Society, but a Member of the American Academy of Actuaries (MAAA) approved by the Casualty Practice Council, as documented with the attached approval letter. | | | | |
| |   O  for Other | | | A | |
| 4. | Type of Opinion, as identified in the OPINION paragraph. Enter R, I, E, Q, or N based upon the following: | | | | |
| |   R  if Reasonable | | | | |
| |   I  if Inadequate or Deficient Provision | | | | |
| |   E  if Excessive or Redundant Provision | | | | |
| |   Q  if Qualified. Use Q when part of the OPINION is Qualified. | | | | |
| |   N  if No Opinion | | | R | |
| 5. | Materiality Standard expressed in US dollars (used to Answer Question #6) | $6,696,883 | | | |
| 6. | Are there significant risks that could result in Material Adverse Deviation? | | Yes [ x ] | [ ] | Not Applicable [  ] |
| 7. | Statutory Surplus (Liabilities, Surplus and Other Funds page Col 1, Line 37) | $33,484,416 | | | |
| 8. | Anticipated net salvage and subrogation included as a reduction to loss reserves as reported in Schedule P (should equal Part 1 Summary, Col 23, Line 12 * 1000) | $0 | | | |
| 9. | Discount included as a reduction to loss reserves and loss adjustment expense reserves as reported in Schedule P | | | | |
| |   9.1 Nontabular Discount [Notes, Line 32B23, (Amounts 1, 2, 3 & 4)], Electronic Filing Cols 1, 2, 3 & 4 | $0 | | | |
| |   9.2 Tabular Discount [Notes, Line 32A23, (Amounts 1 & 2)], Electronic Filing Col 1 & 2 | $0 | | | |
| 10. | The net reserves for losses and loss adjustment expenses for the Company's share of voluntary and involuntary underwriting pools' and associations' unpaid losses and loss adjustment expenses that are included in reserves shown on the Liabilities, Surplus and Other Funds page, Losses and Loss Adjustment Expenses lines. | $0 | | | |
| 11. | The net reserves for losses and loss adjustment expenses that the Company carries for the following liabilities included on the Liabilities, Surplus and Other Funds page, Losses and Loss Adjustment Expenses lines.* | | | | |
| |   11.1 Asbestos, as disclosed in the Notes to Financial Statements (Notes, Line 33A03D, ending net asbestos reserves for current year) Electronic Filing Col 5 | $0 | | | |
| |   11.2 Environmental, as disclosed in the Notes to Financial Statements (Notes, Line 33D03D, ending net environmental reserves for current year), Electronic Filing Col 5 | $0 | | | |
| 12. | The total claims made extended loss and loss adjustment expense reserve and unearned premium reserve (Greater than or equal to Schedule P Interrogatories). | | | | |
| |   12.1 Amount reported as loss and loss adjustment expense reserves - gross | $0 | | | |
| |   12.2 Amount reported as unearned premium reserves – direct | $500,000 | | | |
| 13. | Other items on which the Appointed Actuary is providing Relevant Comment (list separately) | $0 | | | |

* The reserves disclosed in item 11 above, should exclude amounts relating to contracts specifically written to cover asbestos and environmental exposures. Contracts specifically written to cover these exposures include Environmental Impairment Liability (post 1986), Asbestos Abatement, Pollution Legal Liability, Contractor's Pollution Liability, Consultant's Environmental Liability, and Pollution and Remediation Legal Liability.