FILED
2021 May-18  PM 06:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 18

3 8 9 5 4 2 0 1 8 2 0 1 0 0 1 0 0

**PROPERTY AND CASUALTY COMPANIES—ASSOCIATION EDITION**

# ANNUAL STATEMENT
**For the Year Ended December 31, 2018**
OF THE CONDITION AND AFFAIRS OF THE

# PROASSURANCE CASUALTY COMPANY

| | | | | |
|---|---|---|---|---|
| NAIC Group Code | 02698 , | 02698 | NAIC Company Code 38954 | Employer's ID Number 38-2317569 |
| | (Current Period) | (Prior Period) | | |

Organized under the Laws of **Michigan**, State of Domicile or Port of Entry **Michigan**

Country of Domicile **United States**

Incorporated/Organized **06/27/1980** Commenced Business **06/27/1980**

Statutory Home Office **2600 PROFESSIONALS DRIVE** , **OKEMOS, MI, USA 48864**
(Street and Number) (City or Town, State, Country and Zip Code)

Main Administrative Office **100 BROOKWOOD PLACE** **BIRMINGHAM, AL, USA 35209** **205-877-4400**
(Street and Number) (City or Town, State, Country and Zip Code) (Area Code) (Telephone Number)

Mail Address **PO BOX 590009** , **BIRMINGHAM, AL, USA 35259-0009**
(Street and Number or P.O. Box) (City or Town, State, Country and Zip Code)

Primary Location of Books and Records **100 BROOKWOOD PLACE** **BIRMINGHAM, AL, USA 35209** **205-877-4400**
(Street and Number) (City or Town, State, Country and Zip Code) (Area Code) (Telephone Number)

Internet Web Site Address **www.proassurance.com**

Statutory Statement Contact **ELAINE MARIE SPARKS** **615-301-1445**
(Name) (Area Code) (Telephone Number) (Extension)

**FinancialFilings@proassurance.com** **615-324-9169**
(E-Mail Address) (Fax Number)

## OFFICERS

| Name | Title | Name | Title |
|---|---|---|---|
| DARRYL KEITH THOMAS , | PRESIDENT, CHIEF CLAIMS OFFICER | KATHRYN ANNE NEVILLE , | SECRETARY |
| DANA SHANNON HENDRICKS # , | TREASURER | WILLIAM STANCIL STARNES , | CHAIRMAN |

## OTHER OFFICERS

| | | | |
|---|---|---|---|
| ROGER SMITH , | SENIOR VICE PRESIDENT | JEFFREY LYNN BOWLBY , | SENIOR VICE PRESIDENT |
| LAWRENCE KERRY COCHRAN , | VICE PRESIDENT | HOWARD HARLEY FRIEDMAN , | CHIEF UNDERWRITING OFFICER |
| FRANK BERRY O'NEIL , | SENIOR VICE PRESIDENT | EDWARD LEWIS RAND, JR. , | SENIOR VICE PRESIDENT |
| HAYES VANCE WHITESIDE, MD , | SENIOR VICE PRESIDENT | , | |

## DIRECTORS OR TRUSTEES

| | | | |
|---|---|---|---|
| HOWARD HARLEY FRIEDMAN | JEFFREY PATTON LISENBY | EDWARD LEWIS RAND, JR. | MICHAEL JOHN SEVERYN |
| WILLIAM STANCIL STARNES | DARRYL KEITH THOMAS | | |

State of ...........................ALABAMA.............................

County of ...........................JEFFERSON............................

ss

The officers of this reporting entity, being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

| | | |
|---|---|---|
| DARRYL KEITH THOMAS | KATHRYN ANNE NEVILLE | DANA SHANNON HENDRICKS |
| PRESIDENT | SECRETARY | TREASURER |

Subscribed and sworn to before me
this _____ day of _____,_____

a. Is this an original filing? Yes [ X ] No [  ]
b. If no:
1. State the amendment number _____
2. Date filed
3. Number of pages attached _____

JEAN H. NOOJIN,
APRIL 22, 2021

## NOTES TO FINANCIAL STATEMENTS

The Company has a remaining commitment of approximately $8,916,000 of the $10,000,000 to Park Cities Specialty Finance Fund L.P., a credit fund. Capital is expected to be called periodically over a two and a half year period beginning September 1, 2018.

The Company has a remaining commitment of approximately $2,417,513 of the $5,000,000 to Fenwick Brands Fund I, LLC., a strategy focused fund. Capital is expected to be called periodically over a five year period beginning August 16, 2017.

The Company has a remaining commitment of approximately $4,000,000 of the $5,000,000 committed to Ivoryton Opportunity Fund, LLC, a private equity fund. Capital is expected to be called periodically over a one year period.

The Company has a remaining commitment of approximately $5,000,000 of the $5,000,000 committed to Octagon CLO Opportunity Fund III, an opportunistic credit fund. Capital is expected to be called periodically over a five year period beginning on the effective date, yet to be declared.

Additionally, the Company has invested $62,698,003 in various Low Income Housing Tax Credit (LIHTC) limited partnerships accounted for under SSAP No. 93. See Note 5.K. for additional information. As of December 31, 2018, the Company has unfunded investments in these LIHTC limited partnerships that are expected to be settled as follows:

| | | |
|---|---|---|
| 2019 | $ | 71,873 |
| 2020 | | 46,154 |
| 2021 | | 39,161 |
| 2022 | | 140,618 |
| 2023 | | 15,401 |
| 2024 and thereafter | | 35,469 |
| For all periods | $ | 348,676 |

B.   Assessments - None.

C.   Gain contingencies - None.

D.   Claims related extra contractual obligation and bad faith losses stemming from lawsuits - None.

E.   Product warranties - None.

F.   Joint and several liabilities - None.

G.   All other contingencies

The Company is involved in various other legal actions related to insurance policies and claims handling including, but not limited to, claims asserted by policyholders. The Company has considered such legal actions in establishing its loss and loss adjustment expense reserves. The outcome of such legal actions is not presently determinable for a number of reasons. For example, in the event that the Company or its insureds receive adverse verdicts, post-trial motions may result in unfavorable rulings; any appeals that may be undertaken may be unsuccessful; the Company may be unsuccessful in legal efforts to limit the scope of coverage available to its insureds; and the Company may become a party to bad faith litigation over the payment of any judgment above an insured's policy limits. The Company's management is of the opinion, based on consultation with legal counsel, that the resolution of these actions will not have a material adverse effect on the Company's financial position. However, the ultimate cost of resolving these legal actions may differ from the reserves established, and the resulting difference could have a material effect on the Company's results of operations for the period in which any such action is resolved.

Included in the calculation of the balance on line 7.1 - Current federal and foreign income taxes on page 3 - Liabilities, Surplus and Other Funds is $138,880 for tax contingencies. The amount relates to tax contingencies for which the ultimate deductibility is certain, but for which there is uncertainty about the timing of deductibility. The amount of taxes related to the contingency may differ from the reserve established, but the ultimate outcome would not affect the annual effective tax rate.

### Note 15 - Leases

A.   Lessee leasing arrangements

1.   The Company leases real estate, office equipment, and off-site storage spaces in its operations. The Company incurred rent expenses of $2,188,578 in 2018 and $2,685,631 in 2017.

2.    The Company's future minimum annual commitments under non-cancelable leases as of December 31, 2018 are as follows:

**ANNUAL STATEMENT FOR THE YEAR 2018 OF THE PROASSURANCE CASUALTY COMPANY**

# GENERAL INTERROGATORIES

8.1 Is the company a subsidiary of a bank holding company regulated by the Federal Reserve Board?  Yes [  ] No [ X ]

8.2 If response to 8.1 is yes, please identify the name of the bank holding company.

8.3 Is the company affiliated with one or more banks, thrifts or securities firms?  Yes [  ] No [ X ]

8.4 If response to 8.3 is yes, please provide the names and locations (city and state of the main office) of any affiliates regulated by a federal financial regulatory services agency [i.e. the Federal Reserve Board (FRB), the Office of the Comptroller of the Currency (OCC), the Federal Deposit Insurance Corporation (FDIC) and the Securities Exchange Commission (SEC)] and identify the affiliate's primary federal regulator.

| 1 Affiliate Name | 2 Location (City, State) | 3 FRB | 4 OCC | 5 FDIC | 6 SEC |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

9. What is the name and address of the independent certified public accountant or accounting firm retained to conduct the annual audit?
ERNST & YOUNG, LLP, 1901 6TH AVENUE NORTH, SUITE 1200, BIRMINGHAM, AL 35203......................................................................

10.1 Has the insurer been granted any exemptions to the prohibited non-audit services provided by the certified independent public accountant requirements as allowed in Section 7H of the Annual Financial Reporting Model Regulation (Model Audit Rule), or substantially similar state law or regulation?  Yes [  ] No [ X ]

10.2 If the response to 10.1 is yes, provide information related to this exemption:

10.3 Has the insurer been granted any exemptions related to the other requirements of the Annual Financial Reporting Model Regulation as allowed for in Section 18A of the Model Regulation, or substantially similar state law or regulation?  Yes [  ] No [ X ]

10.4 If the response to 10.3 is yes, provide information related to this exemption:

10.5 Has the reporting entity established an Audit Committee in compliance with the domiciliary state insurance laws?  Yes [  ] No [  ] N/A [ X ]

10.6 If the response to 10.5 is no or n/a, please explain
THE COMPANY IS A WHOLLY OWNED SUBSIDIARY OF A SOX COMPLIANT ENTITY AND IS THEREFORE NOT REQUIRED TO SEPARATELY ESTABLISH AN AUDIT COMMITTEE AS PROVIDED FOR BY SECTION 14 OF THE ANNUAL FINANCIAL REPORTING MODEL REGULATION..................................................................................................

11. What is the name, address and affiliation (officer/employee of the reporting entity or actuary/consultant associated with an actuarial consulting firm) of the individual providing the statement of actuarial opinion/certification?
ALISON M. MILFORD, ACAS, MAAA, WILLIS TOWERS WATSON, 5 CONCOURSE PARKWAY, 18TH FLOOR, ATLANTA, GA 30328........

12.1 Does the reporting entity own any securities of a real estate holding company or otherwise hold real estate indirectly?  Yes [  ] No [ X ]

12.11 Name of real estate holding company ....................................................

12.12 Number of parcels involved ....................................................

12.13 Total book/adjusted carrying value $....................................................

12.2 If yes, provide explanation

13. FOR UNITED STATES BRANCHES OF ALIEN REPORTING ENTITIES ONLY:

13.1 What changes have been made during the year in the United States manager or the United States trustees of the reporting entity?

13.2 Does this statement contain all business transacted for the reporting entity through its United States Branch on risks wherever located?  Yes [  ] No [  ]

13.3 Have there been any changes made to any of the trust indentures during the year?  Yes [  ] No [  ]

13.4 If answer to (13.3) is yes, has the domiciliary or entry state approved the changes?  Yes [  ] No [  ] N/A [  ]

14.1 Are the senior officers (principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions) of the reporting entity subject to a code of ethics, which includes the following standards?  Yes [ X ] No [  ]

    a. Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

    b. Full, fair, accurate, timely and understandable disclosure in the periodic reports required to be filed by the reporting entity;

    c. Compliance with applicable governmental laws, rules and regulations;

    d. The prompt internal reporting of violations to an appropriate person or persons identified in the code; and

    e. Accountability for adherence to the code.

14.11 If the response to 14.1 is no, please explain:

14.2 Has the code of ethics for senior managers been amended?  Yes [  ] No [ X ]

14.21 If the response to 14.2 is yes, provide information related to amendment(s)

14.3 Have any provisions of the code of ethics been waived for any of the specified officers?  Yes [  ] No [ X ]

14.31 If the response to 14.3 is yes, provide the nature of any waiver(s).

15.1