FILED

2021 Jul-28  PM 05:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> PROASSURANCE CORPORATION, W. STANCIL STARNES, EDWARD L. RAND, JR., DANA S. HENDRICKS, HOWARD H. FRIEDMAN, and MICHAEL L. BOGUSKI, <br><br> Defendants. | Civil Action No.: 2:20-cv-00856-AKK <br><br> **Oral Argument Requested** |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

<table>
<tr><td>

STARNES DAVIS FLORIE LLP

Walter W. Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
Michael R. Lasserre (ASB-2144-Y61G)
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, AL 35259-8512
wwb@starneslaw.com
jme@starneslaw.com
crg@starneslaw.com
mrl@starneslaw.com

</td><td>

SIMPSON THACHER & BARTLETT LLP

Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Jacob Lundqvist (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
jacob.lundqvist@stblaw.com

</td></tr>
</table>

*Attorneys for Defendants ProAssurance Corporation, W. Stancil Starnes, Edward L. Rand, Jr., Dana S. Hendricks, Howard H. Friedman, and Michael L. Boguski.*

{B4083065}

**TABLE OF CONTENTS**

**Page**

I.    THE OPPOSITION CONFIRMS THE LACK OF ACTIONABLE
      MISSTATEMENTS BY THE DEFENDANTS ...............................................1

      A.    Plaintiffs Have Not Alleged Any Material Misstatements or
            Omissions .........................................................................................1

      B.    Plaintiffs Have Failed to Plead Scienter...................................................8

II.   PLAINTIFFS' CONTROL PERSON CLAIMS FAIL ................................10

CONCLUSION...................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) ...............................................................................7

*City of Omaha v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012) ......................................................................................9

*Doyun Kim v. Advanced Micro Devices, Inc.*,
  2019 WL 2232545 (N.D. Cal. May 23, 2019)..........................................................8

*Ehlert v. Singer*,
  245 F.3d 1313 (11th Cir. 2001) ...............................................................................6

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015) ......................................................................8

*In re Converium Holding AG Sec. Litig.*,
  2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006) ..........................................................6

*In re Fannie Mae 2008 Sec. Litig.*,
  742 F. Supp. 2d 382 (S.D.N.Y. 2010) ......................................................................4

*In re Genworth Fin. Inc. Sec. Litig.*,
  103 F. Supp. 3d 759 (E.D. Va. 2015) .......................................................................5

*In re KLX, Inc. Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fla. 2017) .....................................................................6

*In re PMA Cap. Corp. Sec. Litig.*,
  2005 WL 1806503 (E.D. Pa. July 27, 2005) ............................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)...........................................................2

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011) ......................................................................9

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) ......................................................................7

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare*
    *Fund v. Regions Fin. Corp.*,
    2011 WL 12855820 (N.D. Ala. June 7, 2011) ....................................................8

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007)................................................................7, 10

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ........................................................................10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*
    *Pension Fund*,
    575 U.S. 175 (2015)..........................................................................................2

*Pirnik v. Fiat Chrysler Autos, N.V.*,
    2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016)........................................................9

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016) .............................................................................4

*Underland v. Alter*,
    2011 WL 4017908 (E.D. Pa. Sept. 9, 2011) ......................................................5

*Univ. Express, Inc. v. U.S. S.E.C.*,
    177 F. App'x 52 (11th Cir. 2006) ......................................................................5

*W. Palm Beach Police Pension Fund v. DFC Glob.*
    *Corp.*,
    2015 WL 3755218 (E.D. Pa. June 16, 2015)......................................................9

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011) .............................................................................8

*Winslow v. BancorpSouth, Inc.*,
    2011 WL 7090820 (M.D. Tenn. Apr. 26, 2011)..................................................8

*Woolgar v. Kingstone Cos.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) ...............................................................5

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ........................................................................10

Like the Complaint, the Opposition fails to demonstrate that any statement regarding PRA's loss reserves or relationship with TeamHealth was fraudulently misstated.[1]  Plaintiffs do not allege that PRA experienced any severity increase during the Class Period, and the mere rise in claims attributed to TeamHealth after the fact fails to show that PRA's earlier loss reserves were understated.  Plaintiffs effectively ignore Defendants' publicly disclosed, proactive measures to address emerging severity trends.  The fact that PRA's loss reserves were consistent with estimates developed by external actuaries every year leading up to and during the Class Period also defeats Plaintiffs' fraud allegations.  Finally, the Opposition only speculates about hypothetical renewal terms and unattributed statements about whether TeamHealth would opt for renewal.  Such bare-bones allegations fail to demonstrate that Defendants should have disclosed the risk that TeamHealth would not renew its policy and instead purchase tail coverage at any earlier point in time.

## I.  THE OPPOSITION CONFIRMS THE LACK OF ACTIONABLE MISSTATEMENTS BY THE DEFENDANTS

### A. Plaintiffs Have Not Alleged Any Material Misstatements or Omissions

Contrary to Plaintiffs' assertions, loss reserves are statements of opinion, not fact.  *See* OB at 14.  This is confirmed by the very authority Plaintiffs cite.  *See In*

---

[1] Capitalized terms not otherwise defined here have the same meaning defined in Defendants' Opening Brief in Support of their Motion to Dismiss the Amended Complaint ("OB").  References to "Ex. __" refer to the Supplemental Transmittal Declaration of Jay M. Ezelle dated July 28, 2021.

*re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at \*13 (S.D.N.Y. Nov. 26, 2018) ("[L]oss reserves are statements of opinion[.]").[2]  Plaintiffs cannot state a claim based on such opinion statements by Defendants under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).

### 1.  PRA's Loss Reserves Were Not Fraudulently Misstated

The crux of Plaintiffs' argument is that PRA's loss reserves were fraudulently misstated because a purported "forensic analysis" revealed that an increase in claims reported by TeamHealth during the Class Period rendered PRA's loss reserves "impossibly low" as demonstrated by the average reserve amount per claim calculated by Plaintiffs.  *See* Opp. at 15.  Plaintiffs are wrong for several reasons.

First, the data underlying Plaintiffs' analysis was disclosed as part of state statutory filings made by a PRA subsidiary, which were available on PRA's website and closely followed by analysts.  *See* OB at 7, 15.  Simply calling a review of PRA's public disclosures a "forensic analysis" does not make it so.  Second, the increased number of claims that Plaintiffs rely on is the wrong metric.  As PRA has expressly disclosed, up to 80% of claims in the HCPL business at issue historically resulted in *no payment at all*.  *See id.* Ex. 21.[3]

---

[2] Unlike in *Signet*, the statements at issue here are not contradicted by CW allegations that any Company executives "chose to disregard internal warnings" about circumstances suggesting the need for increased loss reserves.  *See Signet*, 2018 WL 6167889, at \*13.

[3] Management's discussion of the percentage of claims resulting in no payment relates specifically to the HCPL segment, and Plaintiffs fail to support their claim that this same discounting of claims

Third and crucially, Plaintiffs erroneously use the increase in total claims (the majority of which have no value) to construct a so-called "average severity rate," which allegedly decreased during the Class Period for TeamHealth but remained the same for PRA's "less risky" accounts. *See* Opp. at 2–3, 11, 15, 24–25. This calculation amounts to nothing more than basic arithmetic—Plaintiffs divide the total reserve by the total number of claims to calculate an average loss reserve per claim. In doing so, Plaintiffs improperly weight all claims equally irrespective of merit and suggest that PRA estimated potential losses without analyzing the potential impact of specific claims. PRA's public filings make clear, however, that PRA did not estimate potential losses based on averages. Instead, its reserve estimates "are impacted by many factors" including, for example, "the nature of the claim . . . whether or not the claim is an individual or a mass tort claim, [and] the personal situation of the claimant or the claimant's family." *See* OB Ex. 2 at 38–39. Plaintiffs deviate entirely from this analysis by comparing (without justification) different types of insured liabilities, and ignoring that severity rates vary by product as well as by geography. *Id.* at 19.[4]

---

applies "across PRA's entire portfolio." Opp. at 16. Moreover, none of Defendants' statements about frequency trends for the SP&C segment *as a whole* were rendered false by virtue of the alleged increase in TeamHealth claims. *See* OB at 16.

[4] Plaintiffs claim that PRA's other accounts were "less risky" than TeamHealth, but do not even attempt to support this claim by describing PRA-Specialty's other business, the make-up of which underpins Plaintiffs' entire "forensic analysis." *See, e.g.*, ¶¶ 124–25.

Plaintiffs' flawed analysis merely highlights the absence of well-pleaded allegations that PRA experienced an increase in severity during the Class Period. Absent such an increase, Plaintiffs cannot show that PRA—whose loss reserves had exceeded actual losses consistently for over two decades—had any reason to suspect that its loss reserves were inadequate based only on an increase in claims, the vast majority of which were likely to be resolved at no cost. In other words, Plaintiffs fault PRA for "fail[ing] to include a fact that would have potentially undermined Defendants' [] projections," but "*Omnicare* imposes no such disclosure requirements." *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016).

### i.      PRA Proactively Addressed Changing Loss Trends

Plaintiffs ignore the steps PRA took to publicly account for severity trends, including by increasing accident year loss ratios. *See* OB at 17–18. These actions directly undermine Plaintiffs' argument that PRA's loss reserves did not reflect Defendants' sincere opinions when made. Plaintiffs also fail to address the dramatic $50 million increase in "Direct Losses Unpaid" reported on PRA-Specialty's statutory filings. *Id.* at 15. The SAP accounting standards make clear that this amount reflects "[l]iabilities . . . established for any unpaid claims and unpaid losses." Ex. 1 (SSAP No. 55) at 55-2; *see also In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 412 (S.D.N.Y. 2010) (finding no misstatement where company "*did* increase its provisions for credit losses throughout the Class Period").

{B4083065}                                         4

### ii. The Certification of PRA's Loss Reserves By Its External Actuary Refutes Plaintiffs' Fraud Allegations

Plaintiffs cannot dispute the fact that PRA's external actuary certified PRA-Specialty and PRA-Casualty's loss reserves leading up to and during the entire Class Period. *See* OB at 19–20. Contrary to Plaintiffs' claim (Opp. at 20), the Court may take judicial notice of statements contained in filings submitted to a regulator, such as the actuarial certifications attached to the Opening Brief, at the motion to dismiss stage. *See* OB at 4; *Univ. Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider."). While Plaintiffs argue that management was ultimately responsible for setting reserves (Opp. at 20), this fact does not undermine the significance of WTW's certification. Indeed, the same third-party review undermined plaintiffs' allegations that defendants misstated loss reserves in *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193 (S.D.N.Y. 2020)—a case Plaintiffs fail to address entirely. *See* OB at 20.

Plaintiffs also fail to allege that PRA did not follow the process for setting reserves disclosed in its SEC filings (OB at 20), and Plaintiffs' reliance on cases in which the defendant either admitted or was found by a regulator to have deviated from its disclosed procedures is therefore inapposite. *See* Opp. at 18; *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 772 (E.D. Va. 2015); *Underland v. Alter*, 2011 WL 4017908, at *9 (E.D. Pa. Sept. 9, 2011). Moreover, while Plaintiffs argue that the certifications are based on data provided by PRA (Opp. at 20), Plaintiffs do

not allege that *any* information was inaccurate or withheld from WTW.  OB at 12.[5]

### iii.    PRA's Forward-Looking Statements Are Inactionable

Plaintiffs' assertion that the safe harbor does not apply because Defendants' statements represent "current conditions" (Opp. at 16) is incorrect.  Statements with a "forward looking basis . . . combined with historical or present facts" fall within the safe harbor.  *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1280 (S.D. Fla. 2017).  The statement highlighted by Plaintiffs that PRA "*can*" and has the "*ability* to respond to frequency" because "we see frequency on a . . . real-time basis" has a forward-looking basis, and is protected.  ¶ 62 (emphasis added).  Plaintiffs' claim that PRA's risk disclosures were "generic" (Opp. at 17) is similarly wrong.  PRA expressly disclosed the "uncertainties inherent in the estimate of our loss and loss adjustment expense reserve."  OB at 21.  Contrary to the precedent Plaintiffs cite (Opp. at 17), these disclosures warned of "risks of a significance similar to that actually realized."  *Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001).[6]

---

[5] These circumstances stand in stark contrast to the extreme scenarios in the cases Plaintiffs cite. *See In re PMA Cap. Corp. Sec. Litig.*, 2005 WL 1806503, at *3 (E.D. Pa. July 27, 2005) (defendant corporation refused to follow its auditor's recommendation to increase loss reserves, and subsequently terminated the auditor over this dispute); *see also In re Converium Holding AG Sec. Litig.*, 2006 WL 3804619, at *4 (S.D.N.Y. Dec. 28, 2006) (publicly disclosed loss reserves contradicted by actuarial analysis showing $437 million deficit in reserves).

[6] Plaintiffs' argument that Defendants "waived" opposition to their Item 303 claims (Opp. at 18) is meritless.  The Opening Brief explains that the mere rise in claims related to the TeamHealth account did not have a significant effect on PRA's expected financial results, let alone an effect required to be disclosed under Item 303, and Plaintiffs' claim that PRA faced a "substantial likelihood" that TeamHealth would not renew its policy (¶ 241) is directly refuted.  *See* OB at 8–9, 15–17, 21–23.  In any event, the Eleventh Circuit has held that "an Item 303 violation doesn't

## 2. Allegations Regarding TeamHealth's Non-Renewal of Its Policy Fail to Plead a Material Misstatement or Omission

PRA's negotiations with TeamHealth over a potential renewal were still ongoing when PRA disclosed that TeamHealth would likely exercise its option for tail coverage. OB at 12.[7] Plaintiffs identify no point in time prior to that disclosure when the likelihood of non-renewal had become apparent, and "[d]efendants cannot be held liable for failing to disclose what would have been pure speculation." *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015). Instead, Plaintiffs speculate about the premium PRA would have needed to charge to bring the TeamHealth account in line with a "target loss ratio" from PRA's 2018 10-K (Opp. at 22), but cannot explain why this metric had any relevance to the parties' discussions. *See* OB at 22. Nor can Plaintiffs rely on allegations by a CW who had left PRA long before the renewal date that it was "well known" TeamHealth would not renew its policy. *See* OB at 26–27; *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 140–41 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (CW allegations that accounting deficiencies were "well known" insufficient). These allegations also fail to show a violation of ASC 450 because "GAAP provisions . . .

---

necessarily give rise to Rule 10b-5 liability." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1331 (11th Cir. 2019).

[7] Plaintiffs' claim that Defendants had "personal involvement" in negotiating a potential TeamHealth policy renewal (Opp. at 27) is unsupported by the Complaint's assertion that "high-level" executives would have needed to approve the *initial* underwriting of the TeamHealth account, according to a CW who departed PRA over a year prior to the renewal negotiations (¶ 56).

tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (citation omitted).

Finally, PRA's amended risk disclosures in the 2019 10-K do not demonstrate any misstatement because "the potential risks disclosed . . . had not come to fruition when Defendants filed the challenged risk disclosures." *Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at \*7 (N.D. Cal. May 23, 2019); *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 133 (2d Cir. 2011) (affirming dismissal because defendants did not "kn[o]w with certainty" that risk warned of would occur).

### 3.  Statements About PRA's Business Practices Are Inactionable

Courts in this Circuit have repeatedly held that the exact type of statements at issue here regarding PRA's "cautious" and "disciplined" underwriting standards provide no basis for a securities fraud claim. *See* OB at 23–24 (citing cases). Plaintiffs' reliance on cases involving far more credible CW allegations directly contradicting such statements is not to the contrary. *See* Opp. at 17–18.[8]

### B. Plaintiffs Have Failed to Plead Scienter

The Opposition confirms the lack of well-pled scienter allegations in the

---

[8] *See Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2011 WL 12855820, at \*7 (N.D. Ala. June 7, 2011) (no puffery given CW allegations "explain[ing] how defendants mishandled loans in order to manipulate their financial reporting numbers"). Plaintiffs' reliance on *Winslow v. BancorpSouth, Inc.*, 2011 WL 7090820 (M.D. Tenn. Apr. 26, 2011), where the court found no puffery because the company "failed to follow . . . FDIC directives" on lending standards, is similarly misplaced since PRA violated no similar directives in setting loss reserves.

Complaint.   Plaintiffs fall short by pointing only to the Individual Defendants' positions and claiming that they were "undoubtedly aware" that PRA's loss reserves were understated as "implied" by their self-constructed average severity rate.  *See City of Omaha v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) ("[P]lausibly plead[ing] that defendants were aware of facts that *should* have led them" to conduct goodwill impairment testing failed to allege that "defendants did not believe in their statements of opinion regarding . . . goodwill at the time they made them").  Plaintiffs' CW allegations are also deficient.   Only one CW had a reporting relationship with an Individual Defendant (Mr. Friedman), and none of the CWs "claim . . . knowledge of how [PRA] calculated reserve levels."  *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 362 (S.D.N.Y. 2011).  And, while Plaintiffs make much of a meeting at which a "problematic," unidentified account was purportedly discussed, these statements "did not directly 'contradict' [PRA's reserve] estimates," and the presentation used at the meeting did not reflect "'internal analyses' of what [the] estimates should really have been."  *Pirnik v. Fiat Chrysler Autos, N.V.*, 2016 WL 5818590, at *9 (S.D.N.Y. Oct. 5, 2016).[9]

Plaintiffs' remaining allegations also do not raise an inference of scienter.  First, whether the alleged fraud related to PRA's "core operations" (Opp. at 26–27)

---

[9] Plaintiffs' reliance on a case involving CW allegations that management "dictated" that loss reserves be calculated contrary to GAAP and its own policies is thus inapt.  *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 WL 3755218, at *16 (E.D. Pa. June 16, 2015).

is of no moment, as the Eleventh Circuit has not adopted the core operations doctrine. OB at 27–28. Second, it is well-established that "Plaintiffs cannot rely on the magnitude of the reserve charges as evidence of Defendants' conscious misbehavior or recklessness." *Malin*, 499 F. Supp. 2d at 164. Third, Plaintiffs fail to address the fact that Messrs. Starnes and Friedman both remained involved with PRA following their "departures." PRA's orderly executive transition had been planned for well over a year (OB at 28–29), and unlike in the cases Plaintiffs cite (Opp. at 28), there was nothing "sudden" about these departures.

Fourth, Plaintiffs' claim that certain Defendants signed inaccurate SOX certifications (Opp. at 29) is inapt because Plaintiffs have alleged no "red flags" beyond vague statements regarding "false" financials. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1210 (11th Cir. 2001). Fifth, the fact that *part* of the Individual Defendants' compensation was based on incentive-based metrics (Opp. at 30) has repeatedly been rejected as insufficient to plead scienter. *See* OB at 29–30. Alleged GAAP violations similarly fall short of establishing scienter. *See id.* at 23.

## II. PLAINTIFFS' CONTROL PERSON CLAIMS FAIL

Because the Complaint fails to state a § 10(b) claim, Plaintiffs' § 20(a) claim similarly fails. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

## CONCLUSION

Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

Dated: July 28, 2021

STARNES DAVIS FLORIE LLP

/s/ *Cole R. Gresham*
Walter W. Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
Michael R. Lasserre (ASB-2144-Y61G)
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, AL 35259-8512
wwb@starneslaw.com
jme@starneslaw.com
crg@starneslaw.com
mrl@starneslaw.com

SIMPSON THACHER & BARTLETT LLP

Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Jacob Lundqvist (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Defendants ProAssurance Corporation, W. Stancil Starnes, Edward L. Rand, Jr., Dana S. Hendricks, Howard H. Friedman, and Michael L. Boguski.*

{B4083065}                                                    11

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on July 28, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Steven B. Singer
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, NY 10606

Joseph E. White, III
Lester R. Hooker
SAXENA WHITE P.A.
7777 Glades Road, Suite 300
Boca Raton, FL 33434

Bailie L. Heikkinen
Reginald E. Janvier
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432

David J. Guin
Tammy M. Stokes
Dawn Stith Evans
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL 35203

Roger H. Bedford, Jr
ROGER BEDFORD, ATTORNEY AT LAW, LLC
P.O. Box 1149
Russellville, AL  35653

{B4083065}                                                    12

John T. Long
CAVANAGH & O'HARA
2319 West Jefferson Street
Springfield, IL  62702



*/s/ Cole R. Gresham*
STARNES DAVIS FLORIE LLP