FILED

2022 Mar-29  PM 12:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SHEET METAL WORKERS LOCAL 19 PENSION FUND,** individually and on behalf of all others similarly situated,<br><br>   **Plaintiffs,**<br><br>**v.**<br><br>**PROASSURANCE CORPORATION, et al.,**<br><br>   **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action Number **2:20-CV-00856-AKK** |

## ORDER

Pursuant to the parties' joint stipulation establishing the protocol for electronic discovery in this matter, doc. 74, is it **ORDERED**:

IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiffs, Central Laborers' Pension Fund and Plymouth County Retirement System, and Defendants, ProAssurance Corporation, W. Stancil Starnes, Edward L. Rand, Jr., Dana S. Hendricks, Howard Friedman and Michael Boguski (each of whom individually is referred to herein as a "Party," and collectively, the "Parties"), by and through their undersigned counsel, pursuant to the Federal Rules of Civil Procedure, that this agreement ("Agreement") will govern how the Parties manage electronic discovery in the above-captioned case.[1]

---

[1] To the extent that this Agreement identifies specific forms of production and/or processing specifications relating to the production of documents and electronically stored information

## I.    PRESERVATION AND COLLECTION

Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI in its possession, custody or control. For any agreed-upon custodians, the Parties will disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved. ESI will be collected in a manner that preserves all reasonably available metadata.

## II.    CUSTODIANS AND SEARCH PARAMETERS

The Parties agree to meet and confer regarding appropriate custodians for ESI discovery and any other search parameters, *e.g.*, search terms, date ranges or file types, to be used to locate potentially responsive ESI. In the event that the Parties are unable to reach agreement on any issues regarding the appropriate custodians and/or search parameters to be used for ESI discovery, the Parties will promptly submit their dispute to the Court in accordance with the applicable Rules and the Court's Policies and Procedures.

The Parties agree that "metrics" searches (*e.g.*, hit counts, exclusion rate or null set) in which test searches are run may help the Parties refine their searches and identify custodians whose files will be searched, reviewed for production and

("ESI"), this Agreement shall govern such matters and supersedes any other document request unless otherwise agreed to by the Parties or ordered by the Court.

2

produced.  If the producing Party performs such "metrics" searches and sampling of search results, it will make good faith efforts to do so as soon as practicable after the Parties meet and confer on these issues.

Responsive documents or categories of documents, as agreed by the parties, that are easily identifiable and segregable from centralized files shall be collected without the use of search terms or other agreed-upon search methodology.  The producing Party will indicate which categories of documents will be produced with and without the use of search terms or other agreed-upon search methodology.

## III.    PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard copy documents (*i.e.*, documents or records that were originally generated as ESI but now only exist in physical hard-copy format, or documents or records that were originally generated in hard-copy format) shall be produced as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  To the extent available, the database load file should contain the following fields: "Beg Bates," "End Bates," "Page Count," "Volume" and "Custodian."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality.

Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. If an original document contains color, and the color is necessary to understand the meaning or content of the document, then the requesting Party may request a color image of the document from the producing Party and that request, subject to the reasonable availability or accessibility of the original document, shall not be denied. The Parties agree to meet and confer as to any dispute before the issue is submitted to the Court.

## IV.   PRODUCTION OF ESI

### A. Format

The Parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images, with the exception of presentation-type files (*e.g.*, PowerPoint documents) that do not include redactions, documents containing tracked changes and/or comments that do not include redactions, spreadsheets, source code, audio files and video files, all of which shall be produced in native format. Presentation-type files that do not include redactions and documents containing tracked changes and/or comments that do not include redactions shall be produced in a manner that displays all edits, comments and/or notes, and where available, the identity of the person who made such edits, comments and/or notes, as well as the date and time such edits, comments and/or notes were made. Presentation-type files that do include redactions (whether based on privilege or any other applicable grounds) and

4

documents containing tracked changes and/or comments that do include redactions (whether based on privilege or any other applicable grounds) shall be produced as single-page, black and white, TIFF Group IV, 300 DPI TIFF images in a manner that displays, to the extent available and technologically feasible, all edits, comments and/or notes, the identity of the person who made such edits, comments and/or notes, and the date and time such edits, comments and/or notes were made.[2] Native Excel files will be redacted where appropriate by overwriting the data contained in a particular cell, row, column or tab with the word "REDACTED." These documents will be identified as redacted within the "REDACTED" field in the .dat. If the producing Party deems it necessary to produce redacted Excel (or other spreadsheet formats) in any format other than native format, the Parties shall meet and confer before such a production is made. The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking,

---

[2] Any redactions must be clearly identified consistent with Section IV.N, discussed below. If a receiving Party believes that a produced document was produced without properly identifying all edits, comments and/or notes, including details such as the author, date, and time of such edits, comments and/or notes, the Parties agree to first meet and confer to address any concerns before raising the issue with the Court.

etc., the Parties agree to meet and confer in good faith on production format options. If an original document contains color, and the color is necessary to understand the meaning or content of the document, then the requesting Party may request a color image of the document from the producing Party and that request, subject to the reasonable availability or accessibility of the original document, shall not be denied.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the "Native Link" field. To the extent that either Party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

### B. De-Duplication[3]

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The Parties agree that an email that includes content in the "BCC" or

---

[3] If the producing Party seeks to use email thread suppression to limit the production of relevant documents, the producing Party must promptly notify the receiving Party, prior to implementation or review, with ample time for the Parties to meet and confer and, if necessary, raise the issue with the Court.

other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the "All Custodian" field will list each custodian, separated by a semicolon, who was a source of that document and the "All File Path" field will list each file path, separated by a semicolon, that was a source of that document. The Parties acknowledge that "All Custodian" or "All File Path" metadata fields produced may become outdated due to rolling productions. To the extent this occurs, a producing Party shall provide an overlay file providing all the custodians and file paths for the affected documents with, or promptly following, each rolling production.

### C. Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields, to the extent available, listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-docs that the Parties have agreed to produce and that do not conform to the metadata listed in Table 1, including, but not limited

to, text messages, phone logs, messaging apps, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced.

### D. Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. To the extent that the processing software extracts the information, and to the extent that such information is available, embedded files will be marked with a "Yes" in the load file under the "Embedded" metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E. Attachments

The Parties agree that if any part of a parent document or its attachments is responsive, the entire document family will be produced, except any family member that must be withheld or redacted on the basis of privilege. If a family member is withheld on the basis of privilege, a slip sheet stating it has been withheld, along with all non-privileged metadata will be produced. In instances where any family member is withheld under a claim of privilege, and where such family member is later produced, the entire family (except any family members that must continue to be withheld or redacted on the basis of privilege) will be produced with the same Bates numbers plus an additional identifier, such as .0001. The purpose of this

workflow is to control Bates ranges and maintain family metadata.  The Parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments will be produced sequentially after the parent email.

The Parties shall use reasonable and proportional efforts to collect and produce non-privileged documents that are links in responsive emails, which often point to shared drives or cloud storage.  If feasible, documents extracted from links shall be populated with the "Beg Attach" and "End Attach" metadata fields to show the family relationship, or a cross-reference should be provided that associates documents collected from links with the respective emails containing such links. The Parties retain the right to meet and confer regarding appropriate solutions to documents with such links that could not be produced.

**F.  Compressed File Types**

Compressed file types (*e.g.*, .zip) should be uncompressed for processing. Each responsive file contained within a standalone archive file shall be produced.  If the archive file is itself an attachment, that parent/child relationship shall also be preserved and each non-privileged file contained within the archive file produced, consistent with Section IV.E, discussed above.

**G. Time Zone**

When processing ESI, Central Time ("CT") should be selected as the time zone.

**H. Electronic Text Files**

For each document, a single text file shall be provided along with the native or image files and metadata.  The text file name shall be the same as the Bates number of the first page of the document.  File names shall not have any special characters or embedded spaces.  Electronic text shall be extracted directly from the native electronic file unless the document was redacted, an image file or a physical file.  In these instances a text file created using OCR will be produced in lieu of extracted text.  Where feasible, if the producing Party has access to extracted text from electronic document files, the receiving Party shall receive extracted text as well, instead of OCR text generated from an image file.  If such conversion is unduly burdensome or renders the document unusable, the producing Party may produce the document in any reasonably usable form as may be agreed upon by the respective Parties.  The Parties shall meet and confer regarding any disputes relating to the availability of extracted text.

**I.  Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production.  The Parties will consider whether all relevant information may be

provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

### J.  Encryption

The producing Party will take reasonable steps, prior to production, to unencrypt any discoverable ESI that exists in encrypted or password-protected format.

### K. Extracted Text

ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes or worksheets, speaker notes, tracked changes, redlines and comments.  Upon request, a producing Party will produce files with any such information in native format.

### L.  Exception Report

The producing Party shall compile an exception report enumerating any unprocessed or un-processable documents, their file type and the file location.

### M. Production Delivery

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the Parties may hereafter agree upon, or electronically via secure file share/FTP (the "Production Media").  Each item of Production Media shall include: (1) the name of the producing Party; (2) a legend identifying the production

as being made for the above-captioned case; (3) the production date; (4) a unique production volume, starting with the same Bates prefix used on the documents being produced; and (5) where feasible, the Bates number range of the materials contained on such Production Media item, or other description of the items. Each production shall be accompanied by a production letter setting forth the date and scope of production. To maximize the security of information in transit, any media on which documents are produced must be encrypted. The producing Party shall transmit the encryption key to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

### N. Redactions

The producing Party may redact privileged information, personal identity information and any other information required by law to be kept confidential within a responsive document. If, during the course of discovery, the Parties identify other kinds of information that a Party has a reasonable basis for redacting, the producing Party will notify the receiving Party of the basis for redaction prior to the production of such redacted records. Redactions for relevance are not permitted unless the Parties first meet and confer. In the event that the meet-and-confer process is unable to resolve any disputes regarding redactions for relevance, the Parties shall promptly raise the dispute with the Court for resolution. A Party required to make a production while a dispute is pending before the Court may apply redactions for relevance that

12

are subject to the Court's subsequent determination of whether such redactions are appropriate, but such Party shall not use the burden associated with such production as a basis to argue against a determination by the Court that a subsequent unredacted production is warranted.  In the event that the Court finds that redactions for relevance were inappropriately applied, the producing Party will promptly reproduce the documents unredacted.  For redacted documents, each redaction must be clearly indicated.

### O. Privilege Logs

The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5).  Privilege logs will be provided in a searchable and sortable spreadsheet format.  Certain privileged communications or documents need not be included in a privilege log, unless otherwise agreed to by the Parties or ordered by the Court: (1) communications to or from outside legal counsel related to this action that post-date the filing of the initial complaint in this action; (2) work product of counsel and Parties related to this action that post-date the filing of the initial complaint in this action; and (3) any other privileged communications that post-date the filing of the initial complaint in this action.  Nothing in this paragraph should be read to suggest that documents created post-filing of the initial complaint in this action should be produced or that either Party waives the right to challenge

13

privilege or work product assertions made on documents that are not included on the privilege log.

The Parties will meet and confer in good faith regarding the scope of the privilege log should any issue arise.  Further, the Parties agree that documents that have been redacted for privilege should also be logged separately and include the fields as set forth in the following paragraph.

In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents withheld from production or redacted on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing Party will prepare a log containing, for each document (except those exempted above): (1) the privilege(s) claimed and basis for the claim; (2) the date sent (if applicable); (3) the last modified date and the date created (if applicable); (4) the name and email address or other data (if applicable) identifying the author(s)/addresser(s) and identifying any person who is an attorney or an employee of any legal department as such; (5) the name and email address (if applicable) or other data (if applicable) identifying the addressee(s) and all recipients of the document, separately identified by "to," "cc" and "bcc" fields, and identifying any person who is an attorney or an employee of any legal department as such; and (6) a description of the general subject matter contained in the document and the type of document (*e.g.*, letter, memorandum, handwritten notes, etc.) sufficient to allow the

receiving Party to assess the claimed privilege and/or to allow the Court to rule upon the applicability of the claimed protection. For redacted documents, if there is more than one redaction per document, one log entry can be used to describe the multiple redactions.

If the receiving Party reasonably requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. The producing Party will respond to any such reasonable request by providing a more detailed description of the nature of the withheld information that will enable the receiving Party to assess the claim of privilege.

If the receiving Party contests a privilege claim, the receiving Party must notify the producing Party in writing. The Parties must attempt to confer in good faith to resolve any challenge. Thereafter, the Parties shall seek judicial intervention consistent with the discovery procedures outlined by this Court if the challenge cannot be resolved.

**P. Privilege Claw Back**

The production of privileged or work product protected data (including metadata) is governed by the Protective Order entered in the above-captioned case (ECF No. 73).

**Q. Amendments to ESI Protocol**

15

The Parties may, by stipulation, modify or amend this Electronic Discovery Protocol during the course of discovery.

### R. Objections to ESI Production

If any formatting requirements or other specifications agreed to in this protocol are later determined by the producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Parties will promptly meet-and-confer in order to attempt to agree upon appropriate modifications to the protocol before presenting any such issue to the Court.

Notwithstanding anything contained herein to the contrary, a producing Party shall not produce ESI in a format not requested or agreed to by the requesting Party. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet-and-confer process.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: March 28, 2022

**ROGER BEDFORD, ATTORNEY AT LAW, LLC**

*/s/ Roger H. Bedford, Jr.*

Roger H. Bedford, Jr. (ASB-3651 D60R)
P.O. Box 1149
Russellville, AL 35653
Telephone: 256/332-6966
rogerbedfordattorneyatlawllc@gmail.com

**STARNES DAVIS FLORIE LLP**

*/s/ Walter W. Bates*

Walter W. Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
Michael R. Lasserre (ASB-2144-Y61G)

100 Brookwood Place, 7th Floor

P.O. Box 598512
Birmingham, AL  35259-8512
wwb@starneslaw.com
jme@starneslaw.com
crg@starneslaw.com

**GUIN, STOKES & EVANS, LLC**
David J. Guin
Tammy M. Stokes
Dawn Stith Evans
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
davidg@gseattorneys.com
tammys@gseattorneys.com
devans@gseattorneys.com

*Local Counsel for Lead Plaintiffs*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Nathan R. Lindell (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/213-1058
nlindell@rgrdlaw.com
- and -
Bailie L. Heikkinen (*pro hac vice*)
Reginald E. Janvier (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561/750-3000
bheikkinen@rgrdlaw.com
rjanvier@rgrdlaw.com

**SAXENA WHITE P.A.**
Joseph E. White, III (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)

**SIMPSON THACHER & BARTLETT LLP**
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Jacob Lundqvist (*pro hac vice*)
425 Lexington Avenue
New York, NY  10017
jyoungwood@stblaw.com
jgochman@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Defendants*

17

7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone: 561/394-3399
jwhite@saxenawhite.com
lhooker@saxenawhite.com

-and-

Steven B. Singer (*pro hac vice*)
Kyla Grant (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone: 914/437-8551
ssinger@saxenawhite.com
kgrant@saxenawhite.com
sdileo@saxenawhite.com
*Lead Counsel for Lead Plaintiffs*

**CAVANAGH & O'HARA**
John T. Long
2319 West Jefferson Street
Springfield, IL  62702
Telephone: 217/544-1771
johnlong@cavanagh-ohara.com
*Additional Counsel for Lead Plaintiff*

**DONE** the 29th day of March, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

18

**Table 1**
**Metadata Fields**

1.     Beg Bates:  Beginning Bates number.

2.     End Bates:  Ending Bates number.

3.     Beg Attach:  Beginning Bates number of the first page of the parent in a document family.

4.     End Attach:   Ending Bates number of the last page of the last attachment in a document family.

5.     Attachment Count:  Number of attached files.

6.     Custodian:  Name of the Custodian of the document produced.

7.     All Custodian: Name of the Custodians from whose files the document would have been produced if it had not been de-duplicated.

8.     File Extension:  File extension of a document (.msg, .doc, .xls).

9.     File Name:  File name of the document.

10.    File Path:  The directory structure or path where the original document was stored.

11.    All File Path: The file paths from the locations in which removed duplicate documents were stored.

12.    File Size:  Size (in kilobytes) of the source native file.

13.    Extracted Text:  File path to Extracted Text/OCR File.

14.    Native Link:  Path and file name to a produced native format file.

1

15. <u>Email Subject</u>: Subject line extracted from an email message.

16. <u>Title</u>: Title field extracted from the metadata of a non-email document.

17. <u>Author</u>: Author field extracted from the metadata of a non-email document.

18. <u>From</u>: From field extracted from an email message, including both the display name and the SMTP address.

19. <u>To</u>: To or Recipient field extracted from an email message, including both the display name and the SMTP address.

20. <u>CC</u>: CC field extracted from an email message, including both the display name and the SMTP address.

21. <u>BCC</u>: BCC field extracted from an email message, including both the display name and the SMTP address.

22. <u>Date Sent</u>: Sent date of an email message (mm/dd/yyyy).

23. <u>Time Sent</u>: Sent time of an email message (hh:mm AM/PM).

24. <u>Date Received</u>: Received date of an email message (mm/dd/yyyy).

25. <u>Time Received</u>: Received time of an email message (hh:mm AM/PM).

26. <u>Time Zone Processed</u>: The originating time zone of the document.

27. <u>Date Created</u>: The origination date of the document (mm/dd/yyyy).

28. <u>Time Created</u>: The origination time of the document (hh:mm AM/PM).

2

29. <u>Last Modified By</u>: Name of the person who last modified or saved the document.

30. <u>Date Last Modified</u>: Last modification date of a document (mm/dd/yyyy).

31. <u>Time Last Modified</u>: Last modification time of a document (hh:mm AM/PM).

32. <u>Importance</u>: Indicates the priority level of an email.

33. <u>Message-ID</u>: The Outlook Message ID.

34. <u>Conversation Index</u>: The Outlook Conversation Index ID used to tie together email threads.

35. <u>Meeting Start Date</u>: The start date of a calendar entry (mm/dd/yyyy).

36. <u>Meeting Start Time</u>: The start time of a calendar entry (hh:mm AM/PM).

37. <u>Meeting End Date</u>: The end time of a calendar entry (mm/dd/yyyy).

38. <u>Meeting End Time</u>: The end time of a calendar entry (hh:mm AM/PM).

39. <u>Message Type</u>: The email system file type.

40. <u>Page Count</u>: The number of pages of a document.

41. <u>Hash Value</u>: MD5 or SHA-1 hash value.

42. <u>Embedded</u>: A Yes/No indicator that identifies whether a document is embedded in another document.

3

43.     Track Changes: A Yes/No indicator that identifies whether a document has tracked changes.

44.     Confidentiality:  The confidentiality designation of a document if it has been so designated under the Protective Order.

45.     Document Type:  Describes the type of document, *e.g.*, "E-document" for electronic documents not attached to emails, "Email" for all emails, and "Attachment" for all attached documents.

46.     Redacted:  Indicates whether the document contains redactions.

47.     Source:  The source from which the document was collected.

48.     Volume: The volume number of the production.

4