FILED

2022 Aug-19  PM 02:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Civil Action No. 2:20-cv-00856-AKK <u>CLASS ACTION</u> |
| Plaintiff, | ) ) ) ) | LEAD PLAINTIFFS' REPLY SUBMISSION IN FURTHER SUPPORT OF MOTION TO CERTIFY |
| vs. | ) ) ) | CLASS, APPOINT CLASS REPRESENTATIVES AND APPOINT CLASS COUNSEL |
| PROASSURANCE CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

**[REDACTED]**

4856-0544-4399.v1

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................1

II. NO BASIS EXISTS FOR SHORTENING THE CLASS PERIOD ...............2

III. DEFENDANTS FAIL TO REBUT THE *BASIC* PRESUMPTION...............6

IV. LEAD PLAINTIFFS ARE ADEQUATE REPRESENTATIVES................12

V. INDIVIDUALIZED ISSUES DO NOT PREDOMINATE .........................13

VI. CONCLUSION........................................................................................15

4856-0544-4399.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)................................................................................15

*Aranaz v. Catalyst Pharm. Partners Inc.*,
    302 F.R.D. 657 (S.D. Fla. 2014)..........................................................6, 8

*Azar v. Grubhub, Inc.*,
    2021 WL 4077327 (N.D. Ill. Sept. 7, 2021).............................................6

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)...................................................................1, 2, 6, 7

*City of Cape Coral Mun. Firefighters' Ret.*
    *Plan v. Emergent Biosolutions, Inc.*,
    322 F. Supp. 3d 676 (D. Md. 2018)..........................................................3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011).................................................................................6

*FindWhat Inv. Grp. v. FindWhat.com*,
    658 F.3d 1282 (11th Cir. 2011) ...............................................................9

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    _U.S._, 141 S. Ct. 1951 (2021).................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)...............................................................................10

*Holwill v. AbbVie Inc.*,
    2021 WL 7366274 (N.D. Ill. Sept. 23, 2021)........................................14

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
    337 F.R.D. 193 (D. Minn. 2020) ...............................................4, 7, 8, 15

*In re Jeld-Wen Holding, Inc. Sec. Litig.*,
    2021 WL 1186326 (E.D. Va. Mar. 29, 2021)..........................................12

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008)............................................................14

- ii -

**Page**

*In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*,
    251 F.R.D. 656 (D. Utah 2008) ........................................................................3

*In re Theragenics Corp. Sec. Litig.*,
    205 F.R.D. 687 (N.D. Ga. 2002) ....................................................................13

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) .......................................................................13

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare*
    *Fund v. Regions Fin. Corp.*,
    2014 WL 6661918 (N.D. Ala. Nov. 19, 2014).............................................6, 15

*Loc. 703, I.B. of T. Grocery & Food Emps.*
    *Welfare Fund v. Regions Fin. Corp.*,
    282 F.R.D. 607 (N.D. Ala. 2012),
    *aff'd in part & vacated in part on other grounds*,
    762 F.3d 1248 (11th Cir. 2014) .......................................................................13

*Loc. 703, I.B. of T. Grocery & Food Emps.*
    *Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014) .........................................................................8

*Luczak v. Nat'l Beverage Corp.*,
    812 F. App'x 915 (11th Cir. 2020)....................................................................11

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    328 F.R.D. 86 (S.D.N.Y. 2018) ........................................................................4

*Monroe Cnty Emps.' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) ...........................................................*passim*

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
    2020 WL 5757695 (D. Minn. Sept. 28, 2020)..............................................7, 9

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ...............................................7, 9

*Vignola v. Fat Brands, Inc.*,
    2020 WL 1934976 (C.D. Cal. Mar. 13, 2020)................................................14

4856-0544-4399.v1

**Page**

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017) ................................................................................9

**FEDERAL RULES OF CIVIL PROCEDURE**
   Rule 23(a)............................................................................................................1
   Rule 23(b) ...........................................................................................................1

- iv -

Lead Plaintiffs Central Laborers and Plymouth County respectfully submit this reply memorandum in further support of their Motion to Certify Class, Appoint Class Representatives and Appoint Class Counsel ("Motion") (ECF 78).[1]

## I.   PRELIMINARY STATEMENT

As demonstrated in the Initial Brief, this classic securities fraud class action satisfies each of the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – as well as the predominance and superiority requirements of Rule 23(b).  With regard to predominance, the Initial Brief establishes that – as is typical in securities class actions – damages can be calculated on a Class-wide basis and PRA common stock traded in an efficient market during the Class Period, entitling Plaintiffs to the Class-wide presumption of reliance enunciated by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  *See* In. Br. at 15-23.

Defendants' Opposition does not challenge – and therefore concedes – that Plaintiffs have established numerosity, commonality, typicality, superiority, market efficiency, and that damages can be calculated on a Class-wide basis.  Instead, Defendants reiterate the same baseless argument this Court recently rejected in its June 23, 2022 Order ("Discovery Order") (ECF 95) to argue that the Class Period should be shortened, and lodge similarly futile challenges regarding predominance

---

[1]   Unless otherwise noted: (i) capitalized terms have the same meanings as in Lead Plaintiffs' Initial Submission in Support of the Motion ("Initial Brief" or "In. Br.") (ECF 79); (ii) "¶_" references are to paragraphs of the Complaint; (iii) all emphasis is added and citations are omitted; (iv) references to the "Opposition" or "Opp." are to Defendants' Response Brief in Opposition to Lead Plaintiffs' Motion (ECF 92); (v) "PRA" refers to ProAssurance; and (vi) "Ex." references are to the Declaration of Sara DiLeo ("DiLeo Decl.") filed simultaneously herewith.

4856-0544-4399.v1

and adequacy. *See* Opp. at 8-25. As detailed herein: (i) Defendants' attempt to rebut the *Basic* presumption fails to meet the "daunting task" of ***proving*** that their misrepresentations had "no price impact whatsoever"; (ii) Defendants' challenges to Plaintiffs' adequacy are baseless; and (iii) Defendants' speculative truth-on-the-market argument is both factually unfounded and procedurally incapable of defeating Plaintiffs' Motion. Thus, the Motion should be granted.

## II.    NO BASIS EXISTS FOR SHORTENING THE CLASS PERIOD

Defendants' argument that the Class Period must end on January 22, 2020 because the MTD Opinion purportedly "dismiss[ed] all claims that were allegedly 'corrected' by disclosures made on May 7-8" is meritless. *See* Opp. at 8-15. Indeed, the Court recently considered – and rejected – this ***exact*** argument. *See* Discovery Order at 6-7, 13-14 ("The MTD Opinion did not express any findings as to the proposed Class Period"). Specifically, Defendants argued that the relevant period for discovery should end on January 22, 2020, because the "the Class Period necessarily ends on January 22, 2020," based on their contention that "the May 7-8, 2020 disclosures corrected a category of misstatements the Court has now dismissed." *See* Ex. A at 2-3. Significantly, in rejecting Defendants' argument, the Court held that the corrective disclosures on May 7-8, 2020 (the "May Disclosures") "do[] ***not*** bear only on the dismissed tail coverage-related claims," but are also "relevant to the pending claims, *i.e.*, whether the defendants knowingly made material misstatements about 'observed frequency data underlying the company's reserve estimates and the

- 2 -

company's commitment to conservative underwriting and reserve-setting.'" Discovery Order at 13-14. These findings are fatal to Defendants' argument that the Class Period should be shortened.[2]

Furthermore, Defendants are wrong in asserting that it "is fundamentally inconsistent with the Complaint" for Plaintiffs to contend that Defendants' misrepresentations about PRA's commitment to caution and conservatism were corrected by the May Disclosures. *See* Opp. at 9-11. To the contrary, the Complaint expressly alleges that "Defendants made no disclosures whatsoever regarding the Company's ***unique and inherently risky TeamHealth policy*** until almost four years later, when Defendants stunned investors through a ***series of announcements*** on January 20, 2020, ***and May 7, 2020***, which disclosed that [PRA] had suffered the largest loss from a single account in its history, resulting in charges of more than an astonishing $130 million." ¶6.[3] In addition, Plaintiffs allege that, before the market opened on May 8, 2020, Defendant Boguski confirmed the connection between the losses disclosed on May 7, 2020, and Defendants' failure to apply their professed conservatism to the TeamHealth account, by attributing the losses to "a unique national account structure," and stating "there are no other structures in our book of

---

[2]    Accordingly, Defendants' reliance on *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 682 (D. Md. 2018), and *In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*, 251 F.R.D. 656, 666 (D. Utah 2008), is misplaced. *See* Opp. at 9, 15.

[3]    *See also* MTD Opinion at 1-2 ("When ProAssurance ultimately shared aspects of the TeamHealth deal and its corresponding losses with investors over the course of several months in 2020, ProAssurance's stock price apparently plummeted . . . .").

4856-0544-4399.v1

business that would even be close to the structure that was offered here." ¶290. Indeed, the Court expressly relied on these allegations in upholding Plaintiffs' claims regarding PRA's purported "commitment to underwriting discipline and high-quality risk selection." MTD Opinion at 52.[4]

Finally, Defendants' own documents confirm that the ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Specifically, ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[4] Defendants' argument that Boguski's May 8, 2020 statements were not "corrective" because there was purportedly "nothing new" about the "description of TeamHealth's 'unique structure'" misses the point. Opp. at 13. The new information disclosed by Boguski on May 8, 2020 was that the "unique structure" of the TeamHealth policy caused an **additional** $50 million in losses that was **first disclosed on May 7, 2020**. *See* ¶290. Thus, Defendants' authorities are inapposite. *See* Opp. at 13. Moreover, Defendants' unsupported assertion that these losses were "in line with what a reasonable investor would have expected" (*id.* at 12) ignores the fact that Defendants continued to assuage investor concerns by falsely stating they had "put a lot of conservatism on [the TeamHealth losses]" and were at a "higher confidence point in reserving" (¶193), and is undermined both by PRA's statistically significant stock price decline on May 8, 2020 and analysts' reaction to the news. *See* Feinstein Report (ECF 80-1), Ex. 7; Ex. B at 119:2-22, 121:4-8, 146:1-8; ¶105; *see also In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 213-14 (D. Minn. 2020) (declining to shorten class period where defendants "continued the alleged misrepresentations" and the final corrective disclosure "revealed new information" followed by "a statistically significant drop in share price"); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 100 (S.D.N.Y. 2018) (declining to shorten class period, because "[w]hether the [previous] disclosures cured the prior misstatements is a merits issue . . . [that] is better suited for summary judgment or trial").

- 4 -



Indeed,

*Id*. Remarkably, Defendants did not disclose these highly material facts to investors until the end of the Class Period.

By revealing significant additional losses directly caused by the allegedly concealed information, the May Disclosures unquestionably served to further correct Defendants' misrepresentations concerning "ProAssurance's stated commitment to

- 5 -

4856-0544-4399.v1

caution and conservatism."[5]  *See* MTD Opinion at 40 (upholding claims based on Defendant's failure to disclose "the uniquely risky arrangement of and increasing dangers associated with the TeamHealth account").[6]  Thus, the ***full*** Class Period should be certified.

## III.    DEFENDANTS FAIL TO REBUT THE *BASIC* PRESUMPTION

Defendants' claim that they have "rebutted" the Supreme Court's *Basic* presumption of reliance by supposedly showing that the alleged misrepresentations "did not impact PRA's stock price" is wrong.  Opp. at 15.  As the Supreme Court recently affirmed, ***Defendants*** "bear the burden of persuasion to prove a lack of price impact."  *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, _U.S._, 141 S. Ct. 1951, 1958 (2021).  To do so, "Defendants must show that 'the alleged misstatements [had] ***no price impact whatsoever***.'"  *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019).  Satisfying this showing is a "***daunting task***," which Defendants fall woefully short of accomplishing here.  *Aranaz v. Catalyst Pharm.*

---

[5]  Defendants' argument regarding the reasons why certain statements made after January 22, 2020 were alleged to be false (*see* Opp. at 10) is irrelevant, as it says ***nothing*** about whether the information disclosed on May 7-8, 2020 served to further correct the ***other*** misrepresentations upheld by this Court.  *See Azar v. Grubhub, Inc.,* 2021 WL 4077327, at *5 (N.D. Ill. Sept. 7, 2021) (holding that a single disclosure corrected statements made across "seven sets of allegations").

[6]  Defendants' attempt to shorten the Class Period fails for the additional reason that their arguments raise merits-based loss causation issues that are inappropriate at the class certification stage.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812-13 (2011) (holding plaintiffs need not "show loss causation as a condition of obtaining class certification"); *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2014 WL 6661918, at *26 (N.D. Ala. Nov. 19, 2014) (finding the specific causes of a stock price decline following an alleged "corrective disclosure is a question of fact, so tied to the merits of this case that it is reserved for the trier of fact").

4856-0544-4399.v1

*Partners Inc.*, 302 F.R.D. 657, 673 (S.D. Fla. 2014).

First, "[b]ecause price impact can be observed on the 'front-end' (i.e., misstatements causing or maintaining inflation) *or* on the 'back-end' (i.e., a decline in price caused by the corrective disclosures), Defendants must affirmatively *disprove both* to satisfy their burden." *CenturyLink*, 337 F.R.D. at 209. Defendants plainly fail to do so here, as their own expert, Bruce Deal ("Deal"), ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See id.* at 211; *see also* Ex. B at 114:4-115:21, 117:17-118:3, 119:2-22, 120:21-122:23; Opp. at 15-22; Feinstein Report (ECF 80-1), Ex. 7. To the contrary, Deal ▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓ Ex. B at 116:20-24. These concessions "doom[]" Defendants' ability to show "that 'the alleged misstatements [had] no price impact whatsoever.'" *Monroe Cnty.*, 332 F.R.D. at 393.[7]

Indeed, the *CenturyLink* court recently relied on ▓▓▓▓▓▓▓▓▓▓▓▓▓ in finding that "Defendants have failed to rebut the *Basic* presumption because they are

---

[7]    *See also id.* ("a statistically significant price decline following an alleged corrective disclosure means one *cannot rule out price impact*"); *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *13 (S.D. Fla. Mar. 16, 2016) ("To rebut the presumption of reliance, Defendants must demonstrate that the corrective disclosures played *no part* in the decline in the Company's share price."); *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2020 WL 5757695, at *13 (D. Minn. Sept. 28, 2020) ("Defendants bear the burden of presenting evidence to show 'that the entire price decline on the corrective-disclosure dates was due to something other than the corrective disclosures.'").

- 7 -

unable to rebut evidence of back-end price impact." *See* 337 F.R.D. at 210-11. ███ ███████, that holding was based on the fact that Deal "admits that there were statistically significant price drops following [the] disclosure dates," and "Deal did not identify any confounding information disclosed on the corrective disclosure dates and did not analyze whether any of the price decline on those days was unrelated to the fraud" or "attempt to quantify the amount of the price drop that was caused by other factors." *See id*.

Second, Defendants' argument that "the price of PRA common stock either declined or increased by a statistically insignificant amount on the dates [the alleged misstatements were made]" (Opp. at 17-18) is plainly insufficient to meet the "daunting task" of proving such statements "had no price impact." *Aranaz*, 302 F.R.D. at 673. Defendants' alleged misrepresentations all concern confirmatory statements that were rendered misleading by Defendants' failure to disclose material information. *See* MTD Opinion at 22, 36-40.[8] As the Eleventh Circuit has routinely recognized, such misrepresentations are "designed to prevent a more precipitous decline in the stock's price, ***not bring about any change to it***." *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1256

---

[8]    *See also, e.g.*, ¶142 ("we're ***not seeing frequency change*** at this point in time"); ¶148 ("[w]e are ***continuing*** to establish and evaluate reserves with the same conservativism ***we have always used***"); ¶183 ("[t]hese results are ***consistent*** with our focus on underwriting discipline as we ***continue*** to emphasize careful risk selection").

4856-0544-4399.v1

(11th Cir. 2014).[9]  Thus, "it is unsurprising that the [stock price] did not move in a statistically significant manner on the dates that the purported misstatements . . . were made." *Waggoner v. Barclays PLC*, 875 F.3d 79, 104 (2d Cir. 2017).

Instead, under the "price maintenance theory," price impact for confirmatory misrepresentations like those alleged here is shown by price declines following the corrective disclosures. *See id.*; *see also Thorpe*, 2016 WL 4006661, at *13 ("'Measuring price change, [then], at the time of the corrective disclosure, rather than at the time of the corresponding misrepresentation, allows for the fact that many alleged misrepresentations conceal a truth, and thus maintain a stock's price.'").[10] As Defendants' own expert ***concedes***, ██████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████.[11]

Finally, Defendants' argument that there is no price impact "given the fundamental mismatch between the generic statements regarding PRA's 'conservatism' and the specific disclosures regarding a single account in early 2020"

---

[9]   *See also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1314 (11th Cir. 2011) ("Fraudulent statements that ***prevent*** a stock price from falling can cause harm by ***prolonging*** the period during which the stock is traded at inflated prices.") (emphasis in original); ¶301 (alleging that Defendants' "material misstatements and omissions" caused PRA's stock price to be "maintained at artificially inflated levels").

[10]   *See* Ex. B at 67:3-71:1, 107:17-109:25.

[11]   *See Plymouth Cnty.*, 2020 WL 5757695, at *12 ("Defendants' expert does not dispute that there were statistically significant price drops . . . . ***This is sufficient to prevent Defendants from completely 'sever[ing] the link' between the alleged misrepresentations and any impact on [Defendant's] stock price***.").

- 9 -

fails for multiple reasons. Opp. at 18. As an initial matter, the Court has already rejected Defendants' argument that their statements regarding PRA's purported commitment to "caution and conservatism" were generic. *See* MTD Opinion at 37-40. In so holding, the Court found that "[D]efendants' statements suggested that discipline and caution constituted a hallmark of ProAssurance's business – ***one that investors and analysts would cite as reasons to invest in the company***," and conveyed information "about the company's current financial conditions, especially with respect to the TeamHealth account, ***on which a reasonable investor would rely***." *Id.* at 39-40.[12] Indeed, investors and analysts ***did*** in fact rely on such statements in assessing the value of PRA stock. *See, e.g.,* ¶75; ███████████████████████████

███████████████████████████████████████████

██████████████████████████████; Exs. G-H;

Ex. B at 174:21-182:13.[13]

Furthermore, Defendants' argument regarding the purported "mismatch" between the misrepresentations and the corrective disclosures is premised on a blatant

---

[12] *See also id.* at 37 ("[D]efendants made many of the statements about ProAssurance's discipline and conservatism in calls with analysts to . . . 'allay investor concerns' . . . and 'assure[] investors that [ProAssurance] had taken steps to address 'increased severity' in the market.'").

[13] This reliance directly refutes Defendants' speculative argument regarding "similar generic statements regarding 'conservative' underwriting practices" made by PRA's peers. *See* Opp. at 21. The fact that the market expressly relied on Defendants' alleged misrepresentations demonstrates that those statements impacted PRA's stock price. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) (recognizing "'market professionals . . . affect[] stock market prices'"). Further, ████████████████████████████████████████ ████. *See* Ex. B at 191:23-192:13.

mischaracterization of Plaintiffs' allegations. *See* Opp. 18-20. Plaintiffs do *not* allege that Defendants' statements were false because PRA was not *generally* conservative; rather, such statements were materially misleading because they concealed the "uniquely risky arrangement of and increasing dangers associated with" TeamHealth, the largest account ever signed by PRA. MTD Opinion at 40.[14] As such, the truth revealed by the alleged corrective disclosures was that PRA had deviated from its professed conservatism *in connection with the TeamHealth account* – not that PRA was *generally* not conservative. *See, e.g.*, ¶6. Defendants' argument that the market's view of PRA's general business practices did not change following the alleged corrective disclosures is, thus, irrelevant to price impact. *See* Opp. at 19-21. Instead, price impact is firmly established by the market's strong reaction to the disclosure of the TeamHealth losses – which Defendants expressly attributed to the "unique structure" of the TeamHealth policy, and which analysts described as "*particularly surprising*" given PRA's reputation as "*one of the most conservative insurers in the industry*." *See* ¶¶100-101, 104-106, 290; Exs. I-N; Ex. B at 71:3-16, 131:10-21, 146:1-8, 157:1-159:20; *see also Monroe Cnty.*, 332 F.R.D. at 396 ("As the court in *Regions* found when considering price impact, the existence of a price decline and analyst commentary highlighting the negative news is, 'of course . . . evidence of price impact.'"); *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 921 (11th Cir. 2020) (a corrective disclosure "'need not precisely mirror the earlier misrepresentation,'" as

---

[14]  *See also, e.g.*, ¶5; Ex. B at 53:10-55:7, 57:7-14.

- 11 -

long as it "'relate[s] back to the misrepresentation'").[15]

## IV.    LEAD PLAINTIFFS ARE ADEQUATE REPRESENTATIVES

Defendants' sole argument regarding adequacy is that Plaintiffs – both sophisticated institutional investors of the exact type that Congress has encouraged to serve in a leadership capacity in securities actions – "'abdicated'" their duties because they purportedly ████████████████████████████████████████ ████████████████████████████████████. *See* Opp. at 24-25.    Contrary to Defendants' fictitious assertions,[16] Plaintiffs have established a robust record of their adequacy to "vigorously and competently represent[] the interests of the proposed [C]lass members throughout this litigation," by, among other things: reviewing the Complaint and other filings; producing documents; preparing, traveling, and sitting for depositions; receiving regular updates from counsel regarding the case; and filing declarations in support of the Motion. *In re Jeld-Wen Holding, Inc. Sec. Litig.*, 2021

---

[15]  Defendants' argument that the corrective disclosures did not correct their alleged misrepresentations also fails because it raises loss causation issues that are inappropriate to resolve at the class certification stage. *See* Ex. B at 77:1-18 ████████████████████████████████████████████████████████████████████; *see also Monroe Cnty.*, 332 F.R.D. at 395 ("the inquiry [at class certification] is whether Defendants have proven a complete lack of price impact during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage"); n.6, *supra*.

[16]  For instance, while Defendants complain that ████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████

4856-0544-4399.v1

WL 1186326, at *4 (E.D. Va. Mar. 29, 2021).[17]  Moreover, the law is clear that "in securities cases such as these, where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987).[18]  If anything, "[t]he fact that the proposed Class Representatives are allowing their counsel to prosecute the case demonstrates the exercise of good judgment and not abdication of their obligations." *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002).[19]  Thus, adequacy is clearly established.

## V.    INDIVIDUALIZED ISSUES DO NOT PREDOMINATE

Defendants argue that "individualized issues will predominate over common ones" because the data underlying Plaintiffs' forensic analysis regarding the "increase in TeamHealth claims" was purportedly publicly available during the Class Period. Opp. at 22-23. The Complaint, however, clearly alleges that Plaintiffs' analysis could not have been conducted without "knowing **both** the size of the charges recorded in

---

[17]  *Accord Monroe Cnty.*, 332 F.R.D. at 379 (adequacy established where "[p]laintiffs have supervised and monitored the progress of the litigation, have participated in discussions with Lead Counsel concerning case developments, [and] have reviewed Court filings"); *see also* ECF 80-2, 80-3; ▮▮▮▮▮▮▮▮▮▮▮▮ In. Br. at 12.

[18]  *See also Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 282 F.R.D. 607, 617 (N.D. Ala. 2012) ("the law does not demand a class representative understand or even have specific knowledge of claims and issues before the court"), *aff'd in part & vacated in part on other grounds*, 762 F.3d 1248 (11th Cir. 2014).

[19]  Defendants' authorities (Opp. at 24-25) are inapposite as none stand for the proposition that ▮

4Q19 and that they had been caused by TeamHealth." ¶133. This information was only "gleaned through Lead Plaintiffs' investigation and Defendants' corrective disclosures." *Id.* Thus, contrary to Defendants' assertions, the information needed for Plaintiffs' analysis of TeamHealth's rising claims was *not* publicly available during the Class Period. Defendants provide no factual basis to conclude otherwise, and ██████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████.[20]  Thus, Defendants' predominance argument fails.[21]

Defendants' alternative argument that "the claims information Plaintiffs argue contradicts the alleged frequency misstatements was already reflected in PRA's stock price, and those statements were thus not 'corrected' by subsequent disclosures" (Opp. at 23) is nothing more than a "truth-on-the-market defense," which courts routinely hold "is not appropriately resolved at the class certification stage." *Holwill v. AbbVie*

---

[20]  Specifically, ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████   *See* Ex. B at 200:15-204:8.

[21]  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) (rejecting similar argument and certifying class where "despite all of this speculation, [defendant] provides no direct evidence that any putative class member actually knew about [the fraud] before the scandal became public"). Defendants' reliance on *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020) (Opp. at 23), is inapposite, as there the allegedly omitted information was readily available to investors during the class period and reported in numerous "major publications" with wide-scale distribution. *Id.* at *4.

*Inc.*, 2021 WL 7366274, at *2 (N.D. Ill. Sept. 23, 2021).[22]  Moreover, the statistically significant stock price declines following the corrective disclosures, as well as analysts' reaction to the news, undermine Defendants' argument that this information was known to the market during the Class Period.

Finally, even if Defendants' arguments were factually supported and legally appropriate at this stage (which they are not), such arguments pertain only to "the alleged frequency misstatements." *See* Opp. at 23; ECF 93-11 at 26; Ex. B at 195:8-16.  As such, they do not even arguably provide a basis for denying certification of Plaintiffs' claims regarding PRA's "stated commitment to caution and conservatism." MTD Opinion at 40.

## VI.   CONCLUSION

For the reasons set forth above and in the Initial Brief, Plaintiffs respectfully request that the Motion be granted.[23]

DATED:  August 19, 2022                    Respectfully submitted,

s/ ROGER H. BEDFORD, JR.
ROGER H. BEDFORD, JR.

---

[22]  *See also, e.g.*, *CenturyLink*, 337 F.R.D. at 211 ("at the class certification stage, a truth-on-the-market defense raises common class-wide issues") (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 482 (2013)); *Regions*, 2014 WL 6661918, at *9.

[23]  The Discovery Order compelled Defendants to produce a significant amount of documents that are directly relevant to issues concerning this Motion.  Defendants do not expect to substantially complete their production of such documents until September 9, 2022.  As such, Plaintiffs reserve their right to supplement the record for the Motion if relevant evidence is produced after the filing of this brief.

4856-0544-4399.v1

ROGER BEDFORD, ATTORNEY AT
LAW, LLC
ROGER H. BEDFORD, JR.
(ASB: 3651 D60R)
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)
rogerbedfordattorneyatlawllc@gmail.com

GUIN, STOKES & EVANS, LLC
DAVID J. GUIN
TAMMY M. STOKES
DAWN STITH EVANS
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)
davidg@gseattorneys.com
tammys@gseattorneys.com
devans@gseattorneys.com

Local Counsel for Lead Plaintiffs

ROBBINS GELLER RUDMAN
  & DOWD LLP
NATHAN R. LINDELL
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com

- 16 -

ROBBINS GELLER RUDMAN
 & DOWD LLP
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
MASON G. ROTH
(admitted *pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
bheikkinen@rgrdlaw.com
mroth@rgrdlaw.com

SAXENA WHITE P.A.
STEVEN B. SINGER
(admitted *pro hac vice*)
SARA DILEO (admitted *pro hac vice*)
KYLA GRANT (admitted *pro hac vice*)
CRAIG MAIDER (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
sdileo@saxenawhite.com
kgrant@saxenawhite.com
cmaider@saxenawhite.com

- 17 -

4856-0544-4399.v1

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
(admitted *pro hac vice*)
LESTER R. HOOKER
(admitted *pro hac vice*)
JONATHAN LAMET
(admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
jwhite@saxenawhite.com
lhooker@saxenawhite.com
jlamet@saxenawhite.com

Lead Counsel for Lead Plaintiffs

CAVANAGH & O'HARA
JOHN T. LONG
(admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

Additional Counsel for Lead Plaintiffs

- 18 -

4856-0544-4399.v1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 19, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ ROGER H. BEDFORD, JR.
ROGER H. BEDFORD, JR.

ROGER BEDFORD, ATTORNEY AT
LAW, LLC
P.O. Box 1149
Russellville, AL 35653
Telephone: 256/332-6966
265/332-6967 (fax)

Email: rogerbedfordattorneyatlawllc@gmail.com

4856-0544-4399.v1

# Mailing Information for a Case 2:20-cv-00856-AKK Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Walter W Bates**
  Bbates@starneslaw.com

- **Roger H Bedford , Jr**
  rogerbedfordattorneyatlawllc@gmail.com

- **Sara M. DiLeo**
  sdileo@saxenawhite.com

- **James Bringhurst Eubank**
  James.Eubank@beasleyallen.com

- **Dawn Stith Evans**
  devans@gseattorneys.com

- **Jay M Ezelle**
  JEzelle@starneslaw.com

- **Janet A Gochman**
  jgochman@stblaw.com

- **Kyla Grant**
  Kgrant@saxenawhite.com

- **Cole Robinson Gresham**
  cgresham@starneslaw.com

- **David J Guin**
  davidg@gseattorneys.com

- **Bailie L Heikkinen**
  bheikkinen@rgrdlaw.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **Jonathan Dov Lamet**
  jlamet@saxenawhite.com

- **Michael R Lasserre**
  mrl@starneslaw.com

- **Nathan R Lindell**
  nlindell@rgrdlaw.com

- **John T Long**
  johnlong@cavanagh-ohara.com

- **Carl Jacob Lundqvist**
  jacob.lundqvist@stblaw.com

- **Craig Corey Maider**
  cmaider@saxenawhite.com

- **Wilson Daniel Miles , III**
  dee.miles@beasleyallen.com

- **Mason G Roth**
  mroth@rgrdlaw.com

- **Steven B Singer**
  ssinger@saxenawhite.com

- **Tammy McClendon Stokes**
  tammys@gseattorneys.com

- **Joseph E. White**
  jwhite@saxenawhite.com

- **Jonathan K Youngwood**
  jyoungwood@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)