FILED
2022 Aug-19  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

————————

TELEPHONE:
FACSIMILE: +1-212-455-2502

Direct Dial Number                                                                      E-mail Address

+1-212-455-2815                                                                      jgochman@stblaw.com

BY E-MAIL                                    May 4, 2022

Re:    *Sheet Metal Workers Loc. 19 Pension Fund v.
       ProAssurance Corp., et al.*, No. 2:20-cv-00856-AKK (N.D.
       Ala.)

Nathan Lindell
Robbins Geller Rudman & Dowd LLP
655 W. Broadway Unit 1900
San Diego, CA 92101

Sara DiLeo
Saxena White P.A.
10 Bank Street, 8th Fl.
White Plains, NY 10606

Dear Nate and Sara:

    I write on behalf of Defendants ProAssurance Corporation ("ProAssurance" or the "Company"), W. Stancil Starnes, Edward L. Rand, Jr., Dana S. Hendricks, Howard H. Friedman, and Michael L. Boguski (collectively, "Defendants") in the above-captioned action (the "Action") in response to your April 8, 2022 letter (the "Letter"), which purports to summarize the parties' discussion on the March 30, 2022 meet and confer (the "March 30 M&C") regarding Defendants' Responses and Objections (the "R&Os") to Lead Plaintiffs' First Set of Requests for Production of Documents (the "Requests") and the parties' respective positions regarding the topics discussed during the March 30 M&C.

    As explained during the parties' discussion and reiterated below, Plaintiffs' Requests are overbroad in view of the narrowed scope of the Action following the Court's decision granting in part Defendants' motion to dismiss (the "MTD Order"), and Defendants' R&Os appropriately object to Plaintiffs' Requests that extend beyond the few alleged misstatements that remain at issue in this Action.

BEIJING      HONG KONG      HOUSTON      LONDON      LOS ANGELES      PALO ALTO      SÃO PAULO      TOKYO      WASHINGTON, D.C.

Simpson Thacher & Bartlett LLP

Nathan Lindell                                -2-                                May 4, 2022

### I.    Defendants' Objections to Plaintiffs' Definitions of the "Class Period" and "Relevant Time Period" Are Well-Founded

Plaintiffs' Requests include time period definitions that are inconsistent with the current status of this Action.  Specifically, the MTD Order significantly narrowed the scope of the Action and eliminated entire categories of alleged misstatements, including those that were purportedly "corrected" by information disclosed at the end of Plaintiffs' alleged Class Period.  Defendants' objections to Plaintiffs' overbroad time periods are consistent with the Court's decision and accurately reflect the scope of the remaining issues in this Action following the MTD Order.

Class Period:  The MTD Order expressly dismissed all Section 10(b) claims against all Defendants "for the alleged category of omissions regarding TeamHealth's decision to purchase tail coverage instead of renewing its policy."  ECF No. 61 at 2; *see also id.* at 57 ("[P]laintiffs' § 10(b) claims predicated on ProAssurance's loss reserves and TeamHealth's nonrenewal and tail coverage must be dismissed.").  Courts routinely deny attempts by parties to pursue discovery related to dismissed claims.  *See, e.g.*, *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2012 WL 4764589, at *7 (D.N.J. Oct. 5, 2012) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken" because "rulings granting dispositive motions . . . define, and narrow, the scope of permissible discovery.").

As Plaintiffs' own allegations make clear, the ***only*** alleged category of misstatements that were purportedly "corrected" by ProAssurance's disclosures on May 7–8, 2020 relate to TeamHealth's election not to renew its policy and purchase tail coverage—***the exact category of alleged misstatements this Court has already dismissed***.  *See, e.g.*, ECF No. 44 (the "Complaint") ¶ 12 ("Defendants . . . continued to conceal the full truth regarding the TeamHealth account" because they "knew that by the time they disclosed the adverse development on January 22, 2020, TeamHealth was highly unlikely to renew its policy and would instead exercise its option to purchase 'tail coverage' . . . .  Defendants concealed this information from investors until May 7, 2020"); ¶ 188 (alleging that Defendants made materially misleading statements on January 22, 2020 "because Defendants knew at the time that TeamHealth was highly unlikely to renew its policy . . . and would instead exercise its option for tail coverage"); ¶ 286 (alleging that "ProAssurance's stock remained artificially inflated" after January 22, 2020 because "Defendants knew by the time of this disclosure that TeamHealth was highly unlikely to renew its policy and would instead exercise its option to purchase 'tail coverage'").

Plaintiffs' claim that Defendants' disclosures on May 7–8, 2020 "corrected" alleged misstatements regarding ProAssurance's "conservative" and "disciplined" business practices is a naked attempt at revisionist pleading to avoid the result of the MTD Order.  The Court accepted Plaintiffs' allegations that the later-in-time corrective disclosure related to TeamHealth's decision not to renew its policy and instead purchase tail coverage.  *See* ECF No. 61 at 14 ("Essentially, the plaintiffs contend that the defendants knew before the January announcement that TeamHealth would not renew its policy and should have disclosed this information.  Allegedly, the defendants sat on this knowledge until May 7,

Simpson Thacher & Bartlett LLP

Nathan Lindell                                          -3-                                          May 4, 2022

2020."). Plaintiffs cannot now present new theories of alleged misstatements without first seeking leave to amend their Complaint.

The fact that the tail coverage option was "part of the overall TeamHealth policy," as pointed out in the Letter (Letter at 3) is of no relevance. ProAssurance repeatedly disclosed to investors that *all* claims-made policies issued by its subsidiaries include a tail coverage option. *See, e.g.*, 2018 10-K at 70 ("We offer extended reporting endorsement or 'tail' coverage to insureds who discontinue their claims-made coverage with us[.]"). The fact that the TeamHealth policy included such an option is therefore the exact opposite of a "unique structure," and the statements Plaintiffs point to on May 7–8, 2020 discussing the "unique national account structure" of the TeamHealth policy are irrelevant with respect to the tail coverage component of that policy.

Having alleged that the May 7–8, 2020 disclosures corrected a category of misstatements the Court has now dismissed, Plaintiffs have no basis for extending the Class Period beyond the final corrective disclosure date that remains at issue in this case—January 22, 2020.

Relevant Time Period:  Plaintiffs' definition of the "Relevant Time Period" is overbroad for many of the same reasons described above. First, with respect to the proposed start date, January 1, 2016, Defendants pointed out on the March 30 M&C (and Plaintiffs agreed) that several of the Requests relate to events beginning no earlier than 2018. Defendants further indicated their willingness to extend certain searches related to the original underwriting and signing of the TeamHealth policy to 2016. Defendants will continue negotiating with Plaintiffs in good faith about the appropriate time periods for certain searches that may extend further back than the bulk of Plaintiffs' allegations, which relate to alleged misstatements and omissions beginning in August 2018.

Second, with respect to Plaintiffs' proposed end date of November 7, 2020, this date is similarly overbroad. Plaintiffs acknowledged on the March 30 M&C that there was no specific rationale supporting this date. As noted above, the Class Period necessarily ends on January 22, 2020 in view of Plaintiffs' own allegations and the MTD Order, and there are no "legal and factual issues" raised by Defendants' position that would warrant the excessive discovery Plaintiffs seek. Letter at 5. Cutting off discovery on January 22, 2020 is therefore entirely appropriate. *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC.*, 2011 WL 7575379, at *6 (C.D. Cal. Dec. 20, 2011) ("limit[ing] discovery [to] . . . the Class Period"). And even if a discovery cutoff date after the end of the Class Period were appropriate, Plaintiffs have offered no justification at all for their proposed end date—over nine months after January 22, 2020, and over four months after the initial complaint was filed in this action. *See In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 2013 WL 5769915, at *4 (S.D.N.Y. Oct. 24, 2013) (denying motion to compel where requesting party failed to "sufficiently articulate[] a basis to expand the time frame beyond the Class Period").

Plaintiffs' alternative end date of May 8, 2020 (Letter at 6) is similarly inappropriate. Plaintiffs claim that "Defendants continued to disclose additional details regarding the 'unique' structure" of the TeamHealth policy through this date. *Id.* Plaintiffs gloss over the fact that Defendants described the TeamHealth policy *using the exact same language* several

Simpson Thacher & Bartlett LLP

Nathan Lindell                                    -4-                                    May 4, 2022

months prior to May 8, 2020.  *See* ProAssurance Q4 2019 earnings call transcript (February 21, 2020) at 11 (statement by Mr. Boguski that the TeamHealth policy "was a unique structure," including with respect to "severity insurance exposure" and "pricing" and noting that ProAssurance "ha[s] no others in [its] book of business").  Plaintiffs have presented no basis (and there is none) for seeking discovery related to statements that had been disseminated to the market well in advance of Plaintiffs' desired discovery end date.

## II.    Defendants' Objections to Plaintiffs' Definitions of "Frequency" and "Severity" Are Appropriate

Defendants' R&Os also included objections to certain of Plaintiffs' definitions that are vague, overbroad, and unduly burdensome.  As discussed in further detail below, Defendants' construal of these terms is consistent with ProAssurance's public disclosures and avoids the ambiguities and overbreadth presented by Plaintiffs' proposed definitions.

Frequency:  For several years, ProAssurance's 10-K filings included a "Glossary of Selected Insurance and Related Financial Terms," which was intended to "help [ProAssurance's] investors and other interested parties better understand [the Company's] report."  *See* 2005 10-K at 24; 2006 10-K at 8; 2007 10-K at 6; 2008 10-K at 8 (defining "frequency" as the "[n]umber of times a loss occurs per unit of risk or exposure").  These definitions were based on "recognized industry sources such as A. M. Best and The Insurance Information Institute."  *See, e.g.*, 2005 10-K at 22.  The Insurance Information Institute continues to endorse a similar definition of "frequency."  *See* "I.I.I. Glossary," INSURANCE INFORMATION INSTITUTE, https://www.iii.org/resource-center/iii-glossary/F (last accessed May 4, 2022) (defining "frequency" as the "[n]umber of times a loss occurs.").  In subsequent filings, including during the time period for which Plaintiffs have requested documents, ProAssurance has incorporated another definition of frequency, as the "number of claims per exposure unit."  *See* 2013 10-K at 34; 2014 10-K at 33; 2015 10-K at 36; 2016 10-K at 37; 2017 10-K at 38.

Plaintiffs' definition of frequency as encompassing "***any*** measurement intended to quantify the number or rate of reported claims" is patently overbroad and inconsistent with ProAssurance's repeated disclosures to investors.  Moreover, as Defendants explained during the March 30 M&C, the fact that one Defendant may have defined frequency differently during an investor call does not mean that the definition offered as part of those remarks is more appropriate than the definition ProAssurance has repeatedly used in its SEC filings.[1]  Defendants further explained that the parties' differing views on the appropriate definition of "frequency" would not have any impact on the actual searches run, and Defendants have proposed several ESI searches that include the term "frequency" without further modification.  For purposes of its review of potentially responsive documents,

---

[1]    Similarly, the fact that the Court relied on a definition of frequency included in Plaintiffs' Complaint in the MTD Order is of no moment, since the Court expressly stated that it "accept[ed] the allegations of the complaint as true" solely for purposes of deciding the motion.  *See* ECF No. 61 at 5 n.2.

Simpson Thacher & Bartlett LLP

Nathan Lindell                                                    -5-                                                    May 4, 2022

Defendants will construe frequency as either (i) the "number of times a loss occurs per unit of risk or exposure," or (ii) the "number of claims per exposure unit."

Severity:  With respect to Plaintiffs' proposed definition of "severity," the definition used by Defendants in the R&Os was similarly included in the Company's "Glossary of Selected Insurance and Related Financial Terms" in multiple 10-K filings.  *See, e.g.*, 2008 10-K at 11.  Plaintiffs' Letter sets forth purportedly clarifying definitions of "severity" that were not included in Plaintiffs' Requests and that remain vague, overbroad, and unduly burdensome.  *See* Letter at 4.  In particular, Plaintiffs have offered no explanation of what "implied" costs are for purposes of calculating severity.  Including such "implied" costs in the definition of severity would furthermore be inconsistent with ProAssurance's SEC filings.  *See, e.g.*, 2019 10-K at 41, 152 (defining "severity" as "actual loss costs"); 2018 10-K at 41, 179 (same).  Accordingly, Defendants will construe the definitions set forth in the Letter without including their references to "implied loss . . . [or] loss adjustment expenses."

### III.    Defendants' General Objection to Requests that Purport to Seek Information Protected by HIPAA or Analogous State Laws Properly Seeks to Protect Private Medical Records from Disclosure in This Action

Defendants' R&Os included a general objection to the Requests to the extent they call for "the production of documents that contain confidential and/or proprietary business information or information that is protected under any applicable laws or regulations, including medical information protected by the Health Insurance Portability and Accountability Act of 1996 ['HIPAA'] or analogous state laws."  Defendants' position with respect to such information is consistent with the Protective Order (ECF No. 73), which provides that the parties shall meet and confer in good faith "[i]n the event that certain Protected Data [defined to include, for example, information subject to HIPAA] requires protections beyond those afforded by this Order."

As Defendants stated on the March 30 M&C, they will inform Plaintiffs if they intend to withhold any responsive documents on the basis of this General Objection. Plaintiffs' Letter argues that "HIPPA [sic] protections are not absolute" and that regulations "provid[ing] the means by which a party to a litigation can gain access to otherwise private medical records . . . directly appl[y] here."  Defendants have not, however, yet identified any information that may call for additional protection consistent with the Protective Order, and Plaintiffs have not identified the need for any information that may be subject to such protections.  Plaintiffs' position is therefore premature.  Defendants reiterate that they will inform Plaintiffs of any information they intend to withhold on the basis of HIPAA or other analogous protections, at which point the parties may proceed to confer in good faith and raise the dispute with the Court in accordance with the Protective Order.

### IV.    Defendants' Specific Responses and Objections

The parties have exchanged ESI search proposals and are continuing to negotiate the scope of such discovery, including appropriate search terms and custodians.  Defendants are furthermore continuing to review what, if any, Documents are readily available and can be

Nathan Lindell                                    -6-                                    May 4, 2022

produced in response to the Requests.[2]  With respect to Defendants' R&Os to Plaintiffs' specific Requests and Plaintiffs' responses and/or counterproposals set forth in the Letter, and without waiver of any of Defendants' Specific or General Objections set forth in their R&Os, Defendants respond as follows:

Request No. 1:  *Documents or Communications regarding the policy or policies issued by ProAssurance to TeamHealth, including any negotiation, analysis, or monitoring related to the policy, its underwriting, pricing, terms, reinsurance coverage, potential or actual amendments, renewals, decisions not to renew, and tail coverage option.*

Defendants reiterate their objections to Request No. 1 to the extent it seeks discovery related to claims that were dismissed in the MTD Order.  Moreover, while Defendants will not redact on relevance grounds information regarding the TeamHealth tail coverage option and/or renewal that appears in otherwise responsive documents, Defendants will not produce any standalone documents discussing only the TeamHealth tail coverage and/or policy renewal, which are no longer at issue in this Action.

With respect to Plaintiffs' specific requests regarding (i) "the approximate date on which negotiations regarding the initial TeamHealth policy or policies commenced"; (ii) "the date on which the initial TeamHealth policy or policies were signed"; and (iii) "the subsequent dates on which the TeamHealth policy or policies were renewed" (Letter at 7), this information will be provided to Plaintiffs in the discovery materials shared on a rolling basis.

Request No. 3:  *Communications with, and all documents submitted to, ProAssurance's regulators, including the SEC and state insurance regulators, concerning ProAssurance's procedures for setting loss picks or expected losses, and calculating, updating, and maintaining loss reserves, loss rations and combined ratios for ProAssurance's business, as well as any actuarial reports submitted to ProAssurance's state insurance regulators.*

As stated on the March 30 M&C, Defendants consider Request No. 3 overbroad and unduly burdensome in view of the remaining allegations in this Action.  Specifically, while Request No. 3 seeks "[c]ommunications with, and all documents submitted to . . . state insurance regulators," Plaintiffs' Complaint mentions only two ProAssurance subsidiaries—ProAssurance Specialty Insurance Company, Inc. ("PRA-Specialty") and ProAssurance Casualty Company ("PRA-Casualty")—that would have had communications with or submitted documents to such regulators.  According to Plaintiffs, PRA-Specialty is the "relevant insurance subsidiary," and PRA-Specialty ceded its premiums and "claims-related costs" to PRA-Casualty.  Compl. ¶¶ 17, 135.  Defendants therefore continue to view

---

[2]     Plaintiffs' April 5, 2022 discovery counterproposal included 18 categories of purported "easily segregable documents."  Defendants disagree with Plaintiffs' characterization of several of these categories as constituting "easily segregable documents" and anticipate addressing several categories through the general ESI search process.

Simpson Thacher & Bartlett LLP

Nathan Lindell                                  -7-                                  May 4, 2022

Plaintiffs' revised counterproposal, which limits Request No. 3 to "responsive documents and communications concerning the TeamHealth account and/or ProAssurance's HCPL book of business" as overbroad in view of the allegations contained in the Complaint. Defendants will therefore limit their production of responsive materials, if any, to documents or communications related only to one or more of ProAssurance, PRA-Specialty, and PRA-Casualty.

With respect to Plaintiffs' request that Defendants produce Bates-stamped copies of publicly available materials responsive to Request No. 3, Defendants are willing to produce all quarterly and annual state insurance filings by PRA-Specialty and PRA-Casualty filed during the time period between August 8, 2018 and January 22, 2020.

Request No. 9:  *Documents concerning any changes in the price or volume of publicly traded ProAssurance common shares during the period of May 7-8, 2020, inclusive, including any discussion or analysis of actual or potential factors that may have contributed to such changes.*

Defendants explained during the March 30 M&C that Request No. 9 is overbroad and seeks documents that are not relevant to any claim or defense in the Action, including for the reasons set forth in Section I, *supra*.  Defendants will therefore not produce any documents in response to Request No. 9.

Request No. 18:  *Documents concerning ProAssurance's analyses, deliberations, discussions, reviews, negotiations, and decisions in connection with the renewal (or non-renewal) of the TeamHealth policy and the related exercise of the "tail coverage" policy by TeamHealth, which exposed the Company to a recognition of "a net loss of up to approximately $50 million" in the 2Q20.* See *Complaint, ¶¶288-289.*

As Defendants stated on the March 30 M&C, Request No. 18 is plainly inconsistent with the MTD Order, which dismissed **all** "§ 10(b) claims predicated on . . . TeamHealth's nonrenewal and tail coverage" against **all** Defendants.  Plaintiffs' Request ignores the Court's decision and seeks discovery related to claims that have already been dismissed in this Action.  Plaintiffs' claim—made for the first time after the MTD Order—that disclosures regarding TeamHealth's nonrenewal and tail coverage purchase are relevant to alleged misstatements regarding ProAssurance's "conservative" and "disciplined" business practices, is belied by the allegations in Plaintiffs' own Complaint.  *See* Section I, *supra*.  Defendants will therefore not produce any documents in response to this Request.

Request No. 28:  *Personnel files and documents relating to the employment agreement(s) of each of the Individual Defendants and each current or former ProAssurance employee identified in the Parties' Fed. R. Civ. P. 26(a)(1) disclosures (and any amendments or supplements thereto).*

As Defendants explained on the March 30 M&C, Request No. 28 is overbroad and not proportional to Plaintiffs' needs in this Action.  While the Letter narrows this Request to include only the Individual Defendants, Plaintiffs' request for the entire personnel files of these individuals remains overbroad.  Courts in the Eleventh Circuit have noted the "strong

Simpson Thacher & Bartlett LLP

Nathan Lindell                                    -8-                                    May 4, 2022

public policy against the public disclosure of personnel files." *Cabrera v. Goodyear Tire & Rubber Co.*, 2011 WL 13220447, at *1 (S.D. Fla. May 18, 2011). Parties seeking discovery have therefore not been allowed to "obtain the entire personnel file merely because of the possibility that there is something in it that may prove [their] case." *Id.* (internal quotation marks and citation omitted). To the extent Plaintiffs have specific requests for materials that may be found in the Individual Defendants' personnel files, Defendants will consider such requests as they may be relevant to this Action. Defendants agree to produce the employment agreements, if any, of the Individual Defendants that were in effect between August 8, 2018 and January 22, 2020.

        Request No. 29: *Documents relating to the Individual Defendants' compensation from ProAssurance during the Relevant Period (and any changes thereto), including, but not limited to, documents concerning any performance reviews, severance packages, termination agreements, parachute payments, payments made pursuant to Internal Revenue Code §280G, 26 U.S.C. §280G, other payments, loans or taxable benefits received from ProAssurance, and all bonuses, incentives, and related compensation policies and agreements.*

        As explained on the March 30 M&C, Request No. 29 is overbroad in view of the MTD Order. Specifically, the Court did not credit Plaintiffs' allegations that "[t]he Individual Defendants were incentivized to commit the fraudulent acts alleged [in the Complaint] by the Company's incentive-based compensation structure." Compl. ¶ 276. The Court furthermore rejected Plaintiffs' scienter allegations based on "the departure of executives" because Plaintiffs "fail[ed] to link the resignations or terminations with fraud." ECF No. 61 at 44. Given the narrowed scope of the Action following the MTD Order, Defendants are only willing to produce responsive materials, if any, to Request No. 29 related to Defendants Friedman and Boguski, the only two Individual Defendants with respect to whom Plaintiffs' scienter allegations were upheld at the motion to dismiss stage. Defendants reiterate that they will not produce any publicly available documents in response to this Request.

        Request No. 30: *Documents relating to the Individual Defendants' and each Section 16 officer's holdings and transactions in ProAssurance securities for or during the Relevant Period, including, but not limited to, documents concerning purchases, sales, donations or use of ProAssurance securities as collateral, any loans of ProAssurance stock or options, Rule 10b5-1 trading plans, or any other plans or blackouts restricting or governing the Individual Defendants' or Section 16 officers' ability to buy or sell ProAssurance stock or options, any policies, procedures or guidelines concerning insider trading in place at ProAssurance, and all communications regarding any violations of those policies, procedures or guidelines.*

        Defendants explained on the March 30 M&C that Request No. 30 seeks information that is irrelevant to this Action given the complete lack of allegations regarding insider trading in the Complaint. To the extent Plaintiffs are seeking documents related to "***potential*** arguments that Defendants ***may*** raise based on the Complaint's lack of allegations regarding insider trading during the Class Period" (Letter at 10), such speculation on

Nathan Lindell                                    -9-                                    May 4, 2022

Plaintiffs' part does not provide adequate support for this Request.[3]  Defendants will therefore not produce any documents in response to Request No. 30.

        Request No. 32:  *Documents sufficient to identify all personal and business phone numbers, email addresses, aliases or screen names, and personal or executive assistants for each of the Individual Defendants and for each current or former ProAssurance employee identified in the Parties' Fed. R. Civ. P. 26(a)(1) disclosures (and any amendments or supplements thereto).*

        During the March 30 M&C, Defendants expressed concern about Plaintiffs' request for personal contact information for a large group of current and former ProAssurance employees and affiliates.  Plaintiffs' Letter narrows this request to include information regarding any agreed-upon custodians' "use of any means of communication other than ProAssurance-hosted email servers for business-related communications."  Letter at 10.  Defendants continue to view Plaintiffs' position as overbroad, in particular Plaintiffs' reference to "any means of communication."  Defendants agree to provide information regarding the Individual Defendants' ordinary course-use of email addresses not hosted by ProAssurance for business-related communications.

        Request No. 33:  *A current résumé or curriculum vitae for each of the Individual Defendants and each current or former ProAssurance employee identified in the Parties' Fed. R. Civ. P. 26(a)(1) disclosures (and any amendments or supplements thereto).*

        Defendants stated on the March 30 M&C that Request No. 33 is overbroad and seeks information that is not relevant to the Action.  Plaintiffs' Letter narrows Request No. 33 to the Individual Defendants and "any document custodians agreed to by the parties or ordered by the Court."  Letter at 10.  Defendants continue to view this Request as overbroad, in particular as it relates to former ProAssurance employees that may be included among the document custodians in this Action.  Defendants are willing to produce current résumés or CVs (to the extent any exist and are in Company files) for the Individual Defendants and any current ProAssurance employees included among the custodians agreed to by the parties or ordered by the Court.

        Request No. 36:  *To the extent not subject to the foregoing requests, all documents: (a) supporting, refuting or relating to any of Defendants' defenses set forth in Defendants' Answer to Plaintiffs' Amended Complaint and Affirmative Defenses (ECF No. 65), and any other defenses or factual arguments you have pleaded or intend to plead in this case; (b) you intend to use, submit, or introduce in connection with any pleading, brief, argument or trial in this action; and (c) identified in your Fed. R. Civ. P. 26(a)(1) disclosures (and any amendments or supplements thereto).*

---

[3]    In addition, to the extent Defendants do raise such arguments in their defense, any documents related to this defense would be produced in response to Request No. 36.  *See* page 10, *infra*.

Simpson Thacher & Bartlett LLP

Nathan Lindell                                    -10-                                    May 4, 2022

As set forth in Defendants' R&Os, Request No. 36 is premature at this stage of the Action, including because it seeks documents that may depend on (i) information revealed through discovery, which has only just begun; and (ii) expert reports, which have not yet been submitted and are not due to be submitted until November 2022.  Notwithstanding these objections, Defendants will produce documents responsive to Request No. 36 in the ordinary course of their rolling productions.

Request No. 37:  *Documents concerning ProAssurance's document retention policies and communications concerning the destruction or failure to retain documents or ESI.*

Defendants objected to Request No. 37 as overbroad, not relevant to Plaintiffs' claims, and to the extent it seeks privileged information.  Plaintiffs' Letter limits Request No. 37 to "ProAssurance's document retention policies," while reserving the right to seek "communications concerning the destruction or failure to retain documents or ESI."  Letter at 11.  In the Eleventh Circuit, however, "[t]he discoverability of document retention policies hinges on whether spoliation is actually at issue."  *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, 2015 WL 12838175, at *6 (M.D. Fla. May 4, 2015); *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2017 WL 4399198, at *8 (N.D. Fla. Sept. 29, 2017) (same).  Moreover, Defendants described ProAssurance's general document retention procedures during the parties' April 14, 2022 meet and confer.  In view of the established practice in the Eleventh Circuit and Defendants' disclosures to date, Defendants do not intend to produce any additional documents or information in response to Request No. 37.

Very truly yours,

/s/ *Janet Gochman*

Janet Gochman