FILED

2023 Feb-03  PM 02:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURTS

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 2:20-cv-00856-RDP |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) | LEAD PLAINTIFFS' EXECUTIVE |
| | ) | SUMMARY IN SUPPORT OF MOTION TO |
| vs. | ) | CERTIFY CLASS, APPOINT CLASS |
| | ) | REPRESENTATIVES AND APPOINT |
| PROASSURANCE CORPORATION, et al., | ) | CLASS COUNSEL |
| | ) | |
| Defendants. | ) | |
| | ) | |

4858-5506-0302.v1

Pursuant to the Court's January 11, 2023 Order (ECF 110), Plaintiffs submit this executive summary in support of their Motion to Certify Class, Appoint Class Representatives and Appoint Class Counsel ("Motion") (ECF 78).[1]

## I.    INTRODUCTION

This is a straightforward securities fraud case.  For years, Defendants repeatedly assured investors that PRA's unwavering commitment to "cautious" and "conservative" underwriting and reserve practices differentiated PRA from its peers and would enable the Company to excel even during challenging market conditions.  *See, e.g.*, ¶¶3-5, 38-41; MTD Opinion at 37-40 (ECF 61).  In reality, throughout the Class Period, Defendants actively concealed that PRA had dramatically deviated from its "stated commitment to caution and conservatism" in connection with the ***single largest account in its history***, Team Health.  *Id*.  Indeed, damning evidence confirms that, ▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Yet, Defendants continuously concealed this unquestionably material information from investors, while continuing to tout PRA's commitment to caution and conservatism throughout the Class Period, until the truth was finally revealed through a series of corrective disclosures on January 20, 2020, and May 7-8, 2020.  ¶¶3-6, 11-13.  These disclosures revealed that PRA was forced to record charges of more than an astonishing ***$130 million*** for the Team Health account, wiping out nearly ***three years' worth of net income*** and causing PRA's stock price to decline ***more than 67%*** from its Class Period high – and causing massive losses to investors as a result.  *Id*.

---

[1]    Unless otherwise noted: (i) capitalized terms have the same meanings as in Plaintiffs' Initial Submission in Support of the Motion ("Initial Brief") (ECF 79) and Plaintiffs' Reply Submission in Further Support of the Motion ("Reply") (ECF 102); (ii) "¶_" references are to paragraphs of the Complaint (ECF 44); (iii) all emphasis is added and citations are omitted; and (iv) "Ex." references are to the contemporaneously filed Declaration of Nathan R. Lindell ("Lindell Decl.").

4858-5506-0302.v1

"It is well-established that class actions are 'a particularly appropriate means for resolving securities fraud actions.'" *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *4 (S.D. Fla. Mar. 16, 2016). Indeed, the "Eleventh Circuit has explicitly recognized that securities class actions serve both the public interest in maintaining the integrity of the securities markets and the private interests of investors who would not otherwise obtain redress of grievances through a multiplicity of small individual damage suits." *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 693-94 (N.D. Ga. 2002). Here, there is nothing unique about Plaintiffs' claims that warrants deviating from the "well-established" authority routinely certifying securities fraud class actions, such as this one.

The evidence clearly establishes that this action satisfies Rule 23's requirements for class certification. *See* ECF 79 at 8-25; ECF 102 at 6-15. Defendants **concede** that Plaintiffs have satisfied the majority of these requirements, and challenge **only** Rule 23(a)'s adequacy requirement and Rule 23(b)(3)'s predominance requirement. *See* ECF 92 at 8-25.[2] As detailed below, Defendants' arguments are meritless. Thus, the Motion should be granted in its entirety.

## II.    PLAINTIFFS SATISFY THE ADEQUACY REQUIREMENT

Defendants' sole argument regarding adequacy is that Plaintiffs have supposedly "'abdicated'" their duty to adequately represent the Class because they ███████████ ████████████████████████████████████████████████████████ *See* ECF 92 at 24-25. Contrary to Defendants' assertions, Plaintiffs have established a robust record of their adequacy to "vigorously and competently represent[] the interests of the proposed [C]lass members throughout this litigation," by, among other things: reviewing the Complaint and other filings; producing documents; preparing, traveling, and sitting for depositions; receiving regular updates from counsel regarding the case; and filing declarations in support of the Motion. *In re Jeld-Wen Holding, Inc. Sec. Litig.*, 2021 WL 1186326, at *4 (E.D. Va. Mar. 29, 2021); *see also* ECF 80-

---

[2]    Defendants also contend that the Class Period should be shortened. *See* ECF 92 at 8-15. Pursuant to the Court's January 11, 2023 Order, this contention is addressed in a contemporaneously filed submission.

2, ¶¶6-7; ECF 80-3, ¶¶6-7; ECF 102 at 13 n.17.  Moreover, the law is clear that "in securities cases such as these, where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987); *see also* ECF 102 at 13 n.18.  If anything, "[t]he fact that the proposed Class Representatives are allowing their counsel to prosecute the case demonstrates the exercise of good judgment and not abdication of their obligations." *Theragenics*, 205 F.R.D. at 696.[3]

Furthermore, as pension funds who regularly act as fiduciaries, collectively overseeing billions of dollars in assets on behalf of their beneficiaries, Plaintiffs are precisely the type of institutional investors that Congress and the Eleventh Circuit prefer to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995); *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014) ("'[S]ophisticated institutional investors . . . are preferred as class representatives.'").  In fact, Plaintiffs have successfully served as lead plaintiffs in large securities class actions where courts have explicitly recognized their adequacy to protect the interests of absent class members.  *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2020 WL 5757695, at *8 (D. Minn. Sept. 28, 2020) (finding Plaintiffs to be adequate class representatives).  Thus, Plaintiffs' adequacy is clearly established.

## III.    THERE ARE NO INDIVIDUAL RELIANCE ISSUES

"Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) ("*Halliburton I*").  Here, there are no individual issues of reliance, because Plaintiffs are entitled to the Class-wide presumption of reliance enunciated by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  *See* ECF 79 at 15-23.

---

[3]    Defendants' authorities (ECF 92 at 24-25) are inapposite as none stand for the proposition that ████████

- 3 -

"The 'fundamental premise' of the fraud-on-the-market theory underlying *Basic*'s presumption is 'that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction.'" *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, _U.S._, 141 S. Ct. 1951, 1958 (2021). To invoke the presumption at the class certification stage, a plaintiff need only establish "that the alleged misrepresentation was publicly known," "that the stock traded in an efficient market," and "that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed." *Id*. 1958-59.[4] The Initial Brief established that each of these prerequisites is met here (ECF 79 at 15-23), and Defendants do ***not*** challenge the sufficiency of Plaintiffs' evidence invoking the *Basic* presumption. *Cf.* ECF 92 at 15-22. Instead, Defendants attempt to "rebut" the presumption by supposedly showing that the alleged misrepresentations "did not impact PRA's stock price." *Id.* at 15. This attempt fails.

In attempting to rebut *Basic*'s presumption of Class-wide reliance, Defendants are "'burdened with the ***daunting task*** of ***proving***'" that "'the alleged misstatements [had] ***no price impact whatsoever***.'" *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019); *accord Goldman*, 141 S. Ct. at 1963 ("the defendant bears the burden of persuasion to prove a lack of price impact"). "Because price impact can be observed on the 'front-end' (i.e., misstatements causing or maintaining inflation) or on the 'back-end' (i.e., ***a decline in price caused by the corrective disclosures***), Defendants must ***affirmatively disprove both*** to satisfy their burden." *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 209 (D. Minn. 2020).[5] Here, Defendants plainly fail to do so.

---

[4]   *See also id.* ("materiality should be left to the merits stage because it does ***not*** bear on Rule 23's predominance requirement").

[5]   *Accord Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 280 (2014) ("*Halliburton II*") (defendants can rebut *Basic*'s presumption by showing "that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock").

4858-5506-0302.v1

Indeed, ███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████[6]   These concessions are ***fatal*** to

Defendants' attempt to prove a complete lack of price impact from the alleged misrepresentations.

Indeed, in *CenturyLink* – ██████████████████████████████████ – the court held

that "[d]efendants have failed to rebut the *Basic* presumption because they are unable to rebut

evidence of back-end price impact," based on the facts that Deal "admit[ted] that there were

statistically significant price drops following [the] disclosure dates," and Deal did not "attempt to

quantify the amount of the price drop that was caused by other factors."  337 F.R.D. at 210-11.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████   As such, Defendants cannot show "that

'the alleged misstatements [had] no price impact whatsoever,'" as numerous courts have found.  *See,*

*e.g.*, *Monroe Cnty.*, 332 F.R.D. at 393 ("a statistically significant price decline following an alleged

corrective disclosure means one ***cannot rule out price impact***"); *Thorpe*, 2016 WL 4006661, at *13

("To rebut the presumption of reliance, Defendants must demonstrate that the corrective disclosures

played ***no part*** in the decline in the Company's share price.").[7]

Defendants' argument that "the price of PRA common stock either declined or increased by a

statistically insignificant amount on the dates [the alleged misstatements were made]" (ECF 92 at

---

[6]    *See also id.* at 111:13-112:17, 114:4-115:21, 117:17-122:23; Feinstein Report (ECF 80-1), Ex. 7.

[7]    *See also Plymouth Cnty.*, 2020 WL 5757695, at *13 ("Defendants' expert does not dispute that there were statistically significant price drops following all [corrective disclosures].  ***This is sufficient to prevent Defendants from completely 'sever[ing] the link' between the alleged misrepresentations and any impact on [Defendant's] stock price***.").

17-18) is plainly insufficient to meet the "daunting task" of proving such statements "had no price impact." *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 673 (S.D. Fla. 2014). Here, Defendants' alleged misrepresentations all concern confirmatory statements that were rendered misleading by Defendants' failure to disclose material information about the Team Health account. *See* MTD Opinion at 22, 36-40; ECF 102 at 8 n.8. As the Eleventh Circuit has routinely recognized, such misrepresentations are "designed to prevent a more precipitous decline in the stock's price, ***not bring about any change to it***." *Regions*, 762 F.3d at 1256.[8] Thus, "it is unsurprising that the [stock price] did not move in a statistically significant manner on the dates that the purported misstatements . . . were made." *Waggoner v. Barclays PLC*, 875 F.3d 79, 104 (2d Cir. 2017). For this reason, "any price impact ***must be measured via stock price decreases occurring after the alleged misstatements were revealed to be false***." *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 579 F. Supp. 3d 520, 527 (S.D.N.Y. 2021).[9] Here, Defendants concede that ████████████████████████ ████████████████████████████████████████████████ ████████████████ rendering their argument about the price movements on the alleged misstatement dates irrelevant to the price impact analysis.

Finally, Defendants' argument that there is no price impact "given the fundamental mismatch between the generic statements regarding PRA's 'conservatism' and the specific disclosures regarding a single account" fails for multiple reasons. ECF 92 at 18. First, Defendants' misrepresentations regarding PRA's purported commitment to "caution and conservatism" were ***not***

---

[8]    *See also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1314 (11th Cir. 2011) ("Fraudulent statements that ***prevent*** a stock price from falling can cause harm by ***prolonging*** the period during which the stock is traded at inflated prices.") (emphasis in original); ¶301 (alleging that Defendants' "material misstatements and omissions" caused PRA's stock price to be "maintained at artificially inflated levels").

[9]    *See also Thorpe*, 2016 WL 4006661, at *13 ("'Measuring price change . . . at the time of the corrective disclosure, rather than at the time of the corresponding misrepresentation, allows for the fact that many alleged misrepresentations conceal a truth, and thus maintain a stock's price.'"); Ex. D at 67:3-71:1, 107:17-109:25.

4858-5506-0302.v1

generic or immaterial.  Indeed, as the Court has already found, Defendants "made many of the statements about ProAssurance's discipline and conservatism in calls with analysts to . . . 'allay investor concerns' . . . and 'assure[] investors that [ProAssurance] had taken steps to address "increased severity" in the market.'" MTD Opinion at 37.[10]



Second, there is no "mismatch" between the misrepresentations and the corrective

---

[10]  *See also id.* at 39 ("defendants underscored ProAssurance's commitment to conservatism on many occasions throughout the Class Period . . . suggest[ing] that discipline and caution constituted a hallmark of ProAssurance's business – one that investors and analysts would cite as reasons to invest in the company"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *11-*12 (S.D.N.Y. Nov. 26, 2018) (statements "were not puffery at all" when they were "'made repeatedly in an effort to reassure the investing public about matters particularly important to the company and investors' . . . in response to direct questions [from analysts]"); *Goldman*, 579 F. Supp. 3d at 535-36 ("This Court is hard-pressed to understand why statements such as those at issue here would have achieved such ubiquity in the first place were they incapable of influencing (including by maintaining) a company's stock price.").

[11]  This reliance directly refutes Defendants' assertion that "[i]f analysts did not discuss an alleged misstatement when initially made, that would suggest the information in the alleged misstatement was not important and, therefore, did not impact price," as well as Defendants' speculative argument regarding "similar generic statements regarding 'conservative' underwriting practices" made by PRA's peers. *See* ECF 92 at 20-21.  The fact that the market expressly relied on Defendants' alleged misrepresentations demonstrates that those statements *were* important and, therefore, *did* impact the price of PRA stock. *See Halliburton II*, 573 U.S. at 272 (recognizing "'market professionals . . . affect[] stock market prices'"). Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- 7 -

disclosures. Plaintiffs allege that Defendants' statements were materially misleading because they concealed that PRA had deviated from its professed conservatism in connection with the largest account in the Company's history, Team Health. *See, e.g.*, ¶¶5-6, 161; ███████████████ MTD Opinion at 1. The corrective disclosures revealed the truth about this concealed information to the market. Indeed, ████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████[12]

Moreover, defendant Boguski expressly attributed the Team Health losses disclosed on January 22, 2020 and May 7, 2020 to an "outsized underwriting loss . . . relative to product structure, severity, [and] pricing" – and more specifically, to the fact that Team Health's account structure was so "unique" that there were "no other structures in [PRA's] book of business that would even be close to the structure that was offered here." Ex. M at 9, 11. And the market's strong reaction to the corrective disclosures was *directly tied* to Defendants' material misrepresentations, with one analyst describing the losses as "*particularly surprising*" given PRA's reputation as "*one of the most conservative insurers in the industry*." Ex. N; *see also* Exs. O-S.[13] As such, the statistically significantly stock price declines that followed such disclosures firmly establish the alleged misrepresentations' price impact. *Monroe Cnty.*, 332 F.R.D. at 396 ("As the court in *Regions* found when considering price impact, *the existence of a price decline and analyst commentary*

---

[12] *See also Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 921 (11th Cir. 2020) (a corrective disclosure "'need not precisely mirror the earlier misrepresentation,'" as long as it "'relate[s] back to the misrepresentation'").

[13] Similarly, ████████████████████████████████████████████████████
███████████████████████████████

*highlighting the negative news is, 'of course . . . evidence of price impact.'"*).[14]

## IV.    THERE ARE NO INDIVIDUAL KNOWLEDGE ISSUES

Defendants also argue that "individualized issues will predominate over common ones" because the data underlying Plaintiffs' forensic analysis regarding the "increase in TeamHealth claims" was purportedly publicly available during the Class Period. ECF 92 at 22-23. Not so. The Complaint clearly alleges that Plaintiffs' analysis could not have been conducted without "knowing *both* the size of the charges recorded in 4Q19 and that they had been caused by TeamHealth" – information that was only "gleaned through Lead Plaintiffs' investigation *and* Defendants' corrective disclosures." ¶133. Thus, contrary to Defendants' assertions, the information underpinning Plaintiffs' analysis was *not* publicly available during the Class Period. Defendants provide no factual basis to conclude otherwise, and their ███████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████[15] Thus, Defendants' argument fails. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) (rejecting similar argument and certifying class where "despite all of this speculation, [defendant] provides no direct evidence that

---

[14] Defendants' argument that the market's view of PRA's *general* business practices did not change following the alleged corrective disclosures (ECF 92 at 19-21) is irrelevant to price impact because Plaintiffs *do not allege* that PRA was generally not conservative – but instead, that Defendants' statements concealed the fact that PRA had deviated from its professed conservatism in connection with the largest account in the Company's history. ██████████████ Moreover, Defendants' argument also fails because it raises loss causation issues that are inappropriate to resolve at the class certification stage. *See Monroe Cnty.*, 332 F.R.D. at 395 ("the inquiry [at class certification] is whether Defendants have proven a complete lack of price impact during the Class Period, *not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage*"); ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

[15] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████

4858-5506-0302.v1

any putative class member actually knew about [the fraud] before the scandal became public").[16]

Defendants' alternative argument that "the claims information Plaintiffs argue contradicts the alleged frequency misstatements was already reflected in PRA's stock price, and those statements were thus not 'corrected' by subsequent disclosures" (ECF 92 at 23) is nothing more than a "truth-on-the-market defense," which courts routinely hold "is not appropriately resolved at the class certification stage." *Holwill v. AbbVie Inc.*, 2021 WL 7366274, at *2 (N.D. Ill. Sept. 23, 2021); *see also* ECF 102 at 15 n.22. Moreover, the statistically significant stock price declines following the corrective disclosures, as well as analysts' reaction to the news, undermine Defendants' argument that this information was known to the market during the Class Period.

Finally, even if Defendants' arguments were factually supported and legally appropriate at this stage (which they are not), such arguments ████████████████████████████ ██████████████████████████████████████████████ As such, they do not even ***arguably*** provide a basis for denying certification of Plaintiffs' claims regarding PRA's "stated commitment to caution and conservatism." MTD Opinion at 40.

## V.    CONCLUSION

For the reasons set forth above and in Plaintiffs' previous submissions, Plaintiffs respectfully request that the Motion be granted in its entirety.

DATED:  February 3, 2023                ROGER BEDFORD, ATTORNEY AT LAW, LLC
                                        ROGER H. BEDFORD, JR.
                                        (ASB: 3651 D60R)


                                        s/ ROGER H. BEDFORD, JR.
                                        ROGER H. BEDFORD, JR.

---

[16]    Defendants' reliance on *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020) (ECF 92 at 23), is inapposite, as there the allegedly omitted information was readily available to investors during the class period and reported in numerous "major publications." *Id*. at *4.

- 10 -

P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)
rogerbedfordattorneyatlawllc@gmail.com

GUIN, STOKES & EVANS, LLC
DAVID J. GUIN
TAMMY M. STOKES
DAWN STITH EVANS
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)
davidg@gseattorneys.com
tammys@gseattorneys.com
devans@gseattorneys.com

Local Counsel for Lead Plaintiffs

ROBBINS GELLER RUDMAN
   & DOWD LLP
NATHAN R. LINDELL
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
MASON G. ROTH
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
bheikkinen@rgrdlaw.com
mroth@rgrdlaw.com

- 11 -

SAXENA WHITE P.A.
STEVEN B. SINGER
(admitted *pro hac vice*)
SARA DILEO (admitted *pro hac vice*)
KYLA GRANT (admitted *pro hac vice*)
CRAIG MAIDER (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
sdileo@saxenawhite.com
kgrant@saxenawhite.com
cmaider@saxenawhite.com

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
(admitted *pro hac vice*)
LESTER R. HOOKER
(admitted *pro hac vice*)
JONATHAN LAMET
(admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
jwhite@saxenawhite.com
lhooker@saxenawhite.com
jlamet@saxenawhite.com

Lead Counsel for Lead Plaintiffs

CAVANAGH & O'HARA
JOHN T. LONG
(admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

Additional Counsel for Lead Plaintiffs

- 12 -

4858-5506-0302.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on February 3, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ ROGER H. BEDFORD, JR.
ROGER H. BEDFORD, JR.

ROGER BEDFORD, ATTORNEY AT LAW, LLC
ROGER H. BEDFORD, JR.
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)

Email:  rogerbedfordattorneyatlawllc@gmail.com

4858-5506-0302.v1

# Mailing Information for a Case 2:20-cv-00856-RDP Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Walter W Bates**
  Bbates@starneslaw.com

- **Roger H Bedford , Jr**
  rogerbedfordattorneyatlawllc@gmail.com

- **Sara M. DiLeo**
  sdileo@saxenawhite.com

- **James Bringhurst Eubank**
  James.Eubank@beasleyallen.com

- **Dawn Stith Evans**
  devans@gseattorneys.com

- **Jay M Ezelle**
  JEzelle@starneslaw.com

- **Janet A Gochman**
  jgochman@stblaw.com

- **Kyla Grant**
  Kgrant@saxenawhite.com

- **Cole Robinson Gresham**
  cgresham@starneslaw.com

- **David J Guin**
  davidg@gseattorneys.com

- **Bailie L Heikkinen**
  bheikkinen@rgrdlaw.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **Jonathan Dov Lamet**
  jlamet@saxenawhite.com

- **Michael R Lasserre**
  mrl@starneslaw.com

- **Nathan R Lindell**
  nlindell@rgrdlaw.com

- **John T Long**
  johnlong@cavanagh-ohara.com

- **Carl Jacob Lundqvist**
  jacob.lundqvist@stblaw.com

- **Craig Corey Maider**
  cmaider@saxenawhite.com

- **Wilson Daniel Miles , III**
  dee.miles@beasleyallen.com

- **Mason G Roth**
  mroth@rgrdlaw.com

- **Steven B Singer**
  ssinger@saxenawhite.com

- **Tammy McClendon Stokes**
  tammys@gseattorneys.com

- **Joseph E. White**
  jwhite@saxenawhite.com

- **Jonathan K Youngwood**
  jyoungwood@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`