FILED

2023 Feb-03  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> PROASSURANCE CORPORATION, W. STANCIL STARNES, EDWARD L. RAND, JR., DANA S. HENDRICKS, HOWARD H. FRIEDMAN, and MICHAEL L. BOGUSKI, <br><br> Defendants. | Civil Action No.: 2:20-cv-00856-RDP |

## EXECUTIVE SUMMARY OF DEFENDANTS' OPPOSITION TO
## LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

STARNES DAVIS FLORIE LLP

Walter W. Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
Michael R. Lasserre (ASB-2144-Y61G)
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, AL 35259-8512
wwb@starneslaw.com
jme@starneslaw.com
crg@starneslaw.com
mrl@starneslaw.com

SIMPSON THACHER & BARTLETT LLP

Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Jacob Lundqvist (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Defendants ProAssurance Corporation, W. Stancil Starnes, Edward L. Rand, Jr., Dana S. Hendricks, Howard H. Friedman, and Michael L. Boguski.*

**TABLE OF CONTENTS**

**Page**

I.    Class Certification Should Be Denied Given the Lack of Price Impact from the Alleged Misstatements ................................................................................................ 1

    A.    Defendants Have Rebutted Price Impact with Respect to Statements Regarding PRA's Conservative Business Practices ............................................. 2

    B.    Defendants Have Rebutted Price Impact with Respect to the Alleged Frequency Misstatements ........................................................................................ 8

II.   Class Certification Should Be Denied Given the Predominance of Individualized Issues Regarding the Alleged Frequency Misstatements ...................................... 9

III.  Lead Plaintiffs Are Inadequate Class Representatives ...................................... 10

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .................................................................................................... 1

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan
  Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ........................................................................................ 5

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  309 F.R.D. 251 (N.D. Tex. 2015) ................................................................................ 3

*Fernau v. Enchante Beauty Prods., Inc.*,
  847 F. App'x 612 (11th Cir. 2021) .............................................................................. 9

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
  141 S. Ct. 1951 (2021) ...................................................................................... 1, 2, 6, 7

*Gomez v. Rossi Concrete, Inc.*,
  270 F.R.D. 579 (S.D. Cal. 2010) ................................................................................. 8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ..................................................................................................... 1

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019) ............................................................. 3

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ............................................................ 8

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ............................................................ 3

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ................................................................................. 10

*Vignola v. Fat Brands, Inc.*,
  2020 WL 1934976 (C.D. Cal. Mar. 13, 2020) ............................................................ 9

*Water Works Bd. of Birmingham v. Ambac Fin. Grp., Inc.*,
  718 F. Supp. 2d 1317 (N.D. Ala. 2010) ...................................................................... 4

I. **Class Certification Should Be Denied Given the Lack of Price Impact from the Alleged Misstatements**

Class certification is inappropriate where, as here, Plaintiffs are not entitled to a presumption of reliance under the fraud on the market doctrine established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). A defendant can rebut the *Basic* presumption of reliance by showing a lack of price impact from the alleged misstatements, *i.e.*, that "the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 264, 280 (2014) (*Halliburton II*). "*Any showing* that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff . . . will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248 (emphasis added). Because, here, there was no front-end price impact from the remaining alleged misstatements, the only theory Plaintiffs can proceed under is price (or inflation) maintenance, *i.e.*, that the alleged misstatements maintained artificial inflation in PRA's stock price. Recent Supreme Court precedent demonstrates why Plaintiffs' arguments under this theory fail and why class certification should be denied.

In *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, the Supreme Court held that "the generic nature of a misrepresentation often is important evidence of price impact that courts should consider at class certification." 141 S. Ct. 1951, 1958 (2021). The Court further held that this is particularly true in cases like here where Plaintiffs are "proceeding under the inflation-maintenance theory." *Id*. at 1961. Courts may therefore "consider expert testimony and use their common sense in assessing whether a generic misrepresentation had a price impact." *Id.* at 1960. Plaintiffs who rely on an "inflation-maintenance theory" must argue that the price impact is "the amount that the stock's price would have fallen 'without the false statement.'" *Id.* at 1961 (citation omitted). The decision in *Goldman Sachs* (which was not before this Court at the motion

to dismiss stage in this action) holds that where plaintiffs pursue an inflation-maintenance theory and "there is a mismatch between the contents of the misrepresentation and the corrective disclosure . . . there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop." *Id.* The Court specifically noted that "when the earlier [alleged] misrepresentation is generic (*e.g.*, 'we have faith in our business model') and the later corrective disclosure is specific (*e.g.*, 'our fourth quarter earnings did not meet expectations') . . . it is less likely that the specific disclosure actually corrected the generic misrepresentation." *Id.* Plaintiffs' allegations in this case provide the perfect example of the scenario posited in *Goldman Sachs*: Plaintiffs allege that generic statements regarding PRA's "conservative" and "disciplined" business practices were corrected by disclosures regarding a single large policy among tens of thousands written by the Company across multiple business lines.

### A. Defendants Have Rebutted Price Impact with Respect to Statements Regarding PRA's Conservative Business Practices

The Supreme Court instructs that to determine whether Defendants have rebutted the *Basic* presumption, courts "should be open to *all* probative evidence [on the question of price impact]— qualitative as well as quantitative—aided by a good dose of common sense." *Id.* at 1960 (emphasis in original). Applying the Supreme Court's guidance here demonstrates that price impact is absent.

As an initial matter, the expert report by Mr. Deal submitted in support of Defendants' Opposition explains that the event study conducted by Plaintiffs' expert demonstrates that the price of PRA common stock either declined or increased by a statistically insignificant amount on the dates when Mr. Friedman and Mr. Boguski made the alleged misstatements regarding PRA's conservative business practices: November 7, 2018; February 22, 2019; April 26, 2019; August 8, 2019; and November 6, 2019.[1] *See* Deal ¶ 30; Feinstein Ex. 8. For each of these dates, when

---

[1] In their Reply, Plaintiffs do not dispute that the alleged misstatements by Mr. Friedman and Mr.

Mr. Friedman and Mr. Boguski spoke generally about PRA's "conservatism," "disciplined approach," and "underwriting discipline," (*e.g.*, ¶¶ 148, 152, 160, 175), there was no inflationary price impact.  In fact, on three of the dates, February 22, 2019, April 26, 2019, and August 8, 2019, the price of PRA common stock declined.  Feinstein Ex. 8.  On the other dates, November 7, 2018, and November 6, 2019, the price increase was either statistically insignificant or only statistically significant at the 90% confidence level, which is below the standard threshold for statistical significance.  *See, e.g.*, *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *15 (N.D. Cal. Dec. 22, 2016) (95% confidence level is a "threshold requirement" for statistical significance); *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 262 (N.D. Tex. 2015) ("[C]ourts generally require a party's expert to testify based on an event study that meets the 95% confidence standard[.]").

Plaintiffs concede in their Reply, as they must, that their only remaining theory of price impact is that the remaining alleged misstatements "maintained" inflation in PRA's stock price. Reply at 9.  Plaintiffs' price maintenance theory fails under *Goldman Sachs* given the fundamental mismatch between the generic statements regarding PRA's "conservatism" and the specific disclosures regarding a single underperforming account.  As the MTD Order confirms, the alleged misstatements regarding PRA's conservative business practices described a "general commitment."  MTD Order at 32.  These general statements stand in stark contrast to the specific

---

Boguski on these five dates as well as the two dates of the remaining alleged frequency misstatements (August 8, 2018 and November 6, 2019) comprise the remaining alleged misstatements at issue in this action.  Having thus failed to dispute the alleged corrective disclosures identified in Defendants' Opposition, Plaintiffs should not be allowed to raise additional alleged misstatements at any subsequent stage.  *Cf. In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *24 (S.D.N.Y. Oct. 18, 2019) (declining "to analyze those corrective disclosures that Plaintiffs have abandoned."), *report and recommendation adopted in part*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020).

disclosures related to a single account that followed in early 2020. Indeed, the disconnect between alleged misstatement and corrective disclosure is even greater than the example provided in *Goldman Sachs*. As Plaintiffs concede, TeamHealth was a "unique structure" in PRA's broad book of business. ¶ 215. Claiming that disclosures related to a single, "unique" account among tens of thousands of policies across PRA's multiple business lines corrected statements regarding PRA's general underwriting and reserving practices is precisely the type of inference *Goldman Sachs* held would be insufficient to demonstrate price impact at the class certification stage.

Further supporting this point, Plaintiffs' own investment advisor ███████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 5 (Vingers Tr.) 125:9–12; *see also*

*id.* 142:1–4 ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. In other

words, Plaintiffs' investment advisor ██████████████████████████████████

████████████████████████████████. ███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ There is similarly no reason to believe that any other reasonable investor would have relied on these generic statements or that they would have viewed disclosures regarding a single account as corrective of these "general commitments." *See Water Works Bd. of Birmingham v. Ambac Fin. Grp., Inc.*, 718 F. Supp. 2d 1317, 1323 (N.D. Ala. 2010), *aff'd*, 534 F. App'x 817 (11th Cir. 2013) ("Statements that an insurer is 'very cautious' or has 'rigorous underwriting standards' . . . are too much akin to 'we are the best in the business'" and "cannot form a basis for claiming misrepresentation or deceit").

4

Defendants' Opposition further explained that, if analysts' views on a particular issue did not change after an alleged corrective disclosure that purportedly corrected the market's understanding of that particular issue, that would suggest the particular issue and its purported correction did not impact the price. Opp. at 19–20. Plaintiffs' Reply does not question this inference or suggest any reason it would not hold true with respect to PRA. Defendants' expert identified no commentary suggesting that analysts no longer considered PRA to be a conservative insurer following either of the corrective disclosure dates alleged in the Complaint. *Id.* ¶¶ 33–36. To the contrary, analysts expressed their belief that PRA remained a conservative insurer after both alleged corrective disclosure dates. Indeed, one analyst described PRA as "one of the most conservative insurers in the sector" and "one of the more conservative companies we cover" after both alleged corrective disclosure dates. *See* Ex. 6 (3/10/2020 Boenning & Scattergood Report) at 1; Ex. 7 (5/11/2020 Boenning & Scattergood Report) at 1; *see also* Opp. at 20. Plaintiffs' argument that this analyst commentary is "irrelevant to price impact" (Reply at 11) misunderstands the relevant inquiry. The alleged misstatements Plaintiffs point to were credited by analysts both before and after the alleged corrective disclosure dates, thus demonstrating that the information disclosed on those dates did not correct the alleged misstatements.

In addition, similar generic statements regarding "conservative" underwriting practices are routinely made by insurers industry-wide. Over three quarters (15 out of 19) of the peer companies PRA identifies in its SEC filings described their underwriting and/or reserve setting practices during the putative Class Period as "conservative," "disciplined," "prudent," or "cautious," or used similar terms. Deal ¶¶ 43–45. *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("No investor would take . . . statements" regarding investment bank's "set[ting] the standard for best practices in risk management techniques . . .

seriously in assessing a potential investment, for the simple fact that almost every investment bank makes these statements").[2]

Plaintiffs argue that Judge Kallon has already "rejected" the argument that the remaining alleged misstatements regarding PRA's business practices are generic.  Reply at 9–10.  In fact, Judge Kallon analyzed, at the motion to dismiss stage, whether the alleged misstatements constitute puffery.[3]  Puffery is a materiality issue, and the Supreme Court specifically noted that materiality should not factor into the class certification analysis.  *Goldman Sachs*, 141 S. Ct. at 1955.  Moreover, Judge Kallon did not analyze whether those alleged misstatements were sufficiently tied to the alleged corrective disclosures to infer price impact.  This analysis, which is required at the class certification stage, demonstrates that Defendants have rebutted the *Basic* presumption.

Plaintiffs have further argued that rebutting price impact on a price maintenance theory requires that Defendants disprove a statistically significant price drop at the "back end," *i.e.*, when the allegedly corrective disclosures were made.  Reply at 7-8.  Plaintiffs' position is fundamentally at odds with *Goldman Sachs*, which specifically looks to the nature of a generic alleged misstatement and a specific corrective disclosure that *is* followed by a stock price drop in assessing lack of price impact.  *See Goldman Sachs*, 141 S. Ct. at 1961 ("But that final inference—that the back-end price drop equals front-end inflation—starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure[.]").  Plaintiffs' cases

---

[2] Plaintiffs argue that Defendants have not provided "evidence that the market similarly credited the statements by PRA's peers" (Reply at 10), however several analysts commented on PRA's peer companies' "conservative" practices.  *See, e.g.*, Exs. 15 (Alleghany Corporation), 16 (Arch Capital), 17 (Markel Corporation).

[3] Defendants respectfully submit that Judge Kallon's ruling that the alleged misstatements regarding PRA's conservative business practices did not constitute puffery was in error.

cited in support all pre-date *Goldman Sachs* and, therefore, do not reflect the analysis mandated by the Supreme Court's decision. Plaintiffs also incorrectly contend that Defendants' expert has concluded that some part of the decline in PRA's stock price on January 22 was due to the Company's statement that day regarding the TeamHealth account. Plaintiffs omit that Mr. Deal actually testified that he had not done an "affirmative" analysis regarding the cause of the January 22, 2020 stock drop. *See* Ex. 18, Deal Tr. at 116:17–117:16. Furthermore, Plaintiffs ignore his opinion that, regardless of any back-end stock drop, the information that was disclosed on January 22 did not correct the alleged frequency or conservative practices misstatements. Deal ¶ 27. The relevant inquiry is not whether the stock price declined in response to the disclosures, but whether the information disclosed can be tied back to the earlier, generic alleged misrepresentation.

Finally, Plaintiffs rely on a convoluted argument that *Goldman Sachs* does not apply because "Plaintiffs do not allege that Defendants' statements were false because PRA was not generally conservative." Reply at 11. That argument does nothing to change the generic nature of the alleged misstatements Plaintiffs have put at issue. The analysis mandated by *Goldman Sachs* is directly applicable even if, as Plaintiffs claim, a generic alleged misstatement was misleading for a specific reason. Indeed, that is the very scenario in which *Goldman Sachs* applies. Plaintiffs have done nothing to overcome the fundamental mismatch between the alleged misstatements and corrective disclosures, and the weight of evidence set forth in Defendants' Opposition, including the expert analysis of Mr. Deal, the testimony of Plaintiffs' own investment advisor, the similarly generic disclosures made by most of PRA's peers, and common sense all demonstrate that Defendants have rebutted the *Basic* presumption. *See Goldman Sachs*, 141 S. Ct. at 1960 ("In assessing price impact at class certification," courts "should be open to *all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense.").

7

**B. Defendants Have Rebutted Price Impact with Respect to the Alleged Frequency Misstatements**

Defendants' Opposition explained that the *Basic* presumption is rebutted with respect to the alleged frequency misstatements given (i) the lack of front-end price impact in response to the alleged misstatements and (ii) the lack of analyst commentary regarding these alleged misstatements in the weeks following the earnings calls on which the statements were made. Opp. at 22. Plaintiffs' only response is to argue that these alleged misstatements are proceeding under a price maintenance theory, which requires a back-end stock price drop in response to "corrective" information. Reply at 8–9. Plaintiffs alleged in their Complaint that the January 22, 2020 alleged corrective disclosure disclosed that PRA had experienced "higher-than-anticipated medical malpractice claims," which Plaintiffs equate to an increase in frequency. ¶¶ 11, 61. As the Opposition explains, however, frequency means the number of claims per exposure unit. Opp. at 5. Unlike at the motion to dismiss stage, "a court is not bound to accept a plaintiff's allegations as true if they relate to class certification issues." *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 585 (S.D. Cal. 2010). Plaintiffs have not identified any corrective disclosure demonstrating that PRA was in fact experiencing an increase in frequency related to the TeamHealth account. Reading the plain terms of the January and May disclosures (attached as Exhibits 12–14) makes clear that there is no mention of frequency whatsoever related to the TeamHealth account. Thus, because there was no corrective disclosure regarding frequency, Plaintiffs' theory fails. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *5 (S.D.N.Y. Mar. 23, 2020) ("[A] court may appropriately consider, at the class certification stage, whether an alleged corrective disclosure actually corrected an earlier misrepresentation").[4]

---

[4] Plaintiffs claim entitlement to the presumption of reliance established in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), but that presumption "does not apply where, as here, the plaintiffs have pleaded 'mixed claims of misrepresentations and omissions.'" *Fernau v.*

**II.    Class Certification Should Be Denied Given the Predominance of Individualized Issues Regarding the Alleged Frequency Misstatements**

Class certification must be denied because individualized issues of knowledge will predominate over common ones, in direct contravention of the requirements under FRCP 23(b). *See* Opp. at 22–23.  Plaintiffs do not dispute that PRA's statutory filings, which include the information Plaintiffs claim show that PRA experienced an "exponential" increase in TeamHealth claims, were publicly available.  ¶¶ 6, 107.  Plaintiffs argue, however, that PRA's statutory filings are "virtually indecipherable to those outside of the insurance industry."  ¶ 109.  This argument is contradicted by Plaintiffs' expert, Dr. Feinstein, who opines that PRA's common stock traded in an "efficient market," *i.e.*, one in which the market price will "always 'fully reflect' available information" or will "reflect all publicly available information."  Feinstein ¶¶ 17, 33, 37.

If Dr. Feinstein is correct, the claims information Plaintiffs argue contradicts the alleged frequency misstatements was already reflected in PRA's stock price and, consequently, those statements were not "corrected" by subsequent disclosures.  On the other hand, if Plaintiffs are correct that the statutory filings are "indecipherable" to some, it raises issues regarding each investor's review of and understanding of those filings, rendering class certification inappropriate. *See* Deal ¶¶ 56–57; *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020) (denying class certification because "knowledge issues as to . . . publicly available and widely known omitted information would require individualized inquiries").

In their Reply, Plaintiffs argue that their analysis "could not have been conducted without 'knowing both the size of the charges recorded in 4Q19 and that they had been caused by TeamHealth.'"  Reply at 13–14 (quoting ¶ 133).  But whether an investor could have undertaken Plaintiffs' *post-hoc* investigation is not the relevant inquiry.  Rather, the issue left unresolved by

---

*Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 623 (11th Cir. 2021) (citation omitted).

Plaintiffs' pleadings is the fact that Plaintiffs argue some market participants would have been unable to decipher publicly available information, while more sophisticated market participants would have been able to interpret this information. Plaintiffs' remaining arguments fare no better. Plaintiffs attempt to set aside their own expert's conclusions with respect to market efficiency to argue that whether the publicly available information regarding PRA's reported claims was already reflected in PRA's stock price amounts to a "truth-on-the-market defense" inappropriate for the class certification stage. "The efficient market theory, however, is a Delphic sword: it cuts both ways. The Investors cannot contend that the market is efficient for purposes of reliance and then cast the theory aside when it no longer suits their needs." *Meyer v. Greene*, 710 F.3d 1189, 1198–99 (11th Cir. 2013). Having chosen to rely on the efficient market theory, Plaintiffs must live with its consequences. Finally, Plaintiffs claim that the issue of individualized knowledge only affects the alleged misstatements regarding frequency trends. Reply at 15. Even if so limited, however, individualized issues will affect one of Plaintiffs' remaining two theories of misrepresentation. That fact alone demonstrates why issues common to the putative class will not predominate.

## III.    Lead Plaintiffs Are Inadequate Class Representatives

Class certification should further be denied because Lead Plaintiffs have failed to serve as a check on counsel and lack familiarity with key issues in the case. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████ Opp. at 25. Lead Plaintiffs' superficial review of key case documents and lack of familiarity with their own allegations and what claims remain at issue in the action further demonstrate that they are unable to fulfill the role of class representatives. *See id.* at 24.

## CONCLUSION

The Motion for Class Certification should be denied.

10

Dated: February 3, 2023

STARNES DAVIS FLORIE LLP

/s/ *Cole R. Gresham*
Walter W. Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
Michael R. Lasserre (ASB-2144-Y61G)
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, AL 35259-8512
wwb@starneslaw.com
jme@starneslaw.com
crg@starneslaw.com
mrl@starneslaw.com

SIMPSON THACHER & BARTLETT LLP

Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Jacob Lundqvist (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Defendants ProAssurance*
*Corporation, W. Stancil Starnes, Edward L. Rand,*
*Jr., Dana S. Hendricks, Howard H. Friedman, and*
*Michael L. Boguski.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Steven B. Singer
Craig Corey Maider
Kyla Grant
Sara M. DiLeo
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, NY 10606

Joseph E. White, III
Lester R. Hooker
Jonathan Dov Lamet
SAXENA WHITE P.A.
7777 Glades Road, Suite 300
Boca Raton, FL 33434

Bailie L. Heikkinen
Reginald E. Janvier
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432

David J. Guin
Tammy M. Stokes
Dawn Stith Evans
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL 35203

Roger H. Bedford, Jr
ROGER BEDFORD, ATTORNEY AT LAW, LLC
P.O. Box 1149
Russellville, AL  35653

{B4507576}                                    3

John T. Long
CAVANAGH & O'HARA
2319 West Jefferson Street
Springfield, IL  62702

James Bringhurst Eubank
Wilson Daniel Miles, III
Beasley Allen Law Firm
218 Commerce St.
Montgomery, AL 36104

Mason G Roth
ROBBINS GELLER RUDMAN & DOWD, LLP
120 East Palmetto Park Road
Boca Raton, FL 33432

Nathan R Lindell
ROBBINS GELLER RUDMAN & DOWD LLP
655 W Broadway, Suite 1900
San Diego, CA 92101

_/s/ Cole R. Gresham_____
STARNES DAVIS FLORIE LLP