UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 2:20-cv-00856-RDP |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | LEAD PLAINTIFFS' REBUTTAL TO THE EXECUTIVE SUMMARY OF |
| vs. | ) ) | DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS |
| PROASSURANCE CORPORATION, et al., | ) ) | CERTIFICATION |
| Defendants. | ) ) | |

**[REDACTED]**

4891-6499-3105.v1

Plaintiffs respectfully submit this rebuttal to the Executive Summary of Defendants' Opposition to Lead Plaintiffs' Motion for Class Certification (ECF 121).[1]

## I.    DEFENDANTS HAVE NOT REBUTTED THE *BASIC* PRESUMPTION

Defendants' argument that they have demonstrated a complete lack of price impact is based on nothing more than a gratuitous overstatement of the implications from the Supreme Court's decision in *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, __ U.S. __, 141 S. Ct. 1951 (2021) ("*Goldman I*"). In truth, the *Goldman I* decision was limited to two narrow holdings regarding the evidentiary standards at the class certification stage. First, that "the generic nature of a misrepresentation is *relevant* to price impact." *Id.* at 1960. And second, that "the defendant bears the burden of persuasion to prove a lack of price impact." *Id.* at 1963. The Supreme Court did *not* hold that a purported "mismatch" between so-called "generic" alleged misrepresentations and "specific" corrective disclosures is *proof positive* of a lack of price impact – or even that it proved as much on the facts of that case. Thus, contrary to Defendants' assertions, "[a]pplying the Supreme Court's guidance here" merely requires the Court to consider all relevant evidence; it does *not* "demonstrate[] that price impact is absent" or that "Plaintiffs' price maintenance theory fails." ECF 121 at 2, 3. In fact, on remand, the *Goldman* district court applied the Supreme Court's guidance and found the *opposite* – that the defendants failed to prove a complete lack of price impact, notwithstanding the purported "mismatch" between the "generic" alleged misstatements and the "specific" corrective disclosures. *See In re Goldman Sachs Grp., Inc.*, 579 F. Supp. 3d 520, 526-39 (S.D.N.Y. 2021) ("*Goldman II*") ("the alleged misstatements are not so exceedingly more generic than the corrective disclosures that they vanquish the otherwise strong inference of

---

[1]    Unless otherwise noted: (i) capitalized terms have the same meanings as in the Initial Brief (ECF 79), Reply (ECF 102), and Plaintiffs' Executive Summary in Support of the Motion ("Plaintiffs' Executive Summary") (ECF 118); (ii) "¶_" references are to the Complaint; (iii) all emphasis is added and citations are omitted; (iv) references to Exs. A-W refer to the Declaration of Nathan R. Lindell in Support of Executive Summary Briefs Concerning the Motion (ECF 120); and (v) references to Exs. 1-9 refer to the contemporaneously filed Declaration of Nathan R. Lindell.

4891-6499-3105.v1

price impact embedded in the evidentiary record").

Defendants fail to cite *a single case* finding a complete lack of price impact based on *Goldman I*'s "mismatch" language, because *every case* to consider the issue post-*Goldman I* has declined to do so. *See* ECF 121 at 1-8.[2]  As in each of those cases, the overwhelming evidence of price impact here precludes Defendants from proving that "the alleged misstatements [had] *no price impact whatsoever*" (*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019)), notwithstanding Defendants' arguments regarding the purported "mismatch" between Defendants' misrepresentations and the corrective disclosures revealing massive losses from the largest account in PRA history, Team Health.  *See* ECF 118 at 5-8; ███████████.[3]

Defendants' argument regarding the lack of statistically significant price increases on the dates of the alleged misrepresentations fails for multiple reasons.  *See* ECF 121 at 2-3, 8.  First, Defendants *concede* that PRA's stock price increased by statistically significant amounts on *two* of the alleged misstatement dates: August 8, 2018 and November 7, 2018.  *See id.* at 3; ECF 92 at 22; ECF 80-1, Ex. 8.[4]  This precludes Defendants from proving that "'the alleged misstatements [had] no price impact whatsoever.'"  *Monroe*, 332 F.R.D. at 393.  Second, the lack of statistically significant price increases on the other alleged misstatement dates does *not* prove a lack of price

---

[2]    *See, e.g.*, *Goldman II*, 579 F. Supp. 3d at 526-39; *In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021); *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *8-*9 (N.D. Cal. Feb. 4, 2022).

[3]    Defendants chide Plaintiffs' citations to pre-*Goldman I* case law, arguing that the only "relevant inquiry" now is "whether the information disclosed can be tied back to the earlier, generic alleged misrepresentations."  ECF 121 at 7.  But *Goldman I* simply held that "mismatch" evidence may be considered as part of the overall price impact calculus – it did *not*, as Defendants insinuate, eviscerate all previous precedent concerning other forms of price impact evidence.  *See, e.g.*, *Goldman II*, 579 F. Supp. 3d at 537 (*Goldman I* "suggest[s] a *sliding* scale intended to orient this Court's review of a particular evidentiary issue, rather than a forceful *tipping* of the scale in Defendants' favor") (emphasis in original).

[4]    Defendants assert that the November 7, 2018 price increase was "only statistically significant at the 90% confidence level, which is below the standard threshold for statistical significance."  ECF 121 at 3.  But numerous courts have rejected this argument.  *See, e.g.*, *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 46-47 (S.D.N.Y. 2018) (statistically significant price movements below the "confidence level of 95%" do not "prove the *absence* of price impact") (emphasis in original); *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *11 (N.D. Cal. Apr. 12, 2017) ("90% or 95% confidence levels [are] both widely accepted as valid for evidentiary purposes").

4891-6499-3105.v1

impact.  *See* ECF 102 at 8-9; ECF 118 at 5-6.  Instead, because Defendants' misrepresentations *maintained* PRA's inflated stock price by concealing material information that would have caused the price to decline if disclosed, "price impact must be measured via stock price decreases occurring after the alleged misstatements were revealed to be false."  *Goldman II*, 579 F. Supp. 3d at 527; *see also* ███████.  Here, the falsity of Defendants' misrepresentations was revealed through a series of corrective disclosures on January 22, 2020 and May 7-8, 2020, which were indisputably followed by statistically significant stock price declines.[5]  Because "a statistically significant price decline following an alleged corrective disclosure means one *cannot rule out price impact*," Defendants cannot meet their burden of proving "'no price impact whatsoever.'"  *Monroe*, 332 F.R.D. at 393; *see also* ECF 118 at 4-5.[6]

Defendants' "mismatch" argument (ECF 121 at 3-7) also fails, given the abundant evidence confirming the direct connection between Defendants' material misrepresentations and the corrective disclosures.  *See* ECF 118 at 6-8; *see also* ███████.  It is well-established that a corrective disclosure "'*need not precisely mirror the earlier representation*' in order to have a corrective effect."  *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 921 (11th Cir. 2020).  Instead, the disclosure need only "*share the same subject matter as the prior the misstatement*."  *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1311 n.28 (11th Cir. 2011); *see also Mattel*, 2021 WL 4704578, at *5 ("This Court does not read *Goldman* to contradict that a 'corrective disclosure need not be a "mirror image" disclosure – a direct admission that a previous statement is untrue.'").  Defendants' arguments, however, disregard this well-established principle and

---

[5]    *See* ECF 80-1, Ex. 8; ███████.

[6]    Defendants curiously contend that Plaintiffs have "failed to dispute the alleged corrective disclosures identified in Defendants' Opposition." ECF 121 at 2-3 n.2.  But there is no dispute that the January 20, 2020 and May 7-8, 2020 disclosures are the only alleged corrective disclosures at issue.  Moreover, Plaintiffs did not challenge Defendants' self-serving characterization of "the remaining alleged misstatements at issue in the action" (*id*.), because it was not necessary to do so in order to respond to Defendants' arguments regarding the Motion.  As such, Plaintiffs have not waived any right to "raise additional alleged misstatements at any subsequent stage." *Id*.

"greatly overstate the Court's obligation to do away with any inflation-maintenance claims that rely on corrective disclosures whose degree of genericness does not precisely 'match' the alleged misstatements' degree of genericness." *Goldman II*, 579 F. Supp. 3d at 537.

Here, the disclosures clearly "corrected" Defendants' misrepresentations by revealing massive losses *directly caused* by the very information those misrepresentations concealed – namely, PRA's deviation from its professed conservative practices in connection with the Team Health account and Team Health's undisclosed rise in claim frequency. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016) ("proof of loss causation requires demonstrating that 'the *subject* of the fraudulent statement or omission was the *cause* of the actual loss suffered'"); *see also* ECF 118 at 8; ███████████.[7]  Moreover, evidence of the market's reaction to the disclosures confirms the connection between Defendants' misrepresentations and the information revealed by the corrective disclosures. *See Goldman II*, 579 F. Supp. at 536 (rejecting "mismatch" argument where "[p]laintiffs have presented evidence persuasively attributing the [corrective disclosure] price declines to circumstances that directly implicated the substance of the alleged misstatements").[8]  This evidence establishes price impact, because it shows that investors would

---

[7]  Defendants' contention that the corrective disclosures did not reveal any information that was "corrective" of the alleged frequency misstatements fails. *See* ECF 121 at 8. First, Defendants did not previously assert this argument in their Opposition and have, thus, waived their ability to belatedly raise it now. *See, e.g., Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, 'arguments raised for the first time in a reply brief are not properly before a reviewing court.'"). Second, the evidence confirms ████████ ████████████████████████████████████████████ . The fact that the corrective disclosures did not explicitly mention the term "frequency" is a red herring, as "a disclosure 'need not precisely mirror the earlier misrepresentation' in order to have a corrective effect." *Luczak*, 812 F. App'x at 921.

[8]  *See also, e.g.*, ██████████ ; Ex. N (describing the Team Health losses as "*particularly surprising*" given PRA's reputation as "*one of the most conservative insurers in the industry*"); Ex. 4 ("Adverse prior-year reserving actions always captures attention, but *particularly so when it involves a company with a long track record of favorable development and a commitment to a disciplined reserving philosophy*."); ████████████████ Ex. R (describing Team Health losses "as part of an earlier coverage package that was *inadequately priced*"); Ex. S (highlighting Team Health losses and noting "[t]he company's top-line has started to decline *reflecting management's on-going re-pricing/re-underwriting initiatives*"); *see also Monroe*, 332 F.R.D. at 396 ("*the existence of a price*

- 4 -

4891-6499-3105.v1

not have been surprised by the losses revealed on the corrective disclosure dates had the full truth regarding the Team Health account been previously disclosed, rather than concealed by Defendants' misrepresentations. *See* ███████; *see also Goldman II*, 579 F. Supp. 3d at 535 ("Because the proper measure of inflation maintenance by a company that chooses to speak 'is . . . what would have happened if it had spoken ***truthfully***,'" price impact is shown where "***truthful, contrary substitutes for the alleged misstatements would have impacted investors' subsequent decision-making***.") (emphasis in original and added).[9]

Finally, Defendants' argument that other insurance companies made "similar generic statements regarding 'conservative' underwriting practices" does not prove a lack of price impact. *See* ECF 121 at 5. Rather, as the *Goldman II* court found, if anything, this fact ***supports*** price impact. *See* 579 F. Supp. 3d at 535-36 ("This Court is hard-pressed to understand why statements such as those at issue here would have achieved such ubiquity in the first place were they incapable of influencing (including by maintaining) a company's stock price.").[10]

## II.    DEFENDANTS REMAINING ARGUMENTS FAIL

Defendants' remaining arguments regarding Plaintiffs' adequacy and the purported predominance of individual knowledge issues fail for the reasons set forth in Plaintiffs' previous submissions. *See* ECF 102 at 12-15; ECF 118 at 2-3, 9-10.

DATED:  February 17, 2023                                    s/ DAVID J. GUIN
                                                                          DAVID J. GUIN

---

***decline and analyst commentary highlighting the negative news is, 'of course . . . evidence of price impact'***").

[9]    Defendants' argument that the corrective disclosures did not change the views of analysts or investors regarding PRA's ***general*** business practices (ECF 121 at 4-5) does not prove a lack of price impact, because Plaintiffs do not ***allege*** that Defendants misrepresented their ***general*** business practices. *See* ECF 102 at 11; ECF 118 at 9 n.14; *see also Apple*, 2022 WL 354785, at *9 (rejecting defendants' mismatch arguments because, like here, they "fundamentally misconstrue plaintiff's theory").

[10]    *See also id.* ("Moreover, in a marketplace where, according to Defendants, dozens of [Defendants'] competitors and other blue-chip corporations routinely make statements 'indistinguishable' from some of the alleged misstatements, it seems unlikely that [Defendants'] conspicuous failure to conform – or indeed, under *Vivendi*, its conspicuous statements to the contrary – would be irrelevant to investors."); ███████████████████████████████████ .

4891-6499-3105.v1

GUIN, STOKES & EVANS, LLC
DAVID J. GUIN
TAMMY M. STOKES
DAWN STITH EVANS
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)
davidg@gseattorneys.com
tammys@gseattorneys.com
devans@gseattorneys.com

ROGER BEDFORD, ATTORNEY AT LAW, LLC
ROGER H. BEDFORD, JR.
(ASB: 3651 D60R)
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)
rogerbedfordattorneyatlawllc@gmail.com

Local Counsel for Lead Plaintiffs

ROBBINS GELLER RUDMAN
  & DOWD LLP
NATHAN R. LINDELL
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
MASON G. ROTH
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
bheikkinen@rgrdlaw.com
mroth@rgrdlaw.com

- 6 -

4891-6499-3105.v1

SAXENA WHITE P.A.
STEVEN B. SINGER
(admitted *pro hac vice*)
SARA DILEO (admitted *pro hac vice*)
KYLA GRANT (admitted *pro hac vice*)
CRAIG MAIDER (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
sdileo@saxenawhite.com
kgrant@saxenawhite.com
cmaider@saxenawhite.com

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
(admitted *pro hac vice*)
LESTER R. HOOKER
(admitted *pro hac vice*)
JONATHAN LAMET
(admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
jwhite@saxenawhite.com
lhooker@saxenawhite.com
jlamet@saxenawhite.com

Lead Counsel for Lead Plaintiffs

CAVANAGH & O'HARA
JOHN T. LONG
(admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

Additional Counsel for Lead Plaintiffs

- 7 -

4891-6499-3105.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 17, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ DAVID J. GUIN
DAVID J. GUIN

GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)

Email:  davidg@gseattorneys.com

4891-6499-3105.v1

CM/ECF - U.S. District Court: Northern District of Alabama

# Mailing Information for a Case 2:20-cv-00856-RDP Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Walter W Bates**
  Bbates@starneslaw.com

- **Roger H Bedford , Jr**
  rogerbedfordattorneyatlawllc@gmail.com

- **Sara M. DiLeo**
  sdileo@saxenawhite.com

- **James Bringhurst Eubank**
  James.Eubank@beasleyallen.com

- **Dawn Stith Evans**
  devans@gseattorneys.com

- **Jay M Ezelle**
  JEzelle@starneslaw.com

- **Janet A Gochman**
  jgochman@stblaw.com

- **Kyla Grant**
  Kgrant@saxenawhite.com

- **Cole Robinson Gresham**
  cgresham@starneslaw.com

- **David J Guin**
  davidg@gseattorneys.com

- **Bailie L Heikkinen**
  bheikkinen@rgrdlaw.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **Jonathan Dov Lamet**
  jlamet@saxenawhite.com

- **Michael R Lasserre**
  mrl@starneslaw.com

- **Nathan R Lindell**
  nlindell@rgrdlaw.com

- **John T Long**
  johnlong@cavanagh-ohara.com

- **Carl Jacob Lundqvist**
  jacob.lundqvist@stblaw.com

- **Craig Corey Maider**
  cmaider@saxenawhite.com

- **Wilson Daniel Miles , III**
  dee.miles@beasleyallen.com

- **Mason G Roth**
  mroth@rgrdlaw.com

- **Steven B Singer**
  ssinger@saxenawhite.com

- **Tammy McClendon Stokes**
  tammys@gseattorneys.com

- **Joseph E. White**
  jwhite@saxenawhite.com

- **Jonathan K Youngwood**
  jyoungwood@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)