FILED

2023 Feb-17  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> PROASSURANCE CORPORATION, W. STANCIL STARNES, EDWARD L. RAND, JR., DANA S. HENDRICKS, HOWARD H. FRIEDMAN, and MICHAEL L. BOGUSKI, <br><br> Defendants. | Civil Action No.: 2:20-cv-00856-RDP |

## REPLY EXECUTIVE SUMMARY OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

STARNES DAVIS FLORIE LLP

Walter W. Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
Michael R. Lasserre (ASB-2144-Y61G)
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, AL 35259-8512
wwb@starneslaw.com
jme@starneslaw.com
crg@starneslaw.com
mrl@starneslaw.com

SIMPSON THACHER & BARTLETT LLP

Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Jacob Lundqvist (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Defendants ProAssurance Corporation, W. Stancil Starnes, Edward L. Rand, Jr., Dana S. Hendricks, Howard H. Friedman, and Michael L. Boguski.*

**I.      Defendants Have Rebutted the *Basic* Presumption of Reliance by Demonstrating a Lack of Price Impact from the Remaining Alleged Misstatements**

**A. There Was No Price Impact from the Alleged Conservative Practices Misstatements**

Plaintiffs do not dispute Defendants' evidence that there was no front-end price impact from the remaining alleged misstatements. *See* Opp. at 2. Plaintiffs instead pursue a price maintenance theory and point only to the stock price declines following the alleged corrective disclosures as purported evidence of price impact. According to Plaintiffs, because there was a statistically significant price decline following the alleged corrective disclosures which Defendants have not shown was attributable to other facts, the *Basic* presumption has not been rebutted. Reply at 7. Plaintiffs' argument, which relies almost exclusively on cases decided before *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021), is incorrect.

*Goldman Sachs* provides that "in assessing price impact at class certification, courts 'should be open to *all* probative evidence on that question—qualitative as well as quantitative— aided by a good dose of common sense." *Id.* at 1960. The Supreme Court did not hold, as Plaintiffs assert, that a back-end price drop is sufficient unless Defendants demonstrate that it was the result of other factors. Instead, the Court held that where "there is a mismatch between the contents of the misrepresentation and the corrective disclosure . . . there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop." *Id.* at 1961. In particular, "when the earlier [alleged] misrepresentation is generic (*e.g.*, 'we have faith in our business model') and the later corrective disclosure is specific (*e.g.*, 'our fourth quarter earnings did not meet expectations') . . . it is less likely that the specific disclosure actually corrected the generic misrepresentation." *Id.*[1] Plaintiffs' allegations fit squarely into this framework and provide an

---

[1] Plaintiffs once again do not contest in their Executive Summaries that the alleged misstatements identified in Defendants' Opposition are the only remaining alleged misstatements in the action.

even starker contrast between alleged misstatement (*i.e.*, PRA is a "conservative" and "disciplined" company) and corrective disclosure (*i.e.*, a single account underperformed).

Plaintiffs cite the district court's decision on remand in the *Goldman Sachs* litigation to support that "any price impact must be measured via stock price decreases occurring after" the alleged corrective disclosures. *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 579 F. Supp. 3d 520, 527 (S.D.N.Y. 2021). Plaintiffs ignore that in this decision, which is currently on appeal, the court also found that the statements at issue were not sufficiently generic to rebut price impact. *Id.* at 534 (statements that "'we increasingly have to address potential conflicts of interest, including situations where our services to a particular client or our own proprietary investments or other interests conflict, or are perceived to conflict, with the interest of another client' . . . are quite a bit more specific in form and focus than, say, assurances that '[i]ntegrity and honesty are at the heart of our business'"). Here, all alleged misstatements are plainly analogous to the Supreme Court's example of a generic statement that "we have faith in our business model."

There is also an obvious "mismatch" here as Plaintiffs contend that a disclosure regarding a single policy with a "unique structure" corrected statements regarding PRA's company-wide conservative business practices in underwriting and reserving for policies written across multiple business lines. ¶ 215. In this circumstance, there is no reason to infer a connection between the disclosed information and the prior alleged misstatements. ███████████████████

████████████████████████████████████████

██████████ *See* Ex. 5 at 125:9-12; *see also* Ex. 7 (5/11/2020 Boenning & Scattergood Analyst Report) (giving view that PRA is "one of the more conservative companies we cover" after the corrective disclosures). Further, Defendants have proffered expert testimony demonstrating that the vast majority of PRA's competitors included similar generic statements regarding

"conservative" or "disciplined" practices during the putative Class Period.  Deal ¶¶ 43–45.

In response to this wide-ranging, probative evidence that supports a finding of no price impact under *Goldman Sachs*, Plaintiffs cite to incomplete testimony by Defendants' expert, Mr. Deal, which they say concedes that the decline in PRA's stock price on January 22 was due, at least in part, to the Company's disclosure regarding TeamHealth.  Pl. Exec Sum. at 5.  Not only did Mr. Deal explain that, in fact, he had not performed an affirmative analysis (*see* Ex. 18), but this testimony is wholly irrelevant.  The relevant question is not whether PRA's stock price declined on the alleged corrective disclosure dates in response to disclosures made, but whether those disclosures in fact corrected the earlier alleged misstatements.  That is precisely what Mr. Deal opined did not occur.  *See, e.g.*, Deal ¶ 27.  Plaintiffs further attempt to distinguish *Goldman Sachs* by pointing to information that analysts and PRA management purportedly "both considered material."  Pl. Exec. Sum. at 7.  Plaintiffs misconstrue the analyst reports attached to their submission as demonstrating the market's reliance on the alleged misstatements.  *Id.*  None of the reports state that the analysts' conclusions regarding PRA's conservatism were based on management's representations rather than the analysts' own analysis of PRA's performance.  Moreover, Plaintiffs' argument has no bearing on the analysis mandated by *Goldman Sachs*.  The issue is not whether investors found the initial alleged misstatements important, but whether the subsequent, specific disclosures had any corrective effect.  Merely stating that the initial alleged misstatements were important does nothing to overcome this disconnect.  Plaintiffs also point to Judge Kallon's analysis of whether the alleged misstatements constituted "puffery," but those findings relate to materiality and have no bearing on the class certification analysis.  Plaintiffs' reliance on a single analyst report describing the January 22 announcement as "surprising" given PRA's reputation as a conservative insurer is similarly misplaced as the same analyst continued to

describe PRA as conservative after both alleged corrective disclosures.  *See* Ex. 7.[2]

### B.  There Was No Price Impact from the Alleged Frequency Misstatements

Plaintiffs have not disputed Defendants' evidence that there was no front-end price impact from the alleged frequency misstatements, and their price impact argument is therefore reliant on back-end price impact from the alleged corrective disclosures.  Plaintiffs have not, however, identified any corrective disclosure demonstrating that PRA was experiencing an increase in frequency.  While Plaintiffs argue that a corrective disclosure "need not precisely mirror the earlier misrepresentation," it is axiomatic that "the disclosure must share the same subject matter as the prior misstatement."  *FindWhat Inv. Grp. v. Findwhat.Com*, 658 F.3d 1282, 1311 n.28 (11th Cir. 2011).  Neither alleged corrective disclosure mentions frequency or even touches on the same subject matter as the alleged frequency misstatements.  Thus, there was no price impact from the alleged frequency misstatements and the Class Period (if any) must be shortened accordingly.

### II.  Plaintiffs' Filings Confirm That Individualized Knowledge Issues Will Predominate

Plaintiffs concede that the claims data allegedly demonstrating an "exponential" increase in TeamHealth claims and underlying their "forensic analysis" was publicly available in PRA's statutory insurance filings, yet claim that those filings are "virtually indecipherable to those outside of the insurance industry."  ¶ 109.  Plaintiffs' own expert, Dr. Feinstein, opined, however, that PRA's common stock traded in an "efficient market" in which all publicly available information will be "fully reflect[ed]." Feinstein ¶¶ 17, 33, 37.  Either Dr. Feinstein is correct, and the allegedly

---

[2] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████  Plaintiffs also submit documents with no bearing on the class certification issue.  *See* Pl. Exs. A-C.  ████████████████
████████████████████████████████████████████████████
███████████████████████████████████  and Plaintiffs do not even provide a superficial explanation why the documents are relevant to the Court's analysis at this stage.

misrepresented information was reflected in PRA's stock price prior to any alleged corrective disclosure, or Plaintiffs are correct, and individualized issues regarding each investor's understanding of the statutory filings will predominate.

Plaintiffs respond to this contradiction by arguing that their purported forensic analysis "could not have been conducted without 'knowing both the size of the charges recorded in 4Q19 and that they had been caused by TeamHealth.'" Reply at 13–14 (quoting ¶ 133). Whether an investor could have undertaken Plaintiffs' *post-hoc* investigation is not the relevant inquiry as to whether individualized issues of investors' knowledge during the Class Period will predominate. Such issues will necessarily predominate given the evidence that certain market participants did in fact review and analyze the allegedly "indecipherable" filings. *See* Ex. 21 (revising EPS estimates "following our analysis of [PRA's] reserves utilizing the annual statutory filings"); Ex. 22 ("[A]n uptick in current accident year losses . . . [was] corroborated in the greater case reserves in [PRA's] March statutory filings."). Because individualized issues affect one of Plaintiffs' two remaining theories of alleged misstatements, common issues will not predominate. Alternatively, if the Court were to certify a class for the conservative business practices statements only, the Class Period must be modified to begin no earlier than November 7, 2018. *See* Defs.' CP Exec. Sum. at 5.

## III.    Lead Plaintiffs Are Inadequate Class Representatives

Class certification should further be denied because Lead Plaintiffs have abdicated their responsibilities to supervise counsel, ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

## CONCLUSION

Plaintiffs' Motion for Class Certification should be denied.

5

Dated: February 17, 2023

STARNES DAVIS FLORIE LLP

/s/ *Cole R. Gresham*

Walter W. Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
Michael R. Lasserre (ASB-2144-Y61G)
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, AL 35259-8512
wwb@starneslaw.com
jme@starneslaw.com
crg@starneslaw.com
mrl@starneslaw.com

SIMPSON THACHER & BARTLETT LLP

Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Jacob Lundqvist (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Defendants ProAssurance Corporation, W. Stancil Starnes, Edward L. Rand, Jr., Dana S. Hendricks, Howard H. Friedman, and Michael L. Boguski.*

6

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Steven B. Singer
Craig Corey Maider
Kyla Grant
Sara M. DiLeo
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, NY 10606

Joseph E. White, III
Lester R. Hooker
Jonathan Dov Lamet
SAXENA WHITE P.A.
7777 Glades Road, Suite 300
Boca Raton, FL 33434

Bailie L. Heikkinen
Reginald E. Janvier
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432

David J. Guin
Tammy M. Stokes
Dawn Stith Evans
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL 35203

Roger H. Bedford, Jr
ROGER BEDFORD, ATTORNEY AT LAW, LLC
P.O. Box 1149
Russellville, AL  35653

John T. Long
CAVANAGH & O'HARA
2319 West Jefferson Street
Springfield, IL  62702

James Bringhurst Eubank

{B4507576}                                    7

Wilson Daniel Miles, III
Beasley Allen Law Firm
218 Commerce St.
Montgomery, AL 36104

Mason G Roth
ROBBINS GELLER RUDMAN & DOWD, LLP
120 East Palmetto Park Road
Boca Raton, FL 33432

Nathan R Lindell
ROBBINS GELLER RUDMAN & DOWD LLP
655 W Broadway, Suite 1900
San Diego, CA 92101


                                        */s/ Cole R. Gresham*
                                        STARNES DAVIS FLORIE LLP

{B4507576}

8