FILED

2023 Jun-22  AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 2:20-cv-00856-RDP |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) | LEAD PLAINTIFFS' MEMORANDUM OF |
| vs. | ) ) | LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL |
| PROASSURANCE CORPORATION, et al., | ) | OF CLASS ACTION SETTLEMENT |
| Defendants. | ) ) | |
| | ) | |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND OF THE LITIGATION...........................................................2

III.  PRELIMINARY SETTLEMENT APPROVAL ...................................................4

    A.    The Standard for Judicial Approval of Class Action Settlements ...........................4

    B.    The Relevant Factors Governing Preliminary Approval ........................................6

    C.    The Proposed Settlement Meets Each of the Rule 23(e)(2) Factors.......................6

        1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class ..........................................................................6

        2.    The Settlement Was Negotiated at Arm's Length .....................................7

        3.    The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal ...............................................................7

        4.    The Proposed Method of Distributing Relief to the Settlement Class Is Effective ...................................................................8

        5.    Attorneys' Fees ........................................................................................9

        6.    The Parties Have No Other Agreements Besides the Supplemental Agreement Concerning Opt-Outs, Which Is Standard in Securities Class Actions ...........................................................................10

        7.    Settlement Class Members Are Treated Equitably...................................10

    D.    The Settlement Is Fair, Adequate, and Reasonable Under the *Bennett* Factors.........................................................................................11

        1.    The Potential Obstacles to Success at Trial Support Approval of the Settlement..........................................................................11

        2.    The Settlement Amount Is Within the Range of Reasonableness .............13

        3.    The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement..........................................14

        4.    The Stage of Proceedings Supports Approval of the Settlement...............15

    E.    The Recommendation of Experienced Counsel Favors Approval of the Settlement ...............................................................................................15

**Page**

IV.    CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
       PURPOSES IS APPROPRIATE .......................................................................16

       A.    Plaintiffs Have Standing to Pursue Their Claims ....................................17

       B.    The Settlement Class Meets the Requirements of Rule 23(a) ...............17

             1.    The Settlement Class Is Sufficiently Numerous .......................17

             2.    There Are Common Questions of Law and Fact .......................17

             3.    The Proposed Class Representatives' Claims Are Typical........18

             4.    The Proposed Class Representatives Fairly and Adequately
                   Protected the Interests of the Settlement Class ..........................19

       C.    The Proposed Settlement Class Satisfies Rule 23(b)(3) .........................20

             1.    Common Questions of Law and Fact Predominate ..................20

             2.    A Class Action Is the Superior Method for Resolution ............22

       D.    The Court Should Appoint Counsel as Class Counsel .........................22

V.     NOTICE TO THE SETTLEMENT CLASS......................................................23

VI.    PROPOSED SCHEDULE .................................................................................24

VII.   CONCLUSION..................................................................................................25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*AAL High Yield Bond Fund v. Ruttenberg*,
   229 F.R.D. 676 (N.D. Ala. 2005).......................................................................................18

*Amason v. Pantry, Inc.*,
   2014 U.S. Dist. LEXIS 90537
   (N.D. Ala. July 3, 2014).....................................................................................................5

*Ault v. Walt Disney World Co.*,
   692 F.3d 1212 (11th Cir. 2012),
   *cert. denied sub nom. Miller v. Walt Disney World Co.*,
   569 U.S. 918 (2013)..........................................................................................................19

*Beavers v. Am. Cast Iron Pipe Co.*,
   164 F. Supp. 2d 1290 (N.D. Ala. 2001)............................................................................13

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla 1988)..............................................................................12, 13, 15

*Beneli v. BCA Fin. Servs.*,
   324 F.R.D. 89 (D.N.J. 2018).................................................................................................8

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...................................................................................*passim*

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982),
   *aff'd*, 737 F.2d 982 (11th Cir. 1984)...................................................................................5

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)....................................................................10

*Cifuentes v. Regions Bank*,
   2014 U.S. Dist. LEXIS 37458 (S.D. Fla. Mar. 20, 2014)...........................................5, 13, 15

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...........................................................................................16

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011) ...........................................................................................6

*Garst v. Franklin Life Ins. Co.*,
   1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 28, 1999)............................................*passim*

**Page**

*Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*,
 __U.S.__, 141 S. Ct. 1951 (2021)......................................................................................12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
 573 U.S. 258 (2014)......................................................................................................21

*In re Blue-Cross Blue Shield*,
 2020 U.S. Dist. LEXIS 248401
 (N.D. Ala. Nov. 30, 2020) ...............................................................................5, 16, 17, 20

*In re CP Ships Ltd. Sec. Litig.*,
 578 F.3d 1306 (11th Cir. 2009) ..................................................................................2, 6

*In re Domestic Air Transp. Antitrust Litig.*,
 141 F.R.D. 534 (N.D. Ga. 1992)..............................................................................23, 24

*In re Domestic Air Transp. Antitrust Litig.*,
 148 F.R.D. 297 (N.D. Ga. 1993)...................................................................................13

*In re Genworth Fin. Sec. Litig.*,
 2016 WL 7187290 (E.D. Va. Sept. 26, 2016)...............................................................10

*In re HealthSouth Corp. Sec. Litig.*,
 213 F.R.D. 447 (N.D. Ala. 2003)..................................................................................18

*In re HealthSouth Corp. Sec. Litig.*,
 257 F.R.D. 260 (N.D. Ala. 2009)............................................................................17, 18

*In re Motorsports Merch. Antitrust Litig.*,
 112 F. Supp. 2d 1329 (N.D. Ga. 2000)........................................................................5, 6

*In re Netbank, Inc. Sec. Litig.*,
 2011 WL 1335322 (N.D. Ga. Nov. 9, 2011) ..................................................................9

*In re NetBank, Inc. Sec. Litig.*,
 259 F.R.D. 656 (N.D. Ga. 2009)...................................................................................17

*In re Nissan Motor Corp. Antitrust Litig.*,
 552 F.2d 1088 (5th Cir. 1997) ......................................................................................24

*In re Smith*,
 926 F.2d 1027 (11th Cir. 1991) ....................................................................................16

*In re Sunbeam Sec. Litig.*,
 176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................................13, 14, 15

**Page**

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ...................................................................................5, 6

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..............................................................................15

*J.W. v. Birmingham Bd. of Educ.*,
   2012 WL 3849032 (N.D. Ala. Aug. 31, 2012) ..........................................................18

*Kamakana v. City & Cty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ....................................................................................10

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ...............................................................................19, 22

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ...................................................................................16

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) ...................................................................................19

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ........................................................................16

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   762 F.3d 1248 (11th Cir. 2014) ...................................................................................20

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) .............................................................................23

*Monroe Cny Emps.' Ret. Sys. v. Southern Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019).............................................................................18, 19

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ................................................................................10

*Poertner v. Gillette Co.*,
   2014 U.S. Dist. LEXIS 116616
   (M.D. Fla. Aug. 21, 2014),
   *aff'd*, 618 F. App'x 624 (11th Cir. 2015)........................................................................5

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ...................................................................................19

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992).............................................................................15

**Page**

*Sterling v. Stewart*,
158 F.3d 1199 (11th Cir. 1998) ...........................................................................................5

*Strube v. Am. Equity Inv. Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005)...................................................................................11, 16

*Thorpe v. Walter Inv. Mgmt., Corp.*,
2016 WL 4006661 (S.D. Fla. Mar. 16, 2016).................................................................16, 19

*TransUnion LLC v. Ramirez*,
__U.S.__, 141 S. Ct. 2190 (2021).......................................................................................17

*Turner v. Murphy Oil USA, Inc.*,
472 F. Supp. 2d 830 (E.D. La. 2007) ...................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...............................................................................................................18

*Wells v. HBO & Co.*,
1991 U.S. Dist. LEXIS 11312 (N.D. Ga. Apr. 22, 1991) ...............................................20, 22

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78j(b)................................................................................................................................3, 11
§78t(a) .....................................................................................................................................3
§78u-4 .............................................................................................................. *passim*
§78u-4(a)(4) .......................................................................................................................2, 10

**Page**

Federal Rules of Civil Procedure
    Rule 23 ......................................................................................................17, 23, 24
    Rule 23(a) .....................................................................................................2, 17, 22
    Rule 23(a)(1) ...........................................................................................................17
    Rule 23(a)(2) .....................................................................................................17, 18
    Rule 23(a)(3) .....................................................................................................17, 18
    Rule 23(a)(4) ................................................................................................17, 19, 20
    Rule 23(b)(1) ..........................................................................................................23
    Rule 23(b)(3) .........................................................................................2, 17, 20, 22
    Rule 23(c)(2)(A) .....................................................................................................23
    Rule 23(e) .................................................................................................................5
    Rule 23(e)(1) ........................................................................................................2, 6
    Rule 23(e)(2) .............................................................................................2, 6, 10, 11
    Rule 23(e)(2)(A) .......................................................................................................6
    Rule 23(e)(2)(C)(ii) ..................................................................................................9
    Rule 23(e)(2)(C)(iii) .................................................................................................9
    Rule 23(e)(2)(C)(iv) ...............................................................................................10
    Rule 23(e)(2)(D) .....................................................................................................10
    Rule 23(g)(1) ..........................................................................................................23
    Rule 23(g)(1)(A) .....................................................................................................23

17 C.F.R.
    Rule 10b-5 ..........................................................................................................3, 21

## SECONDARY AUTHORITIES

David F. Herr,
    *Manual for Complex Litigation* (4th ed. 2019) ..........................................................5

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
    *Recent Trends in Securities Class Action Litigation:*
    *2022 Full-Year Review* (NERA Jan. 24, 2023) .......................................................14

Lead Plaintiffs Central Laborers' Pension Fund and Plymouth County Retirement Association ("Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the proposed Settlement of this class action brought on behalf of all persons who purchased or otherwise acquired ProAssurance Corporation ("ProAssurance" or the "Company") common stock between August 8, 2018 and May 7, 2020, inclusive (the "Class Period"), alleging claims under the Securities Exchange Act of 1934 against defendants ProAssurance and certain executives of the Company (collectively, "Defendants").[1] The terms of the proposed Settlement are set out in the Stipulation of Settlement dated June 22, 2023 (the "Stipulation"), submitted herewith.[2]

## I. INTRODUCTION

After nearly three years of extensive and hard-fought litigation, the Settling Parties have agreed to a Settlement that provides a $28,000,000 cash payment (the "Settlement Amount") to resolve Lead Plaintiffs' claims against the Defendants. This outstanding result is the product of extensive arm's-length negotiations over many months between counsel for Lead Plaintiffs and Defendants, overseen by a highly experienced mediator. Lead Plaintiffs and Lead Counsel believe that the Settlement is an excellent result for the Settlement Class, and that the Court should preliminarily approve it and permit notice of its terms to be disseminated to Settlement Class Members.

In determining whether preliminary approval is warranted, the issue before the Court is whether the Court will likely be able to approve the Settlement under Rule 23(e)(2) of the Federal

---

[1] All capitalized terms used in this memorandum that are not otherwise defined herein shall have the meanings provided in the Stipulation.

[2] Lead Counsel have conferred with Defendants' Counsel concerning this motion. While Defendants do not adopt or agree with certain of the arguments or characterizations set forth herein, they do not oppose the relief sought. A proposed order granting the relief requested herein (the "Notice Order") is attached to the Stipulation as Exhibit A and is also attached to the Motion for Preliminary Approval of Class Action Settlement as Exhibit 1.

Rules of Civil Procedure (the "Rules") and certify the Settlement Class solely for purposes of entering a judgment on the Settlement. Fed. R. Civ. P. 23(e)(1). The Settlement satisfies each of the elements of Rule 23(e)(2), as well as the approval factors set forth in *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1315 (11th Cir. 2009). Likewise, the elements of Rules 23(a) and (b)(3) have been met for purposes of certifying the Settlement Class. Accordingly, notice of the Settlement should be given to Settlement Class Members, and a hearing should be scheduled to consider final Settlement approval. The Court is not required at this point to make a final determination as to the fairness of the Settlement.

Because the Settlement meets the foregoing criteria and is well within the range of what might be approved as fair, reasonable, and adequate, Lead Plaintiffs ask this Court to enter an Order: (1) granting preliminary approval of the Settlement; (2) certifying the Settlement Class for settlement purposes; and (3) directing that the Settlement Class be given notice of the pendency of this Litigation and the Settlement, in the form and manner proposed by the Settling Parties.[3]

## II.     BACKGROUND OF THE LITIGATION

The initial complaint in the Litigation was filed on June 16, 2020. On September 11, 2020, the Court appointed Central Laborers' Pension Fund and Plymouth County Retirement Association as Lead Plaintiffs and Robbins Geller Rudman & Dowd LLP and Saxena White P.A. as Lead Counsel.

On March 26, 2021, Lead Plaintiffs filed a Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Consolidated Complaint"). The Consolidated Complaint alleges that: (i) all Defendants violated Section 10(b) of the Securities Exchange Act of

---

[3]     At the final Settlement Hearing, the Court will consider the motion for final approval of the Settlement and entry of the Settling Parties' proposed final order and judgment and Lead Counsel's application for an award of attorneys' fees and expenses, including reimbursement of Lead Plaintiffs' costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4).

1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (ii) the Individual Defendants violated Section 20(a) of the Exchange Act. Lead Plaintiffs allege that, during the Class Period, Defendants materially misled investors by concealing ProAssurance's deviation from its purportedly conservative practices in connection with an undisclosed insurance policy issued to a large national account and the amount of loss reserves ProAssurance maintained for the undisclosed large national account. Lead Plaintiffs allege that, as a result of Defendants' misrepresentations and/or omissions, the price of ProAssurance's common stock was artificially inflated during the Class Period.

On May 18, 2021, Defendants moved to dismiss the Consolidated Complaint for failure to state a claim under Rules 9(b) and 12(b)(6) and under the PSLRA. Lead Plaintiffs filed their opposition to Defendants' motion to dismiss on June 30, 2021, and Defendants filed their reply in support of the motion on July 28, 2021. On December 10, 2021, the Court issued an order granting in part and denying in part Defendants' motion to dismiss. Defendants answered the Consolidated Complaint on January 24, 2022, denying all material allegations and asserting multiple defenses.

After the PSLRA-mandated discovery stay was lifted, Lead Plaintiffs served over 45 requests for production of documents to Defendants, and Defendants, on a rolling basis, produced more than 169,800 documents (encompassing over 1,643,000 pages) from over 30 custodians, which were reviewed and analyzed by Lead Plaintiffs' Counsel. In addition, Lead Plaintiffs served three sets of interrogatories, totaling 35 interrogatories, and Defendants provided objections and responses thereto. The Settling Parties served subpoenas on 19 third parties, which collectively produced more than 154,700 documents totaling over 1,198,900 pages. Lead Plaintiffs produced over 15,700 pages and provided objections and responses to Defendants' 29 document requests and 16 interrogatories. Each of Lead Plaintiffs and Defendants also provided deposition testimony. The Settling Parties also

participated in numerous meet and confer discussions to address discovery issues, litigated multiple discovery disputes before the Court, and conducted 19 expert and fact witness depositions.

On April 1, 2022, Lead Plaintiffs filed a motion for class certification. Defendants filed an opposition to the motion for class certification on June 17, 2022, and Lead Plaintiffs filed their reply in support of class certification on August 19, 2022. Pursuant to an order by the Court, the Settling Parties also filed simultaneous supplemental briefs regarding class certification on February 3 and 17, 2023. Lead Plaintiffs' motion for class certification was pending at the time the Settling Parties reached an agreement in principle to settle the Litigation.

On November 29, 2022, the Settling Parties participated in a formal, full-day in-person mediation with David Murphy of Phillips ADR Enterprises. The mediation session involved the Settling Parties' submission of confidential mediation statements and exhibits and detailed presentations. While a settlement was not reached during the November 29, 2022 mediation session, the Settling Parties continued their good-faith efforts to resolve the case over the next several months. On March 24, 2023, Mr. Murphy made a mediator's recommendation to settle the case for $28,000,000, which the Settling Parties accepted on March 29, 2023. This agreement-in-principle contemplated full releases of liability in return for a cash payment of $28 million for the benefit of the Settlement Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court. The Stipulation (together with the Exhibits thereto) reflects the Settling Parties' final and binding agreement, and a compromise of all matters that are or could have been in dispute between the Settling Parties arising from the allegations made in the Consolidated Complaint.

## III.    PRELIMINARY SETTLEMENT APPROVAL

### A.    The Standard for Judicial Approval of Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. *Poertner v. Gillette Co.*, 2014 U.S. Dist. LEXIS 116616, at *5 (M.D. Fla.

Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th Cir. 2015).  There is a "strong judicial policy favoring settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Amason v. Pantry, Inc.*, 2014 U.S. Dist. LEXIS 90537, at *23 (N.D. Ala. July 3, 2014).  "[S]ettlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'"  *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Cifuentes v. Regions Bank*, 2014 U.S. Dist. LEXIS 37458, at *11 (S.D. Fla. Mar. 20, 2014).[4]  As the court in *U.S. Oil & Gas* noted, "[c]omplex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.  Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . ."  967 F.2d at 493.

Preliminary approval of a class action settlement lies within the sound discretion of the Court.  *See In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000); *Bennett*, 737 F.2d at 986.  When considering the proposed Settlement, the Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." David F. Herr, *Manual for Complex Litigation* at §21.632 (4th ed. 2019); *cf. Sterling v. Stewart*, 158 F.3d 1199, 1203-04 (11th Cir. 1998); *In re Blue-Cross Blue Shield*, 2020 U.S. Dist. LEXIS 248401, at *58 (N.D. Ala. Nov. 30, 2020) (Proctor, J.).  It is well-settled that a settlement should be approved if it is "fair, adequate, reasonable, and free of fraud or collusion."  *Motorsports Merch.*, 112 F. Supp. 2d at 1333 (citing *Bennett*, 737 F.2d at 986).

As set forth below, the proposed Settlement merits preliminary approval and warrants dissemination of notice to the Settlement Class and the scheduling of a final Settlement Hearing.

---

[4]   All internal citations are omitted and emphasis is added unless otherwise noted.

### B.    The Relevant Factors Governing Preliminary Approval

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).  In addition, the Eleventh Circuit has held that, in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*CP Ships*, 578 F.3d at 1318 (quoting *Bennett*, 737 F.2d at 986); *see also Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).  Approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493; *see also Bennett*, 737 F.2d at 987 (same).

### C.    The Proposed Settlement Meets Each of the Rule 23(e)(2) Factors

#### 1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiffs and Lead Counsel have satisfied Rule 23(e)(2)(A) by vigorously prosecuting this Litigation for nearly three years.  Among other things, Lead Plaintiffs investigated the relevant factual events, including by conducting an in-depth, *post hoc* forensic analysis; analyzed ProAssurance's SEC filings, Defendants' other public statements, and analyst reports concerning the Company; researched the legal issues underlying Lead Plaintiffs' claims; drafted a detailed amended complaint; prevailed in part against Defendants' motion to dismiss the Consolidated Complaint; fully briefed class certification; conducted document and deposition discovery; consulted with multiple experts and consultants; and participated in lengthy, mediator-assisted settlement

negotiations with Defendants.  The result of these efforts is an impressive proposed Settlement of $28,000,000 in cash for the benefit of the Settlement Class.

### 2.     The Settlement Was Negotiated at Arm's Length

There can be no question that the Settlement is the result of arm's-length negotiations, devoid of even a hint of collusion.  As discussed above, the Settling Parties engaged an experienced mediator to assist them and attended a full-day in-person mediation, which proved unsuccessful. After months of post-mediation negotiations through the mediator, however, the Settling Parties ultimately reached an agreement-in-principle to resolve the Litigation, subject to Court approval. The fact that the Settlement was negotiated at arm's length with the assistance of an experienced mediator strongly supports preliminary approval.

### 3.     The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the proposed Settlement, the Court should balance the benefits afforded to the Settlement Class – including the immediacy and certainty of a recovery – against the significant costs, risks, and delay of proceeding with the Litigation.  Indeed, securities class actions present numerous hurdles to proving liability that are difficult to overcome.  Although Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Litigation are meritorious, continued litigation against Defendants poses substantial risks that make any recovery uncertain.

For instance, the Court partially granted Defendants' motion to dismiss, including the "bulk" of Lead Plaintiffs' alleged misstatements, and Lead Plaintiffs' class certification motion was undecided when the agreement to settle was reached.  In opposing Lead Plaintiffs' motion for class certification, Defendants asserted multiple arguments in support of their contention that no class should be certified, or – alternatively – that the Class Period for any certified class should be shortened by several months.

Even if the Court certified the class for the entire Class Period, Lead Plaintiffs faced considerable risks and expenses in continuing to litigate the case. To prove their claims, Lead Plaintiffs would need to rely extensively on adverse witnesses affiliated with the Company and expert analysis of key issues. Each expert's testimony would be critical to demonstrating Defendants' liability and damages, and the conclusions of each expert would be hotly contested at trial. If the Court determined that even one of Lead Plaintiffs' experts should be excluded from testifying at trial, Lead Plaintiffs' case would become more difficult (if not impossible) to prove.

Furthermore, if the Litigation continued, there would remain significant hurdles to proceeding to trial and proving liability with respect to events that took place as much as seven years ago. Defendants have strenuously disputed that they made any false or misleading statements to investors, maintained that an unfavorable business decision provides no basis for a securities fraud claim, and asserted that no amount of discovery would help Lead Plaintiffs prove their claims. At minimum, Defendants may have been able to raise serious issues of fact that would have rendered a favorable verdict for Lead Plaintiffs highly uncertain.

In complex cases such as this one, "'[t]he risks surrounding a trial on the merits are always considerable.'" *Beneli v. BCA Fin. Servs.*, 324 F.R.D. 89, 103-04 (D.N.J. 2018). Here, in the absence of a settlement, there is a very real risk that the Settlement Class would recover an amount significantly less than the total amount of the Settlement – or nothing at all. Thus, the $28,000,000 in cash recovery now, particularly when viewed in the context of the risks, costs, delay, and uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 4. The Proposed Method of Distributing Relief to the Settlement Class Is Effective

Pursuant to Rule 23(e)(2)(C)(ii), the proposed method of notice and claims administration process is effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, as well as publication in a newspaper directed towards investors, and over the

Internet.  In addition, toll-free telephone and email support will be provided, and a Settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim form, and Notice Order.

The proposed method for distribution of Settlement proceeds to the Settlement Class is also effective, as it includes a standard claim form that requests the information necessary to calculate a claim pursuant to the Plan of Allocation.  The Plan of Allocation will govern how Settlement Class Members' damages will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared by Lead Plaintiffs' damages expert and is based on an analysis of the alleged artificial inflation in the price of ProAssurance common stock during the Class Period.  The Claims Administrator will conduct a thorough claims process and address claim deficiencies before any funds are distributed.

### 5. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses the terms of any proposed award of attorneys' fees.  As stated in the Notice, Lead Counsel intend to seek an award of attorneys' fees in an amount not to exceed 33% of the Settlement Amount and expenses in an amount not to exceed $1,500,000, plus interest on both amounts.  This fee request is in line with other fee awards approved in similar class action cases.  *See, e.g.*, *Cervantes v. Invesco Holding Co. (US), Inc., et al.*, No. 1:18-cv-02551-AT, ECF 110 at 2 (¶4) (N.D. Ga. Aug. 13, 2020) (awarding 33% fee); *In re Netbank, Inc. Sec. Litig.*, 2011 WL 1335322, at *2 (N.D. Ga. Nov. 9, 2011) (awarding 34% fee); *In re Theragenics Corp. Sec. Litig.*, No. 1:99-cv-0141-TWT, slip op. at 12 (¶14) (N.D. Ga. Sept. 29, 2004) (awarding 33-1/3% fee). The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel upon entry of an order awarding such fees and expenses.  *See* Stipulation, ¶6.2; *see also In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel

immediately upon entry of this Order"). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).[5]

### 6. The Parties Have No Other Agreements Besides the Supplemental Agreement Concerning Opt-Outs, Which Is Standard in Securities Class Actions

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements between the settling parties. The Settling Parties have entered into a standard confidential supplemental agreement, which provides that if requests for exclusion from the Settlement Class exceeds an agreed-upon threshold, the Company shall have the option (but not the obligation) to terminate the Settlement. *See* Stipulation, ¶7.3.[6]

### 7. Settlement Class Members Are Treated Equitably

The final Rule 23(e)(2) factor is whether Settlement Class Members are treated equitably. Fed. R. Civ. P. 23(e)(2)(D). As reflected in the Plan of Allocation set forth in the Notice, the Settlement treats Settlement Class Members equitably relative to each other by providing that each Settlement Class Member shall receive his, her or its *pro rata* share of the Net Settlement Amount based on the details of their transactions in ProAssurance common stock during the Class Period.

\*   \*   \*

---

[5]   Further, as explained in the Notice, Lead Plaintiffs intend to request an amount not to exceed $22,000 in the aggregate for reimbursement of time and expenses directly related to their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4).

[6]   There are "compelling reasons" for keeping the Supplemental Agreement confidential. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Keeping the threshold number of exclusions, which gives the Company the option to terminate the Settlement, confidential is necessary to avoid enabling one or more stockholders to selfishly use this knowledge to insist on a higher payout for themselves by threatening to eviscerate the Settlement, which would be detrimental to the interests of the Settlement Class. Moreover, such agreements are standard in securities class action settlements and have no negative impact on fairness. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*7 (C.D. Cal. Oct. 10, 2019) ("This type of agreement is common in securities fraud actions and does not weigh against preliminary approval.").

Thus, each factor identified under Rule 23(e)(2) is satisfied. Given the litigation risks involved, the complexity of the underlying issues, and the skill of Defendants' Counsel, the $28,000,000 recovery is excellent. Such a result could not have been achieved without the full commitment of Lead Plaintiffs and Lead Counsel.

> **D.** **The Settlement Is Fair, Adequate, and Reasonable Under the *Bennett* Factors**

>> **1.** **The Potential Obstacles to Success at Trial Support Approval of the Settlement**

The first *Bennett* factor is "the likelihood of success at trial." 737 F.2d at 986. "In assessing plaintiffs' likelihood of success at trial for purposes of determining whether the Settlement is fair, adequate and reasonable, the Court should make only a 'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at *62 (N.D. Ala. June 28, 1999); *accord Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005).

Although Lead Plaintiffs believe that their claims are meritorious and that Lead Counsel's investigation and litigation efforts support the claims, Lead Plaintiffs also acknowledge that they faced significant obstacles to continued litigation and, ultimately, success at trial. In general, there is a risk "inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007). The Court significantly narrowed Lead Plaintiffs' case by dismissing the "bulk" of the alleged misstatements and the §10(b) claims against three of the five Individual Defendants. *See* ECF 61, 62. Defendants further sought to shorten the proposed Class Period in connection with their opposition to Plaintiffs' class certification motion – which remained pending at the time that the Settling Parties agreed in principle to the Settlement. ECF 92. If Defendants' efforts to shorten the Class Period were successful, the potential damages of the Settlement Class would have been substantially reduced.

Defendants have also asserted formidable defenses to liability, loss causation, and damages, which they would likely have continued to press throughout the duration of the Litigation. For example, Defendants maintained that the alleged misstatements were true when they were made, and that their general statements regarding their commitment to "conservative" and "disciplined" business practices constitute non-actionable puffery and opinion statements. Defendants would also continue to argue that Plaintiffs could not establish defendant Friedman's or defendant Boguski's scienter, because the alleged misstatements were in fact true when they were made. Furthermore, Defendants had strenuously argued that Plaintiffs could not establish reliance because the purported "mismatch" between the supposedly generic nature of the remaining alleged false statements and the specificity of the alleged corrective disclosures evidenced a lack of price impact under *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, __U.S.__, 141 S. Ct. 1951 (2021). And, with respect to loss causation and damages, Defendants would argue that Plaintiffs could not disentangle alleged losses arising from the upheld statements from those that were dismissed, or from information completely unrelated to the alleged fraud.

Although Lead Plaintiffs had strong counterarguments on these issues, Defendants raised plausible defenses that, if recognized by the Court or jury, could significantly diminish or even defeat recovery. As the court held in *Garst*, "[t]he existence of these (and other) potential obstacles to plaintiffs' success on the merits argues in favor of approving the settlement." 1999 U.S. Dist. LEXIS 22666, at *64; *accord Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 540 (S.D. Fla 1988) (approving class action settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *Cifuentes*, 2014 U.S. Dist. LEXIS 37458, at *12 ("At the time the Parties agreed to terms, there was great risk facing Plaintiffs and the Class that could have resulted in Plaintiffs and the Class recovering far less than the common fund created *vis-a-vis* the Settlement or, far worse, nothing at all."); *Beavers v. Am. Cast Iron Pipe Co.*, 164

- 12 -

F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("there are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

Given the significant risks of continued litigation, including risks associated with obtaining class certification and overcoming Defendants' expected summary judgment and *Daubert* motions, there was a danger that Lead Plaintiffs would not have prevailed against Defendants on their claims, in which case the Settlement Class would have received nothing. Therefore, Lead Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Settlement Class.

### 2. The Settlement Amount Is Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at \*64; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("'the second and third considerations of the *Bennett* test are easily combined'"); *Behrens*, 118 F.R.D. at 541 (same).

"'[T]he Court must determine "whether [the settlement amount] falls within the 'range of reasonableness,' not whether it is the most favorable possible result in the litigation.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at \*68 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)). As the court in *Garst* observed:

> [T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

1999 U.S. Dist. LEXIS 22666, at \*64-\*65; *accord Sunbeam*, 176 F. Supp. 2d at 1332.

Here, an all cash payment of $28,000,000 represents an excellent recovery for the Settlement Class. Indeed, Defendants advanced arguments suggesting that Lead Plaintiffs would not be able to prove any damages. Moreover, the Settlement Amount represents approximately 31% of estimated recoverable damages under Lead Plaintiffs' damages model, as calculated by Lead Plaintiffs'

damages expert, assuming that Lead Plaintiffs fully prevailed at class certification and on all issues at summary judgment and trial.  This amount far exceeds the 3.8% median recovery in settlements of Exchange Act litigation with estimated damages between $50 and $99 million between 2011 and 2022.  Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023), at 17, Fig. 18.  Given the possibility that the Settlement Class would not be certified, that the Class Period could be significantly shortened, or that Defendants could succeed at summary judgment or trial (resulting in no recovery whatsoever), the $28,000,000 Settlement is an extremely favorable result.

Therefore, given the risks of proceeding with the Litigation, "the proposed Settlement provides relief that is fair and adequate and within the 'range of reasonableness,'" which strongly favors approval of the Settlement.  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68; *see also Bennett*, 737 F.2d at 986 (affirming holding that class action settlement was fair, adequate, and reasonable, because "compromise is the essence of settlement").

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

Further litigation against Defendants would necessarily involve expending significant additional time and money on merits depositions, expert depositions, *Daubert* motions, summary judgment proceedings, trial, and possible appeals.  In light of the costs and delays inherent in litigating this case to trial, the "unpredictability of a lengthy and complex . . . trial" – as well as the likelihood of further appellate activity if Lead Plaintiffs were to prevail at trial – "the benefits to the class of the present settlement become all the more apparent."  *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (approving class action settlement after finding that "further litigation would have resulted in considerable additional expense"); *Cifuentes*, 2014 U.S. Dist. LEXIS 37458, at *14-*15.

- 14 -

A settlement at this juncture results in an immediate, certain recovery without the considerable risk, expense, and delay of further litigation.

### 4.    The Stage of Proceedings Supports Approval of the Settlement

The purpose of considering the stage of the proceedings is to ensure that Lead Plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the Settlement against further litigation.  *See Behrens*, 118 F.R.D. at 544.

As discussed above, this case has been zealously litigated since its filing in June 2020. Merits discovery was near its conclusion, with over 1.1 million pages of documents produced by Defendants and third parties, and the completion of 19 expert and fact witness depositions.  The parties had fully briefed Defendants' motion to dismiss and Lead Plaintiffs' class certification motion, and engaged in arm's-length settlement negotiations with an experienced mediator. Accordingly, Lead Plaintiffs and Lead Counsel had a sufficient understanding of the facts of the case, including its strengths and weaknesses, when negotiating the Settlement, such that this factor favors approval of the Settlement.  *See Sunbeam*, 176 F. Supp. 2d at 1332 (because the "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### E.    The Recommendation of Experienced Counsel Favors Approval of the Settlement

The Court is entitled to rely on the judgment of Lead Counsel, and, indeed, "'should be hesitant to substitute its own judgment for that of counsel.'"  *Behrens*, 118 F.R.D. at 539 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Strube*, 226 F.R.D. at 703.  As the court held in *Strube*, "[class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate."  226 F.R.D. at 703.

Here, Lead Counsel are highly experienced in cases of this type and strongly endorse approval of the Settlement.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004). And a "class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1313-14 (S.D. Fla. 2005) (internal quotations omitted); *see also In re Blue Cross*, 2020 U.S. Dist. LEXIS 248401, at *105 (certifying settlement-only class). Moreover, "[i]t is well-established that class actions are 'a particularly appropriate means for resolving securities fraud actions.'" *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *4 (S.D. Fla. Mar. 16, 2016). Here, Lead Plaintiffs' claims are ideally suited for class treatment. Under the terms of the Stipulation, the Settling Parties have agreed, for settlement purposes only, to certification of the Settlement Class, defined as follows:

> all Persons who purchased or otherwise acquired ProAssurance common stock between August 8, 2018 and May 7, 2020, inclusive, and were alleged to be damaged thereby. Excluded from the Settlement Class are: (i) the Defendants; (ii) the current and Class Period officers and directors of ProAssurance; (iii) the Immediate Family Members of the Individual Defendants; and (iv) the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party and any entity in which such excluded persons have or had a controlling interest. Also excluded from the Settlement Class is any Person who would otherwise be a Member of the Settlement Class but who validly and timely requests exclusion in accordance with the requirements set by the Court in connection with the Settlement.

Stipulation, ¶1.36.

Certification of the Settlement Class is proper because all Settlement Class Members have standing for the relief they seek, and because the proposed Settlement Class, proposed class representatives, and proposed class counsel satisfy the numerosity, commonality, typicality, and

- 16 -

adequacy of representation requirements of Rule 23(a)(1)-(4), as well as the superiority and predominance requirements of Rule 23(b)(3).

### A.  Plaintiffs Have Standing to Pursue Their Claims

Under Article III of the U.S. Constitution, "Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, __U.S.__, 141 S. Ct. 2190, 2208 (2021).  In the Eleventh Circuit, "'prior to the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim.'"  *In re Blue Cross*, 2020 U.S. Dist. LEXIS 248401, at *40.  In appointing Central Laborers' Pension Fund and Plymouth County Retirement Association as Lead Plaintiffs (ECF 32), the Court found that they possessed "the largest financial interest in the relief sought by the class . . . [a]nd meet the requirements of Rule 23."  ECF 32 at 2.  Accordingly, Lead Plaintiffs have standing to pursue these claims on behalf of the Settlement Class.

### B.  The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.  The Settlement Class Is Sufficiently Numerous

Courts within this Circuit readily find Rule 23(a)(1)'s numerosity requirement satisfied in putative class actions involving securities traded on national exchanges, such as the New York Stock Exchange ("NYSE").  *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 274 (N.D. Ala. 2009); *In re NetBank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009).  During the Class Period, ProAssurance had over 53 million shares outstanding, which shares traded on the NYSE.  ECF 79 at 9.  Therefore, Settlement Class Members will likely number in the thousands and numerosity is easily demonstrated.

#### 2.  There Are Common Questions of Law and Fact

The standard for establishing commonality is "minimal" and "merely requires an identity of some factual or legal matter among members of the class."  *HealthSouth*, 257 F.R.D. at 274.  To satisfy the commonality requirement, it is not necessary that ***all*** (or even ***many***) questions of law and

fact be common to the entire putative class; "'[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *see also Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 378 (N.D. Ga. 2019).  In the securities fraud arena, "[t]he inherent legal and factual questions arising from the alleged existence of a single fraudulent scheme against many investors are illustrative of the kind of common questions contemplated by the commonality requirement." *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 681 (N.D. Ala. 2005).

Here, because the claims of all Settlement Class Members arise from the same operative facts and legal theories, Defendants' alleged liability is common to each member.  More specifically, the many issues that are common to all Settlement Class Members include the central questions of whether: (1) Defendants' public statements and omissions were materially false or misleading; (2) Defendants acted with the requisite mental state; and (3) the Settlement Class relied on Defendants' alleged misstatements and omissions.  As such, the commonality requirement is easily satisfied.  *See In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 458 (N.D. Ala. 2003) ("The court concludes that some questions of law or fact are common to the class and, thus, plaintiffs have met the minimum requirement of Fed. R. Civ. P. 23(a)(2).").

### 3.    The Proposed Class Representatives' Claims Are Typical

The typicality requirement of Rule 23(a)(3) seeks to ensure that the representative parties possess the same interest and suffered the same injury as the other members of the proposed class. *See J.W. v. Birmingham Bd. of Educ.*, 2012 WL 3849032, at *9 (N.D. Ala. Aug. 31, 2012).  Similar to commonality, "[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000)), *cert. denied sub nom. Miller v. Walt Disney World Co.*, 569 U.S.

918 (2013). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id*. (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Here, Lead Plaintiffs' claims are typical of other putative class members because, like the rest of the Settlement Class, they purchased ProAssurance common stock during the Class Period at prices that were allegedly artificially inflated by Defendants' alleged material misrepresentations, and were allegedly damaged thereby. *See Monroe Cnty.*, 332 F.R.D. at 379; *Thorpe*, 2016 WL 4006661, at *8 (typicality established where "[t]he alleged fraudulent statements comprise the wrongful acts which will serve on the *same* factual predicate for Plaintiffs and all members of the class and which will determine whether Defendants are liable under the *same* securities fraud theories." (Emphasis in original)).

### 4.    The Proposed Class Representatives Fairly and Adequately Protected the Interests of the Settlement Class

To satisfy Rule 23(a)(4)'s adequacy of representation requirement: (1) class counsel must be qualified, experienced, and generally able to conduct the litigation; and (2) the representative plaintiff's interests must not be antagonistic to those of the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). Those requirements clearly are satisfied here.

First, Robbins Geller and Saxena White, Court-appointed Lead Counsel for Lead Plaintiffs and the proposed Settlement Class, are amply qualified and experienced, and have vigorously and effectively prosecuted this Litigation on behalf of Lead Plaintiffs and the proposed Settlement Class. *See* ECF 79.

Second, no conflicts exist. As sophisticated, institutional investors, Lead Plaintiffs are exactly the type of plaintiffs Congress sought to encourage to lead securities class actions when it enacted the PSLRA. *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014). Moreover, like the other Settlement Class Members,

each Lead Plaintiff purchased ProAssurance shares during the Class Period and was similarly damaged by Defendants' alleged misconduct. *See In re Blue Cross*, 2020 U.S. Dist. LEXIS 248401, at *48. Moreover, Lead Plaintiffs have been actively involved in the prosecution of the Litigation, including extensively participating in discovery by producing documents responsive to Defendants' document requests and having their representatives sit for depositions. Accordingly, Rule 23(a)(4) is satisfied.

### C.    The Proposed Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

### 1.    Common Questions of Law and Fact Predominate

The predominance requirement is met in a securities fraud class action where, as here, "a class of purchasers allegedly [has been] defrauded over a period of time by a similar common thread or scheme to which all alleged non-disclosures or misrepresentations relate." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *54-*55 ("plaintiffs' allegations of a common scheme of deception are sufficient to demonstrate that common questions predominate"); *Wells v. HBO & Co.*, 1991 U.S. Dist. LEXIS 11312, at *18 (N.D. Ga. Apr. 22, 1991) (predominance satisfied in securities fraud action). The predominance of common questions is also readily found in a securities fraud class action because the plaintiffs are entitled to rely on the fraud-on-the-market ("FOTM") presumption of reliance. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). The FOTM theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that whenever an "investor buys or

sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Id.*[7]

Here, the common questions of law and fact set forth above predominate over any conceivable individual question because Defendants' alleged misconduct affected all Settlement Class Members in the same manner. Specifically, throughout the Class Period, Defendants allegedly made material misrepresentations and omissions, which were disseminated to shareholders, and allegedly artificially inflated the price of ProAssurance common stock. The Settlement Class relied on Defendants' alleged material misrepresentations and omissions, as reflected in the prices they paid for ProAssurance common stock through an efficient market, *i.e.*, the NYSE.

Thus, each Settlement Class Member would need to demonstrate the same facts to establish Defendants' alleged violations of the Exchange Act (*i.e.*, through public statements made to the market and documents publicly filed with the SEC). Specifically, generalized proof would be necessary with respect to whether: (1) the Defendants' alleged misstatements and omissions were materially false or misleading; (2) the Defendants allegedly possessed the requisite scienter; and (3) ProAssurance's investors relied on the Defendants' alleged misstatements and omissions, and were allegedly damaged thereby.

Accordingly, Lead Plaintiffs would be able to present common legal and factual arguments regarding all elements of their claims, including reliance, thus satisfying the predominance requirement of Rule 23(b)(3).

---

[7]  ProAssurance's stock was actively traded on the NYSE, an open and efficient market, with approximately 53 million shares of common stock outstanding during the Class Period. As a regulated issuer, ProAssurance regularly made public filings with the SEC, communicated with the market through established communications mechanisms, and was followed by major securities brokerages and analysts. ECF 79 at 15-21.

### 2.  A Class Action Is the Superior Method for Resolution

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) whether it is desirable to concentrate litigation of claims in this forum; and (4) the manageability of a class action.  Fed. R. Civ. P. 23(b)(3).

Here, "'separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.'"  *Kirkpatrick*, 827 F.2d at 725.  Further, certification is the superior method to facilitate resolution of the Settlement Class's claims against Defendants. Without the class device, Defendants could not obtain a class-wide release, and would have little incentive to enter into the Settlement.  Moreover, certification of a class for settlement purposes permits the settlement to be administered in an organized and efficient manner.  *See Wells*, 1991 U.S. Dist. LEXIS 11312, at *20 ("'"[C]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device."'").

Accordingly, the Court should find that the requirements of both Rules 23(a) and (b)(3) are met, and certify the Settlement Class for purposes of settlement.

### D.  The Court Should Appoint Counsel as Class Counsel

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  Lead Plaintiffs respectfully request that Robbins Geller and Saxena White be appointed Class Counsel for the Settlement Class.  The firms have fairly and adequately represented the interests of the Settlement Class for years and will continue to do so.  Proposed class counsel are knowledgeable about the applicable law, experienced in handling securities fraud class actions, have performed

substantial work in pursuing the claims and in reaching the Settlement, and have committed the necessary resources to represent the Settlement Class.  *See* Fed. R. Civ. P. 23(g)(1)(A).

## V.      NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2)(A) states, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  The due process clause requires that, in a class action, notice of the settlement and an opportunity to be heard must be given to absent class members.  *Cf. Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("This Court is of the opinion that the notice given to members of the plaintiff class by publication and by mail, as aforesaid, complied with all requirements of due process, all requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best notice practicable under the circumstances.").  Here, the proposed method of notice comports with Rule 23 and the requirements of due process.  *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga. 1992) (providing that notice by mail to those class members who could be identified and by publication only to those who could not be identified satisfies due process requirements).

The Settling Parties have negotiated the form of a Postcard Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified by the Company's transfer agent or other nominees.  The Settling Parties further propose to publish a summary form of notice in an investor-focused newspaper and over the Internet, establish a Settlement website to post Settlement-related information, and provide a toll-free telephone number to answer Settlement Class Member inquiries.

Where notice is being sent in connection with a proposed settlement, the notice must also inform class members of the terms of the settlement and their options with respect thereto.  *See Domestic Air*, 141 F.R.D. at 553-55; *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103-05 (5th Cir. 1997).  The long form Notice describes the nature, history, and status of the Litigation;

- 23 -

sets forth the definition of the Settlement Class; explains the Settlement Class's claims and issues; discloses the right of people who fall within the definition of the Settlement Class to object or seek exclusion from the Settlement Class, as well as the deadlines and procedures for doing so; and warns of the binding effect of the Settlement approval proceedings.  In addition, the Notice describes the Settlement and sets forth the $28,000,000 Settlement Amount; explains the proposed Plan of Allocation and the procedure and deadline for submitting a Proof of Claim and Release form; describes the maximum amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final Settlement approval; provides contact information for Lead Counsel; and summarizes the reasons the Settling Parties are proposing the Settlement.  The Notice also discloses the date, time, and place of the formal Settlement Hearing, and the procedures for commenting on the Settlement and appearing at the hearing.  The manner and content of the Postcard Notice, Notice, Proof of Claim and Release form, and Summary Notice proposed here fulfill all applicable requirements of Federal Rule 23, the PSLRA, and due process.

## VI.    PROPOSED SCHEDULE

In connection with the final approval of the Settlement, the Settling Parties propose the following schedule:

| EVENT | TIME FOR PERFORMANCE OR COMPLIANCE |
|---|---|
| Deadline for commencing mailing of the Postcard Notice to Settlement Class Members and posting the Notice and Proof of Claim and Release form on the Settlement-designated website (the "Notice Date") | 21 calendar days after entry of the Notice Order |
| Deadline for publication of the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing initial papers in support of final approval of the Settlement, Plan of Allocation, and application for an award of attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections and | 21 calendar days prior to the Settlement |

| EVENT | TIME FOR PERFORMANCE OR COMPLIANCE |
|---|---|
| requests for exclusion | Hearing |
| Deadline for filing reply in response to any objections and in further support of approval of the Settlement and Plan of Allocation, or in support of application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days from entry of the Notice Order, at the Court's convenience |
| Deadline for submitting Proof of Claim and Release forms | 90 calendar days after the Notice Date |

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement, certify the Settlement Class for settlement purposes, and enter the proposed Notice Order, submitted herewith.

DATED:  June 22, 2023

Respectfully submitted,

ROGER BEDFORD, ATTORNEY AT LAW, LLC
ROGER H. BEDFORD, JR.
(ASB: 3651 D60R)

s/ Roger H. Bedford, Jr.
ROGER H. BEDFORD, JR.

P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)
rogerbedfordattorneyatlawllc@gmail.com

- 25 -

GUIN, STOKES & EVANS, LLC
DAVID J. GUIN
TAMMY M. STOKES
DAWN STITH EVANS
300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)
davidg@gseattorneys.com
tammys@gseattorneys.com
devans@gseattorneys.com

Local Counsel for Lead Plaintiffs

ROBBINS GELLER RUDMAN
  & DOWD LLP
X. JAY ALVAREZ
(admitted *pro hac vice*)
NATHAN R. LINDELL
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com
jaya@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
MASON G. ROTH
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
bheikkinen@rgrdlaw.com
mroth@rgrdlaw.com

SAXENA WHITE P.A.
STEVEN B. SINGER
(admitted *pro hac vice*)
SARA DILEO (admitted *pro hac vice*)
KYLA GRANT (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
sdileo@saxenawhite.com
kgrant@saxenawhite.com

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
(admitted *pro hac vice*)
LESTER R. HOOKER
(admitted *pro hac vice*)
JONATHAN LAMET
(admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
jwhite@saxenawhite.com
lhooker@saxenawhite.com
jlamet@saxenawhite.com

Lead Counsel for Lead Plaintiffs

CAVANAGH & O'HARA
JOHN T. LONG
(admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

Additional Counsel for Lead Plaintiffs

- 27 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 22, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ ROGER H. BEDFORD, JR.
ROGER H. BEDFORD, JR.

ROGER BEDFORD, ATTORNEY AT LAW, LLC
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)

Email:  rogerbedfordattorneyatlawllc@gmail.com

# Mailing Information for a Case 2:20-cv-00856-RDP Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  jaya@rgrdlaw.com

- **Walter W Bates**
  Bbates@starneslaw.com

- **Roger H Bedford , Jr**
  rogerbedfordattorneyatlawllc@gmail.com

- **Sara M. DiLeo**
  sdileo@saxenawhite.com

- **James Bringhurst Eubank**
  James.Eubank@beasleyallen.com

- **Dawn Stith Evans**
  devans@gseattorneys.com

- **Jay M Ezelle**
  JEzelle@starneslaw.com

- **Janet A Gochman**
  jgochman@stblaw.com

- **Kyla Grant**
  Kgrant@saxenawhite.com

- **Cole Robinson Gresham**
  cgresham@starneslaw.com

- **David J Guin**
  davidg@gseattorneys.com

- **Bailie L Heikkinen**
  bheikkinen@rgrdlaw.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **Jonathan Dov Lamet**
  jlamet@saxenawhite.com

- **Michael R Lasserre**
  mrl@starneslaw.com

- **Nathan R Lindell**
  nlindell@rgrdlaw.com

- **John T Long**
  johnlong@cavanagh-ohara.com

- **Carl Jacob Lundqvist**
  jacob.lundqvist@stblaw.com

- **Craig Corey Maider**
  cmaider@saxenawhite.com

- **Wilson Daniel Miles , III**
  dee.miles@beasleyallen.com

- **Mason G Roth**
  mroth@rgrdlaw.com

- **Steven B Singer**
  ssinger@saxenawhite.com

- **Tammy McClendon Stokes**
  tammys@gseattorneys.com

- **Joseph E. White**
  jwhite@saxenawhite.com

- **Jonathan K Youngwood**
  jyoungwood@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)