FILED

2023 Dec-08  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 2:20-cv-00856-RDP |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | LEAD PLAINTIFFS' MEMORANDUM OF |
| vs. | ) ) | LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION |
| PROASSURANCE CORPORATION, et al., | ) ) | SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |
| Defendants. | ) ) | |

4874-6551-0549.v1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................3

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL..................................4

A.   The Standards for Final Approval of Class Action Settlements..............4

B.   The Proposed Settlement Satisfies Both the Rule 23(e)(2) and the Eleventh Circuit Requirements ...................................................................5

1.   Plaintiffs and Lead Counsel Adequately Represented the Settlement Class.....................................................................5

2.   The Settlement Is the Product of Arm's-Length Negotiations ...................8

3.   The Relief Provided to the Settlement Class Is Adequate ..........................9

a.   The Substantial Benefits for the Settlement Class, Weighed Against the Costs, Risks, and Delay of Further Litigation Support Final Approval.......................................................9

b.   The Proposed Method for Distributing Relief to the Settlement Class Is Effective ...........................................14

c.   Lead Counsel's Fee Request Is Fair and Reasonable ....................14

d.   There Are No "Side Agreements" Other than the Opt-Out Agreement.....................................................................15

4.   All Settlement Class Members Are Treated Equitably.............................15

5.   The Likelihood of Success at Trial and Complexity, Expense, and Duration of the Litigation Support Final Approval of the Settlement .....................................................................................15

6.   The Settlement Amount Is Reasonable Considering the Range of Possible Recoveries .....................................................................16

7.   The Stage of Proceedings at Which Settlement Was Achieved Strongly Supports Final Approval .............................................17

8.   The Favorable Response to the Settlement from the Settlement Class Supports Final Approval ...............................................17

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................18

4874-6551-0549.v1

**Page**

V.      NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE
        PROCESS ...................................................................................................................19

VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................20

VII.    CONCLUSION...........................................................................................................21

4874-6551-0549.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AAL High Yield Bond Fund v. Ruttenberg*,
  2005 WL 5926936 (N.D. Ala. June 2, 2005)................................................................4

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................................... *passim*

*Cabot E. Broward 2 LLC v. Cabot*,
  2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)..............................................................14

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................14, 15, 18

*Deas v. Russell Stover Candies, Inc.*,
  2005 WL 8158201 (N.D. Ala. Dec. 22, 2005).................................................9, 16, 17

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................9, 11, 13, 17

*In re Auto. Parts Antitrust Litig.*,
  2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ........................................................18

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...........................................................13

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................7, 9

*In re Flowers Foods. Inc. Sec. Litig.*,
  2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ..........................................................14

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ..........................................................7, 12, 13

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021),
  *report and recommendation adopted*,
  2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ............................................... *passim*

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales
  Pracs. & Prods. Liab. Litig.*,
  2023 WL 2284684 (S.D. Fla. Feb. 28, 2023) .......................................5, 6, 8, 10

*In re NetBank, Inc. Sec. Litig.*,
  2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ............................................................9

4874-6551-0549.v1

**Page**

*In re S. Co. S'holder Derivative Litig.*,
2022 WL 4545614 (N.D. Ga. June 9, 2022)...............................................................8

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ....................................................................................4

*In re Walter Energy, Inc. Sec. Litig.*,
2016 WL 7230505 (N.D. Ala. May 3, 2016).............................................................14

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)......................................................11, 12

*McWhorter v. Ocwen Loan Servicing, LLC*,
2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ................................................. *passim*

*Morgan v. Pub. Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) .........................................................7, 16, 17

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
2021 WL 1387110 (D. Colo. Apr. 13, 2021).............................................................10

*Pritchard v. APYX Med. Corp.*,
2020 WL 6937821 (M.D. Fla. Nov. 18, 2020) ........................................................20

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................................13

*Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*,
2023 WL 7180604 (N.D. Ala. Aug. 25, 2023) .............................................. *passim*

*Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*,
600 F. Supp. 3d 1189 (N.D. Ala. 2021)................................................................2, 11

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 10518902 (S.D. Fla. Oct. 17, 2016).............................................. *passim*

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4) ..............................................................................................................14

**Page**

Federal Rules of Civil Procedure
  Rule 23 .................................................................................................................20, 21
  Rule 23(a)..................................................................................................................20
  Rule 23(b)(3)............................................................................................................20
  Rule 23(e)...................................................................................................................4
  Rule 23(e)(2)(B).........................................................................................................8
  Rule 23(e)(2)(C).........................................................................................................9
  Rule 23(e)(2)(C)(ii)..................................................................................................14
  Rule 23(e)(2) .........................................................................................................1, 5
  Rule 23(e)(3)...............................................................................................................4

## SECONDARY AUTHORITIES

*Securities Class Action Settlements, 2022 Review and Analysis*
  (Cornerstone Research 2023)...................................................................2, 10, 16, 17

4874-6551-0549.v1

Lead Plaintiffs Central Laborers' Pension Fund ("Central Laborers") and Plymouth County Retirement Association ("Plymouth") (together, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion[1] for final approval of the proposed Settlement, and approval of the proposed Plan of Allocation.[2]

## I.    INTRODUCTION

As set forth herein and in the Joint Declaration, the $28 million all-cash Settlement represents an excellent result for the Settlement Class in a case that was highly complex, uncertain, and risky. The Court granted preliminary approval of the Settlement on August 25, 2023, recognizing that "***the Settlement falls within the range of possible approval and is fair, reasonable, adequate, and in the best interests of the Settlement Class***." *Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*, 2023 WL 7180604, at *7 (N.D. Ala. Aug. 25, 2023) ("Preliminary Approval Order" or "*ProAssurance II*"). Lead Plaintiffs now seek the Court's final approval of the Settlement, which they submit is strongly warranted, satisfying the factors set forth in Rule 23(e)(2) of the Federal Rules of Civil Procedure and in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Indeed, the $28 million Settlement is significant, as it represents the second largest federal securities class action settlement in this District in the last 10 years, and approximately 16%-31% of

---

[1]    Lead Counsel have conferred with Defendants' Counsel concerning this motion. While Defendants do not adopt or agree with certain of the arguments or characterizations set forth herein, they do not oppose the relief sought. Pursuant to the Stipulation, Defendants take no position with respect to the proposed Plan of Allocation or Lead Plaintiffs' Counsel's application for an award of attorneys' fees and expenses. *See* Stipulation at ¶¶5.2, 6.4.

[2]    Unless otherwise indicated, all capitalized terms have the same meanings as in the Stipulation of Settlement dated June 22, 2023 (ECF No. 157) (the "Stipulation" or "Settlement Agreement"), or the accompanying Joint Declaration of Nathan R. Lindell and Lester R. Hooker in Support of (I) Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (II) Motion for an Award of Attorneys' Fees and Expenses ("Joint Declaration" or "Joint Decl."). "¶_" references are to the Joint Declaration. Unless otherwise indicated, all emphasis has been added, and all internal citations and quotation marks have been omitted.

4874-6551-0549.v1

the estimated recoverable damages, far exceeding the 4.9% median recovery in Eleventh Circuit settlements.[3]

The Settlement is also impressive considering the significant risks that Plaintiffs faced in establishing Defendants' liability, given that Defendants continued to vigorously dispute several key issues. *See* ¶¶70-79. The Court already significantly narrowed Plaintiffs' case by dismissing the "bulk" of Plaintiffs' alleged misstatements and the §10(b) claims against three of the five Individual Defendants. *Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*, 600 F. Supp. 3d 1189, 1224 (N.D. Ala. 2021) ("*ProAssurance I*"). Additionally, Plaintiffs' class certification motion, which remained pending at the time the Settling Parties agreed in principle to the Settlement, faced myriad obstacles, including arguments by Defendants to shorten the proposed Class Period and thereby significantly reduce damages. ¶¶7, 21. Furthermore, Defendants would have continued to maintain that the alleged misstatements were true when made, that that the alleged misstatements were non-actionable puffery or opinion statements, and that Plaintiffs could not disentangle alleged losses arising from the upheld statements from those that were dismissed, or from information completely unrelated to the alleged fraud. ¶¶70-72, 76-78. Had the Court or a jury accepted any of these arguments, either in whole or in part, damages in the case would have been dramatically reduced or potentially eliminated. The Settlement avoids these risks, including the possibility of no recovery at all, while securing an outstanding $28 million recovery for the Settlement Class.

As detailed in the Joint Declaration, Lead Plaintiffs vigorously prosecuted this Litigation for over three years, and without their efforts, the Settlement would not have been possible. Lead Plaintiffs and Lead Counsel's extensive efforts include: (i) a thorough investigation, which included locating and interviewing numerous confidential witnesses and a *post hoc* forensic analysis; (ii)

---

[3]     *See Securities Class Action Settlements, 2022 Review and Analysis* at 19 (Cornerstone Research 2023) ("Cornerstone Report"), available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

- 2 -

4874-6551-0549.v1

filing a highly detailed amended complaint; (iii) consulting with several industry experts; (iv) defeating in part Defendants' motion to dismiss; (v) fully briefing class certification; (vi) engaging in comprehensive fact discovery, including obtaining and analyzing over 2.8 million pages of documents produced by Defendants and third parties; (vii) litigating multiple discovery disputes before the Court; (viii) conducting and/or defending 19 expert and fact witness depositions; (ix) submitting detailed mediation statements setting forth Plaintiffs' positions on hotly disputed issues in the case; and (x) engaging in a formal, full-day in-person mediation session before well-respected mediator David M. Murphy, as well as substantial settlement negotiations in the months following the mediation session, all of which involved extensive, arm's-length negotiations. ¶¶70-72, 76-78; *see also ProAssurance II*, 2023 WL 7180604, at *1-*2. Accordingly, by the time the Settling Parties agreed to the Settlement, Lead Plaintiffs had gained an in-depth understanding of the strengths and weaknesses of the Action.

Further confirming the fairness of the proposed Settlement is the fact that, to date, not a single objection to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fee and expense request has been submitted, and no exclusion requests have been received. Moreover, Lead Plaintiffs – sophisticated institutional investors which have actively overseen and participated in the Action from its inception – wholly endorse the Settlement in all respects. Thus, the Settlement Class's overwhelming endorsement of the Settlement weighs heavily in favor of granting final approval.

For the reasons set forth herein, in the Fee Motion, and the Joint Declaration, the proposed Settlement and proposed Plan of Allocation warrant the Court's final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiffs respectfully refer the Court to the accompanying Joint Declaration for a detailed discussion of the factual background and the procedural history of the

4874-6551-0549.v1

Litigation, the extensive efforts undertaken by Lead Plaintiffs and Lead Counsel during the Litigation, and the factors bearing on the approval of the Settlement and Plan of Allocation. *See generally* Joint Declaration.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Standards for Final Approval of Class Action Settlements

The Eleventh Circuit and courts nationwide recognize that there is a "strong judicial policy favoring settlement." *Bennett*, 737 F.2d at 986; *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("[p]ublic policy strongly favors the pretrial settlement of class action lawsuits"). "Complex securities litigation 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *AAL High Yield Bond Fund v. Ruttenberg*, 2005 WL 5926936, at *5 (N.D. Ala. June 2, 2005). Thus, "[i]t is well established that settlements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207, at *8 (N.D. Ala. Aug. 1, 2019). Indeed, the Court may "'rely upon the judgment of experienced counsel for the parties,' and 'absent fraud, collusion, or the like,' is 'hesitant to substitute its own judgment for that of counsel.'" *Id.*

Federal Rule of Civil Procedure 23(e) requires judicial approval of class settlements. Under that rule, courts consider whether a proposed settlement is "fair, reasonable, and adequate," by specifically examining whether:

> "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

- 4 -

4874-6551-0549.v1

*Id.* at \*8-\*9 (quoting Fed. R. Civ. P. 23(e)(2)).

In addition to Rule 23(e)(2), courts in the Eleventh Circuit also consider the following factors when assessing the fairness of a settlement:

> "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved."

*Id.* at \*8 (quoting *Bennett*, 737 F.2d at 986).

This Court has already made a preliminary finding that "***among other things, the complex legal and factual posture of this matter, the significant discovery conducted by the parties, the fact that the Settlement is the result of arms' length negotiations presided over by the neutral mediator, and the benefits that the settlement makes available to Settlement Class Members***" support finding that the Settlement is "***fair, reasonable, [and] adequate***." *ProAssurance II*, 2023 WL 7180604, at \*7. Courts have noted that a plaintiff's satisfaction of these factors is supported where, as here, little has changed between preliminary and final approval. *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2023 WL 2284684, at \*9 (S.D. Fla. Feb. 28, 2023) ("[T]his Court already found at the preliminary approval stage" that the settlement satisfied the standards of Rule 23(e)(2), which the "record continues to support."). As set forth below, the Settlement readily satisfies each of these factors.

### B.    The Proposed Settlement Satisfies Both the Rule 23(e)(2) and the Eleventh Circuit Requirements

#### 1.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

In evaluating the adequacy of representation, courts in this Circuit consider: (1) whether class representatives have interests antagonistic to the interests of other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation.

4874-6551-0549.v1

*Johnson & Johnson*, 2023 WL 2284684, at \*9.  Lead Plaintiffs and Lead Counsel readily satisfy both of these criteria.

First, as this Court already held, Lead Plaintiffs "***will fairly and adequately represent the interests of the Settlement Class Members***."  *See ProAssurance II*, 2023 WL 7180604, at \*6. Indeed, "'Plaintiff[s] and the Settlement Class seek redress of the same alleged wrong.'"  *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at \*5 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).  Thus, Plaintiffs' and the Settlement Class's interests in establishing Defendants' liability and maximizing recovery are aligned.

Second, Plaintiffs' chosen counsel are highly experienced in securities litigation, and have a long and successful track record of representing investors in such cases.  *See* RGRD Decl., Ex. F and Saxena Decl., Ex. E (Robbins Geller and Saxena White firm resumes, respectively), attached as Exhibits E and F, respectively, to the Joint Declaration.  As set forth in further detail in the Joint Declaration, Lead Counsel vigorously prosecuted the Settlement Class's claims and expended significant time and effort throughout the litigation.  Among other things, Lead Counsel conducted an extensive investigation in which they interviewed numerous former ProAssurance employees about the Class Period events and conducted a thorough forensic analysis of ProAssurance's state regulatory filings; drafted a detailed, 121-page Consolidated Complaint; defeated, in part, Defendants' motion to dismiss; reviewed and analyzed the over 169,800 documents (encompassing over 1,643,000 pages) produced by Defendants from over 30 custodians; subpoenaed 20 third parties, who collectively produced approximately 1.2 million pages of documents; responded to Defendants' 29 document requests and 16 interrogatories; consulted extensively with various experts; briefed class certification in full, including multiple supplemental submissions; and conducted 19 expert and fact witness depositions.  ¶¶4, 14-53; *see also ProAssurance II*, 2023 WL

4874-6551-0549.v1

7180604, at *2 (Court noting that "[d]iscovery was **_robust_**" and the "almost three years of **_substantial litigation_**").

Moreover, the outstanding recovery obtained in this case – in the face of numerous legal and factual obstacles and formidable opposition – attests to the skill and vigor with which Lead Plaintiffs and Lead Counsel prosecuted this Action. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) ("'It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.'"). Therefore, the Settlement Class was adequately represented.

Accordingly, the Court should give considerable weight to the judgment of Lead Plaintiffs and Lead Counsel that the Settlement is in the best interests of the Settlement Class. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) ("In evaluating a proposed class action settlement, the Court 'will not substitute its business judgment for that of the parties . . . .'"). Lead Counsel's substantial experience in cases of this nature gives further weight to their judgment that the Settlement is fair and reasonable. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1251 (S.D. Fla. 2016) ("'[i]n determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel'"). Moreover, the fact that Lead Plaintiffs are sophisticated institutional investors, of the type favored by Congress when it passed the PSLRA, lends credibility to their recommendation that the Settlement be approved. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) ("[T]he Lead Plaintiffs in the case are sophisticated institutional investors managing billions of dollars in pensioners' investments and experienced in the world of securities laws. The active participation by the Lead Plaintiffs in the negotiation process further weighs in favor of approving the Settlement.").

4874-6551-0549.v1

### 2.    The Settlement Is the Product of Arm's-Length Negotiations

In weighing approval of a class action settlement, a court must also ensure that the settlement is not the product of collusion and "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see Bennett*, 737 F.2d at 986. The "presence of [a] 'highly experienced mediator' point[s] 'to absence of collusion.'" *Johnson & Johnson*, 2023 WL 2284684, at *9.

Here, as the Court preliminarily found, "***the Settlement Agreement is a result of substantial, informed, non-collusive negotiations conducted with the assistance of mediator David Murphy***." *ProAssurance II*, 2023 WL 7180604, at *7; *see also* ¶¶55-58. Indeed, the mediation process included the exchange of detailed mediation statements and a full-day mediation session under the direction of Mr. Murphy of Phillips ADR, a highly qualified and experienced third-party neutral. *See* Declaration of David M. Murphy ("Murphy Decl."), Ex. C to Joint Decl., at ¶¶6-7; *In re S. Co. S'holder Derivative Litig.*, 2022 WL 4545614, at *10 (N.D. Ga. June 9, 2022) ("The negotiations were facilitated and supervised by [Murphy], who was familiar with the complexity of the issues, the risks and challenges confronted by [plaintiffs], as well as the magnitude and quality of [plaintiffs' counsel's] efforts in securing the Settlement benefit."). No agreement was reached at the initial mediation session, and the parties engaged in several more months of discussions and negotiations through the mediator before reaching the Settlement. ¶8.

In further support of the Settlement, Mr. Murphy has provided a declaration attesting that "the Settlement was the result of a highly adversarial process, and that the Settling Parties, advised by informed and experienced counsel, negotiated the Settlement at arm's length, carefully, deliberately, and in good faith to advance the best interests of their clients." *See* Murphy Decl., ¶9. The advanced posture of the case and the deliberative nature of the negotiations evidence a fair process involving "good faith, arm['s-]length bargaining." *Ocwen*, 2019 WL 9171207, at *10. All of these facts strongly support the conclusion that the Settlement is fair. *In re S. Co.*, 2022 WL

- 8 -

4545614, at *10 ("[Murphy's] role in the negotiations provides further assurances that the process was fair and the amount reasonable.").

### 3. The Relief Provided to the Settlement Class Is Adequate

#### a. The Substantial Benefits for the Settlement Class, Weighed Against the Costs, Risks, and Delay of Further Litigation Support Final Approval

In determining whether a settlement is "fair, reasonable, and adequate," the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C);[4] *see also Deas v. Russell Stover Candies, Inc.*, 2005 WL 8158201, at *9 (N.D. Ala. Dec. 22, 2005) (analyzing "whether the possible rewards of continuing the litigation – with its attendant risks and costs – are outweighed by the benefits of the settlement"); *Checking Account Overdraft*, 830 F. Supp. 2d at 1345 (court need not determine if the settlement "'is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial'").

As an initial matter, courts have recognized that the complexity of securities class actions renders this type of litigation "'notably difficult and notoriously uncertain.'" *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011); *see also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) ("'Securities class actions are generally complex[,] expensive to litigate.' . . . notoriously complex, and this Action was no different."). Accordingly, the "policy favoring settlement is especially relevant in class actions . . .

---

[4]    Rule 23(e)(2)(C) encompasses the first four of the six factors of the traditional *Bennett* analysis. *Bennett*, 737 F.2d at 986; *see also Ocwen*, 2019 WL 9171207, at *10 ("These [Rule 23(e)(2)(C)] factors are analogous to several of the *Bennett* factors, which require courts to consider the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost, and duration."). These *Bennett* factors are considered in this section and/or in further detail below.

4874-6551-0549.v1

where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Johnson & Johnson*, 2023 WL 2284684, at *5.

Here, Plaintiffs and Lead Counsel have achieved an outstanding benefit for the Settlement Class, whether measured in absolute terms or as a percentage of estimated recoverable damages. The $28 million Settlement represents the second largest federal securities class action settlement in this District within the last 10 years and is more than double the inflation-adjusted median of $11.9 million in securities class action settlements in the Eleventh Circuit from 2013 through 2022,[5] factors which weigh strongly in favor of approval. *See, e.g.*, *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *4 (D. Colo. Apr. 13, 2021) (the "recovery achieved is the second largest all-cash securities class action recovery in the history of this [d]istrict" favored final approval).

This result is also remarkable when measured as a percentage of the Settlement Class's estimated recoverable damages, as calculated by Lead Plaintiffs' damages expert. Indeed, the $28 million Settlement represents approximately 16%-31% of the estimated recoverable damages, assuming that Plaintiffs had achieved certification of the full Class Period and prevailed on all elements of their claims at summary judgment and trial – which far exceeds the 5% median recovery in settlements of 10b-5 litigation between 2013 and 2021.[6] Settlements which recover far lower percentages of damages are routinely approved and lauded by courts. *See*, *e.g.*, *Thorpe*, 2016 WL 10518902, at *3 (settlement worth 5.5% of maximum damages "an excellent recovery"); *Ocwen*, 2019 WL 9171207, at *11 ("[s]ince 1995, class action settlements have been approved despite having 'recovered between 5.5% and 6.2%' of the class members' potential recovery"). Thus, the Settlement is an exceptional recovery for the Settlement Class.

---

[5] *See* Cornerstone Report at 19.

[6] *See also* Cornerstone Report at 6.

- 10 -

Moreover, the Settlement provides immediate and substantial benefits to thousands of Settlement Class Members. "Absent settlement, there exists real potential for years of further litigation and the possibility that [Defendants] could prevail on the merits or defeat contested class certification." *Id.* at *11; *Guevoura Fund*, 2019 WL 6889901, at *7 (further litigation would involve "complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing on motions for summary judgment, motions to strike experts and other motions in limine likely to be made" followed by "inevitable post-trial motions and appellate proceedings").

Here, although Plaintiffs prevailed in part at the pleading stage, the Court partially granted Defendants' motion to dismiss, dismissing "the bulk of the plaintiffs' §10(b) claims predicated on ProAssurance's loss reserves and TeamHealth's nonrenewal and tail coverage," and finding that "[a]t best, most of these allegations amount to claims that ProAssurance and its executives could have done a better job at estimating losses." *See ProAssurance I*, 600 F. Supp. 3d at 1224. The Court also dismissed the §10(b) claims against three of the five Individual Defendants, signifying a serious risk of dismissal of additional claims (or defendants) at summary judgment. *See* ECF Nos. 61, 62.

In opposing class certification, Defendants raised arguments that presented a risk that the class would either not be certified, or the length of the Class Period would be shortened, resulting in significantly reduced damages. Had Plaintiffs failed to obtain class certification, or had the Court certified a shorter Class Period, any potential benefit to the Settlement Class would have been substantially reduced or eliminated altogether. These risks support approval of the Settlement in this case. *See, e.g., Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) ("'Courts generally acknowledge that a [pending] contested motion to certify a class'" supports settlement because of a "'risk that class certification might be denied.'").

- 11 -

Furthermore, even if Plaintiffs initially prevailed at the class certification stage, Defendants would likely have moved for leave to file an interlocutory appeal under Rule 23(f), posing the risk of reversal and delay.  And even if Plaintiffs beat back that challenge, they still have to prove their claims, and would need to rely extensively on adverse witnesses affiliated with the Company and expert analysis of key issues.  Each expert's testimony would be critical to demonstrating Defendants' liability and damages.  Accordingly, the conclusions of each expert would be hotly contested at trial.  Additionally, if the Court determined that even one of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become more difficult (if not impossible) to prove. *See Genworth*, 210 F. Supp. 3d at 841-42 ("[T]he plaintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony. . . .  The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this . . . settlement.").

Moreover, if the Litigation continued, there would remain significant hurdles to proceeding to trial and proving liability with respect to events that occurred as far back as seven years ago. Defendants contended that the sustained statements were not false, maintained that an unfavorable business decision provides no basis for a securities fraud claim, and asserted that no amount of discovery would help Lead Plaintiffs prove their claims. *Id.* at 841 ("The plaintiffs would . . . need to prove that the statements made were in fact false, as opposed to mere projections not subject to liability. . . .  Even with a strong case, the plaintiffs nonetheless face a large risk before a jury."). "Even more difficult, the plaintiffs would need to prove that these statements were made with scienter, and were not simple good faith mistakes or the result of negligence." *Id.*; *see Lea*, 2021 WL 5578665, at *9 ("'The element of scienter is often the most difficult and controversial aspect of a securities fraud claim.'").  Defendants would have continued to argue, among other things, that the remaining Individual Defendants lacked any specific financial incentive to commit fraud,

- 12 -

Defendants revealed negative news to the market as soon as they became aware of it, and ProAssurance's third-party actuarial consultant believed the reserves estimates to be reasonable at the time they were made. *See Genworth*, 210 F. Supp. 3d at 844 ("For the reasons stated above concerning the complexity of securities fraud cases and the need to prove scienter on the part of the defendants, the risk of non-recovery at trial is very real.").

While Plaintiffs believe they had credible counterarguments, the fact remains that the Court at class certification or summary judgment, or the jury at trial, could have lent such arguments substantial weight, thereby significantly reducing or eliminating recoverable damages and undermining the viability of the entire Action. *See Thorpe*, 2016 WL 10518902, at *9 (Plaintiff "would also have had to successfully maintain class certification through trial, and prove damages, requiring additional complicated expert testimony[, and such] . . . battles of the experts are notoriously difficult to predict.").

Finally, even after a successful trial, there was no guarantee that Plaintiffs would have obtained a judgment greater than or even equivalent to the $28 million Settlement, and, indeed, there was a very significant risk that years of continued litigation might yield a smaller recovery – or no recovery at all – after inevitable appeals.[7] At "'[e]ach step of the way, expenses would continue to accumulate, further decreasing the funds available to Class Members'" if the litigation was to continue. *Guevoura Fund*, 2019 WL 6889901, at *7. These risks strongly support approval of the Settlement.

---

[7]  *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

4874-6551-0549.v1

**b.    The Proposed Method for Distributing Relief to the Settlement Class Is Effective**

Under Rule 23(e)(2)(C)(ii), courts consider "the effectiveness of [the] proposed method of distributing relief to the class."  Here, as demonstrated below in §IV., the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants in this case are well-established, effective methods.  Gilardi & Co. LLC ("Gilardi"), the Court-approved Claims Administrator, will process Claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any deficiencies in their Claims or request the Court to review a denial of their Claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Claims processing like the method proposed here is standard in securities class action settlements and has been long found to be effective.  *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019); *Health Ins. Innovations*, 2021 WL 1341881, at *2.

**c.    Lead Counsel's Fee Request Is Fair and Reasonable**

The relief provided for the Settlement Class in the Settlement is also adequate when the terms of the proposed award of attorneys' fees are taken into account.  As discussed in the accompanying Fee Motion, the requested attorneys' fees of 33% of the Settlement Fund are reasonable in light of the efforts of Lead Counsel and the risks in the litigation.[8]  *See, e.g.*, *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (awarding one-third fees in $100 million class action as it is "consistent with what courts routinely award in class actions"); *In re Flowers Foods. Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (awarding one-third fees of $21 million securities class action settlement); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL

---

[8]    As detailed in the Fee Motion, in addition to the fee award, Lead Counsel is seeking $1,240,844.77 in expenses, plus interest on both amounts.  Lead Plaintiffs also request $18,041.30 in the aggregate for reimbursement of their time and expenses directly related to their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4).

4874-6551-0549.v1

7230505, at \*1 (N.D. Ala. May 3, 2016) (awarding 33% of $25 million securities class action settlement).

### d. There Are No "Side Agreements" Other than the Opt-Out Agreement

The Settling Parties have entered into a confidential agreement establishing certain conditions under which ProAssurance may terminate the Settlement if an opt out threshold is met. *See* Stipulation, ¶7.3. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See Health Ins. Innovations*, 2021 WL 1341881, at \*7 n.6 (approving similar agreement and noting that "'parties attempt to keep the precise level at which the exit is authorized private so as not to encourage opt outs'").

### 4. All Settlement Class Members Are Treated Equitably

As set forth in the Stipulation (¶¶5.1-5.16) and *infra*, at §IV., the Plan of Allocation – which was developed in consultation with Lead Plaintiffs' damages expert – treats all Settlement Class Members (including Lead Plaintiffs) equitably. Under the Plan of Allocation, the Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based upon their recognized claim compared to the total recognized claims of all Authorized Claimants. *See* Notice, ECF No. 157-2, Ex. A-1 at ¶¶23.1-23.19; *Christine Asia Co.*, 2019 WL 5257534, at \*15 (finding similar plan of allocation to treat all class members equitably).

### 5. The Likelihood of Success at Trial and Complexity, Expense, and Duration of the Litigation Support Final Approval of the Settlement

The "first and most important *Bennett* factor is 'the likelihood of success at trial.'" *Thorpe*, 2016 WL 10518902, at \*2-\*3. This factor "is evaluated in the context of the relief proposed by the settlement." *Id*. at \*3. The fourth *Bennett* factor – the complexity, expense and duration of the litigation – "weighs in favor of settlement approval where the litigation, including the appellate

process, involves numerous class members and significant time and expense." *Morgan*, 301 F. Supp. 3d at 1248.  Both these factors favor final settlement approval.

As set forth above in §III.B.3.a., the many risks Plaintiffs would face before, during, and after trial weigh in favor of final approval of the Settlement.  "'The claims and defenses are complex; litigating them has been difficult and time consuming.'" *Morgan*, 301 F. Supp. 3d at 1248. Defendants would have continued to present formidable defenses at class certification, summary judgment, and trial.  There was a danger that Plaintiffs would not have prevailed against Defendants on their claims, in which case the Settlement Class would have received nothing.  Therefore, Lead Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Settlement Class.

### 6. The Settlement Amount Is Reasonable Considering the Range of Possible Recoveries

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Deas*, 2005 WL 8158201, at *11.

As set forth above in §III.B.3.a., the $28 million cash Settlement is well within the range of reasonableness under the circumstances to warrant final approval of the Settlement.  Indeed, the Settlement Amount represents approximately 16%-31% of the estimated recoverable damages, assuming that Plaintiffs had achieved certification of the full Class Period and prevailed on all elements of their claims at summary judgment and trial, a result which far exceeds the 5% median recovery in settlements of similar litigation between 2013 and 2021.[9]  In addition, the Settlement Amount is more than 2 times the median recovery of $11.9 million in Eleventh Circuit securities

---

[9]    *See* Cornerstone Report at 6.

4874-6551-0549.v1

class action settlements, further illustrating the outstanding result obtained for the Settlement Class.[10]  *See Thorpe*, 2016 WL 10518902, at *3.

### 7. The Stage of Proceedings at Which Settlement Was Achieved Strongly Supports Final Approval

In assessing the stage of the proceedings at which a settlement is achieved, the "relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Deas*, 2005 WL 8158201, at *12; *see also Health Ins. Innovations*, 2021 WL 1341881, at *9 (purpose of this factor is to ensure that settlement was "'not so early that counsel lack[] sufficient information to make an informed decision'").

Here, as this Court acknowledged, the Settlement was reached after nearly three years of "***substantial litigation***" and "***[d]iscovery was robust***." *ProAssurance II*, 2023 WL 7180604, at *2. Lead Plaintiffs and Lead Counsel had already "conducted an extensive factual investigation of Lead Plaintiff[s'] claims, had extensive consultations with their economics, financial and damages consultants and experts, conducted discovery" and there were "discussions between the parties regarding their respective positions, theories, claims, defenses and responses to those claims and defenses throughout the litigation, including during the mediation[]." *Guevoura Fund*, 2019 WL 6889901, at *6; ¶¶4, 14-58. In sum, by the time the Settlement was reached, Lead Plaintiffs "were extremely well-positioned to evaluate the strengths and weaknesses of the Class' claims," given that they "had completed substantial briefing on the merits" and "engaged in voluminous discovery." *Morgan*, 301 F. Supp. 3d at 1249. Thus, this factor also supports final approval.

### 8. The Favorable Response to the Settlement from the Settlement Class Supports Final Approval

The "amount of opposition to the Settlement weighs heavily in favor of the Settlement being fair and reasonable" where such opposition is limited, such as where, as here, there "have been no

---

[10]  *See* Cornerstone Report at 19.

4874-6551-0549.v1

objections or requests for exclusion." *Health Ins. Innovations*, 2021 WL 1341881, at *9. The deadline for submitting objections and requests for exclusions is December 22, 2023. *See ProAssurance II*, 2023 WL 7180604, at *9-*10. To date, no objections to the Settlement or requests for exclusion have been received. *See* Declaration of Ross D. Murray Regarding Notice of Dissemination, Publication, and Requests for Exclusion Received to Date, ¶16 ("Murray Decl."), filed herewith as Ex. D to the Joint Decl. *See Ocwen*, 2019 WL 9171207, at *12 ("low opt-out and objection rates weigh in favor of granting final approval to the settlement" because this "indicate[es] support for the proposed . . . settlement."). Plaintiffs will file reply papers on January 10, 2024, after the exclusion and objection deadline has passed, to further address this factor.

For the foregoing reasons, the Court should find that the proposed Settlement meets all of the relevant approval factors, and is in all respects fair, reasonable, and adequate.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In approving the Settlement, the Court must also assess whether the Plan of Allocation is "fair and reasonable." *Thorpe*, 2016 WL 10518902, at *1. Under this analysis, the Court's "'"principal obligation" . . . "is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.""' *In re Auto. Parts Antitrust Litig.*, 2019 WL 7877812, at *1 (E.D. Mich. Dec. 20, 2019). The Plan of Allocation "need not be perfect," and "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Christine Asia*, 2019 WL 5257534, at *15.

Here, the proposed Plan of Allocation, which has been preliminarily approved by the Court (*ProAssurance II*, 2023 WL 7180604, at *9), fairly and reasonably distributes the Net Settlement Fund on a *pro rata* basis among Authorized Claimants based on their respective Recognized Losses. In developing the Plan of Allocation, Lead Plaintiffs' damages expert calculated the estimated alleged amount of artificial inflation in the per share closing price of ProAssurance common stock

throughout the Class Period, which allegedly was proximately caused by Defendants' false and misleading statements and omissions. Notice, ECF No. 157-2, Ex. A-1, ¶¶23.1-23.19.

In calculating the estimated alleged artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiffs' damages expert considered price changes in ProAssurance common stock in reaction to certain public disclosures alleged to have corrected the alleged misrepresentations and omissions, adjusting for price changes that were attributable to market or industry forces and for non-fraud related Company-specific information. Similar plans of allocation are commonly used and approved in class actions and represent a widely recognized means of fairly distributing settlement funds to class members. *See*, *e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at *2, *10 (similar plan of allocation developed by damages expert found fair and reasonable because "Settlement Class Members' recoveries are based upon their relative losses and Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund, calculated in the same manner").

Moreover, to date, after mailing or emailing a total of 22,535 Postcard Notices, no Settlement Class Member has objected to the Plan of Allocation. This fact supports approval.

## V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS

The notice program complied in all respects with the requirements set forth in the Stipulation and the Preliminary Approval Order. Murray Decl., ¶¶5-12 (attesting to the timely completion of the notice program); *see ProAssurance II*, 2023 WL 7180604, at *7-*9. The Court-appointed Claims Administrator has emailed or mailed a total of 22,535 Postcard Notices and three Claim Packages upon request, published the Summary Notice, and maintains a website dedicated to the Action, which provides all information and documentation pertinent to the Settlement, including the Notice and the Proof of Claim and Release form. Murray Decl., ¶¶11-14.

4874-6551-0549.v1

The Court-approved notice program contained all information required by "Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, due process, and any other applicable laws and rules, constitute[d] the best notice practicable under the circumstances, and . . . constitute[d] due and sufficient notice to all Persons entitled thereto." *ProAssurance II*, 2023 WL 7180604, at *9. Indeed, notice here "constitute[d] the best practicable notice to the Settlement Class," "apprise[d] Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement," and was "written in plain language, use[d] simple terminology, and [wa]s designed to be readily understandable by Settlement Class Members." *Id.* at *7; *see also Pritchard v. APYX Med. Corp.*, 2020 WL 6937821, at *1 (M.D. Fla. Nov. 18, 2020) (approving similar notice program).

## VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court's Preliminary Approval Order preliminarily certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. *See ProAssurance II*, 2023 WL 7180604, at *6 ("The court PRELIMINARILY FINDS that the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) have been satisfied . . . [and] the prerequisites for class certification under Rule 23(b)(3) have been satisfied."). Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order, Lead Plaintiffs' memorandum of law in support of unopposed motion for preliminary approval of class action settlement (ECF No. 156), and documents filed in support of Lead Plaintiffs' motion for class certification (ECF Nos. 78-80, 102-103, 118-120, 134-136), Lead Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

4874-6551-0549.v1

## VII.    CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully submit that the proposed Settlement and Plan of Allocation readily meet all of the requirements under Rule 23, the PSLRA, and Eleventh Circuit precedent.  Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.[11]

DATED:  December 8, 2023                      Respectfully submitted,

GUIN, STOKES & EVANS, LLC
DAVID J. GUIN
TAMMY M. STOKES
DAWN STITH EVANS


s/ DAVID J. GUIN
DAVID J. GUIN

300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)
davidg@gseattorneys.com
tammys@gseattorneys.com
devans@gseattorneys.com

ROGER BEDFORD, ATTORNEY AT LAW, LLC
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)

Local Counsel for Lead Plaintiffs

---

[11]    Proposed orders granting final approval of the proposed Settlement and Plan of Allocation will be submitted with Lead Plaintiffs' reply brief in further support of this motion, which will be filed on January 10, 2024.

- 21 -

4874-6551-0549.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
X. JAY ALVAREZ
(admitted *pro hac vice*)
NATHAN R. LINDELL
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jaya@rgrdlaw.com
nlindell@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
MASON G. ROTH
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
bheikkinen@rgrdlaw.com
mroth@rgrdlaw.com

SAXENA WHITE P.A.
STEVEN B. SINGER
(admitted *pro hac vice*)
SARA DILEO (admitted *pro hac vice*)
KYLA GRANT (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
sdileo@saxenawhite.com
kgrant@saxenawhite.com

- 22 -

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
(admitted *pro hac vice*)
LESTER R. HOOKER
(admitted *pro hac vice*)
JONATHAN LAMET
(admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
jwhite@saxenawhite.com
lhooker@saxenawhite.com
jlamet@saxenawhite.com

Lead Counsel for Lead Plaintiffs

CAVANAGH & O'HARA
JOHN T. LONG
(admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

Additional Counsel for Lead Plaintiffs

- 23 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ DAVID J. GUIN
DAVID J. GUIN

300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)

Email:  davidg@gseattorneys.com

4874-6551-0549.v1

# Mailing Information for a Case 2:20-cv-00856-RDP Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  jaya@rgrdlaw.com

- **Walter W Bates**
  Bbates@starneslaw.com

- **Roger H Bedford , Jr**
  rogerbedfordattorneyatlawllc@gmail.com

- **Sara M. DiLeo**
  sdileo@saxenawhite.com

- **James Bringhurst Eubank**
  James.Eubank@beasleyallen.com

- **Dawn Stith Evans**
  devans@gseattorneys.com

- **Jay M Ezelle**
  JEzelle@starneslaw.com

- **Janet A Gochman**
  jgochman@stblaw.com

- **Kyla Grant**
  Kgrant@saxenawhite.com

- **Cole Robinson Gresham**
  cgresham@starneslaw.com

- **David J Guin**
  davidg@gseattorneys.com

- **Bailie L Heikkinen**
  bheikkinen@rgrdlaw.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **Jonathan Dov Lamet**
  jlamet@saxenawhite.com

- **Michael R Lasserre**
  mrl@starneslaw.com

- **Nathan R Lindell**
  nlindell@rgrdlaw.com

- **John T Long**
  johnlong@cavanagh-ohara.com

- **Carl Jacob Lundqvist**
  jacob.lundqvist@stblaw.com

- **Craig Corey Maider**
  cmaider@saxenawhite.com

- **Wilson Daniel Miles , III**
  dee.miles@beasleyallen.com

- **Mason G Roth**
  mroth@rgrdlaw.com

- **Steven B Singer**
  ssinger@saxenawhite.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Tammy McClendon Stokes**
  tammys@gseattorneys.com

- **Joseph E. White**
  jwhite@saxenawhite.com

- **Jonathan K Youngwood**
  jyoungwood@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`