FILED
2023 Dec-08  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 19 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> PROASSURANCE CORPORATION, et al., <br><br> Defendants. | Civil Action No. 2:20-cv-00856-RDP <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................................1

II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE....................................4

    A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees from the
    Common Fund ...........................................................................................4

    B.    The Requested Attorneys' Fees Are Reasonable.......................................5

    C.    The Percentage Fee Approved by the Plaintiffs Is Entitled to a
    Presumption of Reasonableness..................................................................8

    D.    The Circumstances of the Litigation Justify the Fee Award.....................8

        1.    The Amount Involved and the Results Obtained.........................10

        2.    The Novelty and Difficulty of the Legal and Factual Issues .....11

        3.    The Skill, Experience, and Ability of the Attorneys Supports the
        Requested Fee .............................................................................13

        4.    The Time and Labor Expended by Lead Counsel Supports the
        Requested Fee .............................................................................15

        5.    The Contingent Nature of the Fee Weighs in Favor of the
        Requested Award ........................................................................16

        6.    The "Undesirability" of the Case................................................18

        7.    The Preclusion of Other Employment ........................................19

        8.    Public Policy Further Supports the Requested Fee.....................19

III.    THE REQUESTED EXPENSES ARE REASONABLE .................................................19

IV.    LEAD PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF TIME AND
    EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4) ......................................21

V.    CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...............................................................14, 19

*Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) ........................................................................................17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)....................................................................................................4

*Cabot E. Broward 2 LLC v. Cabot*,
    2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)...................................................... *passim*

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ......................................................................... *passim*

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) .................................................................................19

*City Pension Fund for Firefighters & Police Officers*
    *in City of Miami Beach v. Aracruz Celulose, S.A.*,
    2013 WL 12489095 (S.D. Fla. July 17, 2013)..............................................................6

*Columbus Drywall & Installation, Inc. v. Masco Corp.*,
    2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ...........................................................13

*Cosby v. KPMG, LLP*,
    2022 WL 4129703 (E.D. Tenn. July 12, 2022) ............................................................6

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    2017 WL 7798110 (S.D. Fla. Dec. 18, 2017)...............................................................6

*George v. Academy Mortg. Corp. (UT)*,
    369 F. Supp. 3d 1356 (N.D. Ga. 2019).....................................................................13

*George v. Duke Energy Ret. Cash Balance Plan*,
    2011 WL 13218031 (D.S.C. May 16, 2011)...............................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .....................................................................................17

*Grae v. Corr. Corp. of Am.*,
    2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ............................................................6

**Page**

*Hanley v. Tampa Bay Sports & Ent. LLC*,
    2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)....................5, 20 BA_Cite_PMFHGQ_000173

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................................................10

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
    2019 WL 2720818 (N.D. Ga. June 6, 2019)................................................................7

*In re Banc of Cal. Sec. Litig.*,
    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)............................................................6

*In re BankAtlantic Bancorp, Inc.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...........................................................18

*In re Checking Account Overdraft Litig.*,
    2014 WL 12557836 (S.D. Fla. Apr. 1, 2014) .............................................................5

*In re Checking Account Overdraft Litig.*,
    2020 WL 4586398 (S.D. Fla. Aug. 10, 2020),
    *aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022)......................................... *passim*

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...............................................................14, 18

*In re Deutsche Bank AG Sec. Litig.*,
    2020 WL 3162980 (S.D.N.Y. June 11, 2020) ...........................................................6

*In re Flowers Foods, Inc. Sec. Litig.*,
    2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ........................................................4, 6

*In re HD Supply Holding, Inc. Sec. Litig.*,
    2020 WL 8572953 (N.D. Ga. July 21, 2020).............................................................21

*In re Health Ins. Innovations Sec. Litig.*,
    2021 WL 1341881 (M.D. Fla. Mar. 23, 2021),
    *report and recommendation adopted*,
    2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ................................................ *passim*

*In re Johnson & Johnson Aerosol Sunscreen Mktg.,*
    *Sales Pracs. & Prod. Liab. Litig.*,
    2023 WL 2284684 (S.D. Fla. Feb. 28, 2023) ..........................................................13

*In re NetBank, Inc. Sec. Litig.*,
    2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ................................................. *passim*

4883-0122-1012.v2

**Page**

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022)................................................................6

*In re U.S. Steel Consolidated Cases*,
No. 2:17-cv-00579, ECF No. 358 (W.D. Pa. Mar. 21, 2023)....................................21

*In re Veeco Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...............................................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
842 F. Supp. 2d 522 (S.D.N.Y. 2012).......................................................................17

*In re Walter Energy, Inc. Sec. Litig.*,
2016 WL 7230505 (N.D. Ala. May 3, 2016).........................................................4, 6

*In re Williams Sec. Litig. - WCG Subclass*,
558 F.3d 1130 (10th Cir. 2009) ................................................................................17

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) .....................................................................................9

*Knurr v Orbital ATK, Inc.*,
2019 WL 3317976 (E.D. Va. June 7, 2019) ...............................................................8

*Loc. 702, I.B. Grocery & Food Emps. Welfare Fund
v. Regions Fin. Corp.*,
2015 WL 5626414 (N.D. Ala. Sept. 14, 2015).........................................................21

*Loc. 703, I.B. Grocery & Food Emps. Welfare Fund
v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014) ..................................................................................8

*McWhorter v. Ocwen Loan Servicing LLC*,
2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) .............................................................5

*Pinto v. Princess Cruise Lines, Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) .....................................................................16

*Plymouth Cnty. Ret. Sys. v. Patterson Cos.*,
2022 WL 2093054 (D. Minn. June 10, 2022).............................................................6

*Reyes v. AT&T Mobility Servs., LLC*,
2013 WL 12219252 (S.D. Fla. June 21, 2013)...........................................................5

4883-0122-1012.v2

**Page**

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................................18

*Sawyer v. Intermex Wire Transfer, LLC*,
2020 WL 5259094 (S.D. Fla. Sept. 3, 2020) ............................................................4

*Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*,
2023 WL 7180604 (N.D. Ala. Aug. 25, 2023) ..........................................................2

*Smith v. Floor & Decor Outlets of Am., Inc.*,
2017 WL 11495273 (N.D. Ga. Jan. 10, 2017)..........................................................15

*Swift v. BancorpSouth Bank*,
2016 WL 11529613 (N.D. Fla. July 15, 2016) .........................................................16

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)................................................ *passim*

*Waters v. Cook's Pest Control, Inc.*,
2012 WL 2923542 (N.D. Ala. July 17, 2012) .....................................................7, 18

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ..................................................................................5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(4) ...................................................................................................1, 21, 22

## SECONDARY AUTHORITIES

*Securities Class Action Settlements, 2022 Review and Analysis*
(Cornerstone Research 2023).............................................................................10, 11

4883-0122-1012.v2

## I.    INTRODUCTION

After more than three years of hard-fought litigation, on a contingency basis and with no guarantee of ever being paid, Court-appointed Lead Counsel Robbins Geller Rudman & Dowd LLP and Saxena White P.A. ("Lead Counsel") secured an outstanding cash settlement of $28,000,000 (the "Settlement Amount") on behalf of the Settlement Class.[1]  Indeed, as noted in Lead Plaintiffs' accompanying Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (the "Final Approval Memorandum"), the proposed Settlement represents ***the second largest federal securities class action settlement in this District in the last 10 years***, and approximately 16%-31% of the estimated recoverable damages under Lead Plaintiffs' damages model – far exceeding the 4.9% median recovery in Eleventh Circuit settlements. The Settlement is a highly favorable result and was achieved through the skill, unabated hard work, and effective advocacy of Lead Counsel.

As compensation for their efforts, Lead Counsel respectfully apply for an award of attorneys' fees on behalf of all Lead Plaintiffs' Counsel in the amount of thirty-three percent of the Settlement Fund and $1,240,844.77 in expenses that were reasonably and necessarily incurred to prosecute the Litigation.[2]  Lead Plaintiffs also respectfully request a total of $18,041.30 in reasonable time and expenses, including lost wages, pursuant to 15 U.S.C. §78u-4(a)(4), directly related to their representation of the Settlement Class.

---

[1]    The Settlement Amount, plus all interest earned thereon is the "Settlement Fund."

[2]    Lead Counsel respectfully refer the Court to the accompanying Joint Declaration of Nathan R. Lindell and Lester R. Hooker in Support of: (I) Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (II) Motion for an Award of Attorneys' Fees and Expenses ("Joint Decl." or "Joint Declaration") for a detailed description of Plaintiffs' allegations, the procedural history, efforts of counsel, risks of proceeding with the Litigation, and the Settlement. Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation of Settlement, dated June 22, 2023 (ECF No. 157) ("Stipulation"), and in the Joint Declaration.  All citations and internal quotations are omitted, and all emphasis is added, unless otherwise noted.

As detailed in the accompanying Joint Declaration, and as the Court found in the Preliminary Approval Order, Lead Plaintiffs' Counsel have engaged in "three years of substantial litigation," committing extensive human and financial resources in order to prosecute this complex action to a successful resolution. *Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*, 2023 WL 7180604, at *2 (N.D. Ala. Aug. 25, 2023). Lead Plaintiffs' Counsel expended over 27,200 hours litigating this Action, which included: (i) conducting a thorough and wide-ranging investigation of all potential claims, including a forensic analysis of ProAssurance's regulatory insurance filings, as well as several confidential witness interviews; (ii) defeating, in part, Defendants' motion to dismiss the Complaint; (iii) fully briefing Plaintiffs' motion for class certification, including multiple supplemental submissions ordered by the Court; (iv) participating in document, deposition, and expert discovery concerning Plaintiffs' motion for class certification; (v) analyzing more than 2.8 million pages of documents produced by Defendants and third parties following several hard-fought discovery battles; (vi) responding to Defendants' document requests and interrogatories; (vii) preparing for and conducting 15 fact witness depositions; (viii) retaining and consulting with multiple experts and consultants concerning forensic accounting, market efficiency, price impact, damages, loss causation, insurance underwriting, loss reserves, and the insurance investment market; and (ix) successfully mediating a resolution of the Action with the assistance of an experienced mediator. *See generally* Joint Decl.

Not only did the breadth of this Litigation present challenges, but from the outset, Lead Counsel faced substantial risks establishing liability, defeating affirmative defenses, proving damages, and obtaining and maintaining class certification against Defendants represented by highly skilled defense counsel. Indeed, in this complex case, Lead Plaintiffs' pleading and proof burdens were manifold. As the Court is aware, Defendants at all times vehemently disputed pivotal issues of

- 2 -

4883-0122-1012.v2

falsity, scienter, loss causation, and damages, and were prepared to put forth at summary judgment and trial credible evidence in response to Plaintiffs' allegations on each of these elements. Joint Decl., ¶¶70-78. Specifically, Defendants argued that the alleged misstatements were true when they were made, were inactionable puffery or mere opinion statements, and made without scienter. *Id.*, ¶¶70-75. In addition, Defendants argued that the alleged misrepresentations did not impact the price of ProAssurance's stock during the Class Period and that the alleged disclosures of corrective information did not proximately cause the Company's stock price to drop, presenting a significant risk of partial or complete dismissal at class certification or the subsequent stages of the case. While Plaintiffs had strong counterarguments to each of these points, if the Court or a jury lent credence to Defendants' arguments, the Settlement Class's recovery would have been dramatically reduced, if not eliminated altogether. *Id.*, ¶¶70-78.

Furthermore, the result achieved here is particularly impressive given that Lead Counsel independently developed the factual allegations and legal theories underpinning this Action, and fact discovery was conducted without the benefit of any governmental charges or convictions. Lead Counsel faced the substantial risks in the Action head-on by pleading and proving a strong case and devoting the resources necessary to successfully litigate this case against prominent defense firms.

It is against this backdrop that Lead Counsel respectfully submit this request for an award of attorneys' fees equal to thirty-three percent of the Settlement Fund – an award well in line with fee awards in the Eleventh Circuit and around the country in securities and other complex class actions. *See, e.g.*, *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (awarding a fee equal to one-third of the settlement fund, "consistent with what courts routinely award in class actions"); *In re Checking Account Overdraft Litig.*, 2020 WL 4586398, at *17 (S.D. Fla. Aug. 10, 2020) (awarding fee equal to 35% of the settlement fund), *aff'd*, 2022 WL 472057

4883-0122-1012.v2

(11th Cir. Feb. 16, 2022); *Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at \*1 (S.D. Fla. Sept. 3, 2020) (awarding fee equal to one-third of the settlement fund); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at \*1 (M.D. Ga. Dec. 11, 2019) (awarding fee equal to one-third of the settlement fund); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at \*1 (N.D. Ala. May 3, 2016) (awarding fee equal to 33% of the settlement fund).

In addition, Lead Plaintiffs are two sophisticated institutional investors who have actively supervised this Action from the outset, and they both have endorsed the fee request as commensurate with Lead Counsel's efforts in the Action.[3]  Furthermore, the reaction of the Settlement Class also strongly supports the requested fee, as no objection to the fee request has been filed to date.  Thus, the overwhelming endorsement of the Settlement Class weighs heavily in support of the requested fee award.

For the reasons set forth in detail below, in the Final Approval Memorandum, and in the Joint Declaration, Lead Plaintiffs and Lead Counsel respectfully request that the Court approve this motion.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.     Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Similarly, the Eleventh Circuit holds that attorneys who create a common fund are entitled to be compensated for their efforts with a "percentage of the fund established for the benefit of the class." *Camden I*

---

[3]     *See* Declaration of Kenton W. Day ("Day Decl."), ¶¶13-16, on behalf of Central Laborers; and Declaration of Padraic P. Lydon ("Lydon Decl."), ¶¶14-17, on behalf of Plymouth County, attached as Exhibits A and B, respectively, to the Joint Decl.

4883-0122-1012.v2

*Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also Cabot*, 2018 WL 5905415, at *1 ("the calculation of attorneys' fees in such cases should be based upon a reasonable percentage of the common fund, as opposed to the 'lodestar' method").  The common fund "doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'"  *Checking Account*, 2020 WL 4586398, at *16. This is especially true where class counsel prosecuted the case on a contingent basis.  *See In re Checking Account Overdraft Litig.*, 2014 WL 12557836, at *13 (S.D. Fla. Apr. 1, 2014) ("when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment"). [4]

**B.     The Requested Attorneys' Fees Are Reasonable**

Courts within the Eleventh Circuit have noted that a fee request in complex class actions of "one-third of the settlement fund is . . . consistent with the trend in this Circuit.  *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (collecting cases approving a one-third fee request); *see also, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1300 (11th Cir. 1999) (affirming fee award of 33-1/3% of the $40 million settlement fund); *Cabot*, 2018 WL 5905415, at *4 (finding an award of one-third of settlement fund to be "consistent with what courts routinely award in class actions"); *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *McWhorter v. Ocwen Loan Servicing LLC*, 2019 WL 9171207, at *14 (N.D. Ala. Aug. 1, 2019) (awarding 33% fee, and noting

---

[4]    Courts in this Circuit have emphasized that the percentage approach is consistent with, and is intended to mirror, the private marketplace where attorneys negotiate percentage fee arrangements with their clients.  *See, e.g.*, *Cabot*, 2018 WL 5905415, at *4.

"[t]he Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee, especially in contingency fee cases, such as this one").

This is particularly true in the context of securities class action settlements, as numerous courts within this Circuit have found that "'[a]wards of 30% or more of a settlement fund are not uncommon in §10(b) common fund cases.'" *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *10 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) (awarding one-third fee award); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8 (S.D. Fla. Oct. 17, 2016) (awarding fee equal to one-third of $24 million securities class action settlement, and noting that "[i]n recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of 30% or 33% of the settlement fund. . . . This factor therefore supports an upward adjustment to the benchmark percentage to the 30-33% range."); *see also, e.g.*, *Cabot*, 2018 WL 5905415, at *2 (awarding fee equal to one-third of settlement fund); *Flowers Foods*, 2019 WL 6771749, at *1 (same); *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celulose, S.A.*, 2013 WL 12489095, at *3-*4 (S.D. Fla. July 17, 2013) (same); *Walter Energy*, 2016 WL 7230505, at *1 (awarding 33% fee); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% fee); *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *2 (N.D. Ga. Nov. 9, 2011) (awarding 34% of settlement).[5]

---

[5]    The requested fee award is also reasonable compared to nationwide securities class action recoveries. *See, e.g.*, *Grae v. Corr. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding one-third fee on $56 million recovery); *Plymouth Cnty. Ret. Sys. v. Patterson Cos.*, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding one-third fee on $63 million recovery); *Cosby v. KPMG, LLP*, 2022 WL 4129703, at *1-*2 (E.D. Tenn. July 12, 2022) (one-third fee on $35 million recovery); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (one-third fee on $31.9 million recovery); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (33% of $19.75 million recovery); *In re Deutsche Bank*

4883-0122-1012.v2

Moreover, a thirty-three percent fee award is particularly appropriate here because of the excellent result achieved, the risks and challenges of the Litigation, and Lead Counsel's substantial investment of time and resources without any compensation. *See, e.g.*, *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, 2019 WL 2720818, at *4 (N.D. Ga. June 6, 2019) ("Awards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assumed substantial risk by taking complex cases on a contingency basis"); *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *17 (N.D. Ala. July 17, 2012) (awarding 35% where "Class Counsel accepted this matter on a contingent basis" and "have incurred significant expenses in prosecuting this action over the course of [three] years and received no compensation" with "a real possibility that Class Counsel would not recover anything for the Class").

Notably, to date, no Settlement Class Member has filed an objection to the fee request. Pursuant to the Preliminary Approval Order, the Claims Administrator emailed or mailed a total of 22,535 Postcard Notices to potential Settlement Class Members and nominees. *See* Declaration of Ross D. Murray Regarding Notice of Dissemination, Publication, and Requests for Exclusion Received to Date, ¶11, attached as Ex. D to the Joint Decl. The lack of **any** objection is further evidence that the requested fee is fair. *See Health Ins. Innovations*, 2021 WL 1341881, at *12 ("absence of objections supports Counsel's [one-third] fee and expenses requests"); *NetBank*, 2011 WL 13353222, at *2 (noting that the lack of objections is "'strong evidence of the propriety and acceptability' of the fee request").[6] The requested fee is also reasonable in light of: (i) Lead

---

*AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (one-third fee of $18.5 million recovery).

[6]    Should any timely objections to the fee and expense request be filed, Lead Counsel will address them in Lead Plaintiffs' reply, which will be filed no later than January 10, 2024.

4883-0122-1012.v2

Plaintiffs' approval, discussed below in §II.C.; and (ii) the additional *Camden I* factors, discussed below in §II.D.

### C.      The Percentage Fee Approved by the Plaintiffs Is Entitled to a Presumption of Reasonableness

In enacting the PSLRA, Congress intended to encourage investors with substantial financial stakes in the litigation to serve as lead plaintiffs and play an active role in supervising and directing the litigation, including selecting and monitoring class counsel. *See Loc. 703, I.B. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014). Accordingly, fees negotiated between a properly selected PSLRA lead plaintiff and its counsel should be accorded a presumption of reasonableness. *See In re Veeco Inc. Sec. Litig.*, 2007 WL 4115808, at \*8 (S.D.N.Y. Nov. 7, 2007) ("[A] fee request which has been approved and endorsed by a properly-appointed lead plaintiff is 'presumptively reasonable,' especially where the lead plaintiff is a sophisticated institutional investor."); *Knurr v Orbital ATK, Inc.*, 2019 WL 3317976, at \*2 (E.D. Va. June 7, 2019) ("[T]he requested attorneys' fees and litigation expenses have been reviewed and approved by [plaintiffs], sophisticated institutional investors who were involved with and oversaw the Action.").

Here, the two institutional investor Lead Plaintiffs – the type of investors Congress wanted to direct class actions like this one – approve and endorse the requested fee as fair and reasonable in light of, among other things, the substantial work Lead Counsel have performed, the risks of continuing the Litigation through trial, and the excellent result obtained for the Settlement Class. *See* Day Decl., ¶¶13-16; Lydon Decl., ¶¶14-17. Accordingly, the requested fee is entitled to a presumption of reasonableness.

### D.      The Circumstances of the Litigation Justify the Fee Award

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon

the facts of each case," the Eleventh Circuit recommends that district courts consider several factors to determine what constitutes a reasonable percentage award. *See Camden I*, 946 F.2d at 772-775 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). These factors include: (i) the time and labor required; (ii) the novelty and the difficulty of the questions involved; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to the acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances;[7] (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client;[8] and (xii) awards in similar cases. *Id.* at 772 n.3. "These twelve factors are guidelines; they are not exclusive." *Checking Account*, 2020 WL 4586398, at *17.

In awarding a percentage fee award, a court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775. Additionally, "[i]n most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration." *Id.*

While each of the above factors (and any consideration unique to a particular case) may be an appropriate consideration, "[t]he factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary." *Id.* As shown herein, an analysis of

---

[7]   This factor is not applicable to the circumstances of this case.

[8]   This factor is not applicable to the circumstances of this case.

4883-0122-1012.v2

the relevant factors confirms that the thirty-three percent fee requested by Lead Counsel is reasonable and should be awarded.

### 1.    The Amount Involved and the Results Obtained

While listed as the eighth *Camden I* or *Johnson* factor, Lead Counsel discusses this factor first because, in determining an appropriate fee award, "'[the] monetary results achieved [in a particular case] ***predominate*** over all other criteria,'" making "the amount involved and results obtained . . . the 'most important factor' in determining an award of attorneys' fees." *Cabot*, 2018 WL 5905415, at *5 (alterations and emphasis original); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *Thorpe*, 2016 WL 10518902, at *10 ("'It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.'"); *NetBank*, 2011 WL 13353222, at *2 (awarding 34% fee, and noting same).

The Settlement is objectively outstanding.  It is the ***second largest*** federal securities class action settlement achieved in this District over the last decade.  The Settlement is not only large relative to other cases, but represents a significant recovery for Settlement Class Members.  Indeed, the Settlement represents approximately 16%-31% of the estimated recoverable damages, assuming that Plaintiffs had achieved certification of the full Class Period and prevailed on all elements of their claims at summary judgment and trial.  This recovery far exceeds the median recovery in securities class actions of 4.9% in the Eleventh Circuit from 2013 through 2022.[9] *Thorpe*, 2016 WL 10518902, at *3 (settlement worth 5.5% of maximum damages was "an excellent recovery" warranting one-third fee).  Moreover, the $28,000,000 Settlement here exceeds the median

---

[9]    *See Securities Class Action Settlements, 2022 Review and Analysis* at 19 (Cornerstone Research 2023) ("Cornerstone Report"), available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

- 10 -

settlement in securities fraud class actions, particularly for a case of this size.  Indeed, the median settlement in securities class actions asserting only claims under the Securities Exchange Act (like this one) between 2013 and 2022 was only $9 million.  Cornerstone Report at 7.

By any measure, the Settlement represents an exceptional result in the face of significant risks.  Thus, "the 'most important factor' in determining an award of attorneys' fees" provides compelling support for Lead Counsel's requested fee award.

### 2.    The Novelty and Difficulty of the Legal and Factual Issues

Courts have recognized that the novelty and difficulty of the claims in a case are significant factors to be considered in awarding a fee, particularly in the context of securities class actions.  *See Health Ins. Innovations*, 2021 WL 1341881, at *11 ("§10(b) litigation typically involves, as here, multi-faceted, complex legal questions, including proving falsity, scienter, materiality, causation, and damages"); *NetBank*, 2011 WL 13353222, at *3 (noting "the complexity of securities class action litigation is 'notably difficult and notoriously uncertain'").  As discussed in the Joint Declaration and the Final Approval Memorandum, the substantial risks and uncertainties inherent in PSLRA litigation, and in this case in particular, made it far from certain that any recovery – let alone $28,000,000 – would ultimately be obtained.

Nuanced legal and factual issues existed concerning whether Lead Plaintiffs could establish that the alleged misstatements and omissions were material, false or misleading, not inactionable puffery or statements of opinion, and made with the requisite intent.  Joint Decl., ¶¶70-71.  Specifically, Defendants argued that their statements concerning ProAssurance's purported commitment to "conservative" and "disciplined" underwriting and reserve-setting practices were non-actionable puffery and statements of opinion concerning the Company's business practice generally, as opposed to their practices regarding TeamHealth specifically, and that no reasonable investor would have been misled by Defendants' failure to disclose alleged issues with a single

- 11 -

account. *Id.*, ¶70. Defendants further argued that the alleged misstatements regarding observed increases in claims frequency trends in 2018 and 2019 were not actionable because internal analysis and documentary evidence purportedly confirm that claims frequency remained stable for the TeamHealth account, and the Company in general, at all relevant times during the Class Period. *Id.*, ¶71. In addition, Defendants challenged Lead Plaintiffs' scienter allegations with evidence purportedly demonstrating that Defendants did not act with an intent to deceive or with severe recklessness. *Id.*, ¶74.

Assuming Plaintiffs established falsity and scienter over Defendants' many fact-based arguments, they would also have to prove loss causation and damages – *i.e.*, that the revelation of the alleged fraud through a series of corrective disclosures during 2020 proximately caused the substantial decline in ProAssurance's stock price following those disclosures. *Id.*, ¶76. Defendants have steadfastly maintained that any losses suffered by the Settlement Class were not attributable to any alleged disclosures because those disclosures did not correct any alleged misstatements. *Id.*, ¶77. Defendants also claimed that ProAssurance's alleged corrective disclosures contained information related to certain alleged false statements that were previously dismissed, the impact of which would have to be disaggregated from the impact of the information corrective of the remaining statements at issue, thereby significantly reducing or entirely eliminating any damages. *Id.* Significantly, Defendants argued that the Class Period should end on January 22, 2020, thus eliminating the May 7-8, 2020 corrective disclosures because they were not corrective of any upheld misstatements. *Id.*

Accordingly, Plaintiffs faced all the "multi-faceted and complex legal questions endemic" to cases based on alleged violations of the federal securities law. *Thorpe*, 2016 WL 10518902, at *9. Although Plaintiffs believe they could rebut all of Defendants' arguments on liability and damages,

- 12 -

obtain class certification, survive summary judgment, and prevail at trial, the issues between the parties required, and would continue to require, a tremendous amount of legal and factual expertise and would be resolved through a battle between experts, the outcome of which is notoriously uncertain. *See, e.g.*, *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 2284684, at *10 (S.D. Fla. Feb. 28, 2023) ("[I]f litigation had continued there would have been a "battle of experts' with an uncertain outcome."); *Thorpe*, 2016 WL 10518902, at *9 (noting risk of "successfully maintain[ing] class certification through trial, and prov[ing] damages, requiring additional complicated expert testimony").

Despite these significant risks and challenges, Lead Counsel "was able to achieve substantial results in the most efficient manner possible without requiring protracted and extended litigation," thus providing "further support[] [for] the 33% fee in this case under the *Camden I* analysis." *George v. Academy Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1383 (N.D. Ga. 2019) (noting the "'swift and successful conclusion supports an upward deviation from the benchmark'"). Accordingly, this factor strongly supports the requested fee award.

### 3. The Skill, Experience, and Ability of the Attorneys Supports the Requested Fee

In evaluating an attorney fee request, courts in this Circuit consider "'the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one,'" *Thorpe*, 2016 WL 10518902, at *9, and "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall & Installation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (awarding a fee of $25 million, or one-third of the recovery, and finding "[t]he appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation").

- 13 -

Here, the skills and resources required to prosecute this complex securities fraud class action were significant.  Lead Counsel are two of the preeminent class action securities litigation firms in the country, with decades of experience in prosecuting and trying complex class actions.  *See* www.rgrdlaw.com, www.saxenawhite.com; *see also Thorpe*, 2016 WL 10518902, at *9 ("The quality of the representation by Class Counsel and the standing of Class Counsel are important factors that support the reasonableness of the requested [33%] fee.").  That experience and skill was demonstrated by the efficient and successful prosecution of this Action, culminating in the outstanding Settlement.  *See Cabot*, 2018 WL 5905415, at *3 ("Class Counsel also has a well-deserved reputation for successfully trying complex cases to conclusion and defending those outcomes on appeal, a factor which likely played into the Defendants' decision to avoid a trial in this case."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) ("Class Counsel took on a great deal of risk in bringing this case, and turned a potentially empty well into a significant judgment.  That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future.").

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1209 (S.D. Fla. 2006) ("'[I]n assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.'").  This Litigation was defended by Simpson Thacher & Bartlett LLP and Starnes Davis Florie LLP, preeminent law firms with well-deserved reputations for vigorous advocacy in the defense of complex actions.  Nevertheless, Lead Counsel presented a strong case and demonstrated their willingness and ability to prosecute the Action through trial and the inevitable appeals, resulting in a highly favorable settlement for the Settlement

4883-0122-1012.v2

Class.  *See Checking Account*, 2020 WL 4586398, at \*19 ("'Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.'").

### 4. The Time and Labor Expended by Lead Counsel Supports the Requested Fee

For more than three years, Lead Counsel dedicated an enormous amount of time and money to successfully litigate this case.  *See generally* Joint Decl., and *see* Declaration of Nathan R. Lindell Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Declaration of Lester R. Hooker Filed on Behalf of Saxena White P.A. in Support of Application for Award of Attorneys' Fees and Expenses ("Saxena White Decl."), and Declaration of David J. Guin Filed on Behalf of Guin, Stokes & Evans, LLC in Support of Application for Award of Attorneys' Fees and Expenses (collectively, "Firm Decls."), attached as Exhibits E-G, respectively, to the Joint Decl.  Indeed, Lead Plaintiffs' Counsel expended over 27,200 hours in this Litigation.  *Thorpe*, 2016 WL 10518902, at \*8 (the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported a 33.3% fee request); *see also Smith v. Floor & Decor Outlets of Am., Inc.*, 2017 WL 11495273, at \*4 (N.D. Ga. Jan. 10, 2017) (more than 3,000 hours of counsel's "time and labor" supported one-third fee award).  These efforts culminated in the $28 million recovery.

Moreover, Lead Counsel's work will not end upon final approval.  Indeed, a significant amount of time will be spent shepherding the claims process and working with Settlement Class Members and the Claims Administrator to ensure that as many Settlement Class Members as possible share in the distribution of the Net Settlement Fund.  No additional compensation will be sought for those efforts.  Courts regularly find this "additional undertaking" an "important factor in determining an award of attorneys' fees."  *Cabot*, 2018 WL 5905415, at \*2.

- 15 -

**5.    The Contingent Nature of the Fee Weighs in Favor of the Requested Award**

"The 'customary fee' in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis." *Thorpe*, 2016 WL 10518902, at *10; *see also Health Ins. Innovations*, 2021 WL 1341881, at *11 ("'Most often, this method of representation is the only means a defrauded securities investor can seek assistance from an attorney.'"). A determination of a fair fee must include an appreciation of the contingent nature of the fee and the significant risks of non-recovery. *Checking Account*, 2020 WL 4586398, at *20 (acknowledging that "Class Counsel assumed a significant risk of nonpayment or underpayment . . . [t]hat risk warrants an appropriate fee"). Courts have consistently recognized that the substantial risk to class counsel of receiving little or no recovery is a major factor in determining a fee award:

> "Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

*Swift v. BancorpSouth Bank*, 2016 WL 11529613, at *18 (N.D. Fla. July 15, 2016); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("attorneys' risk is '"perhaps the foremost" factor' in determining an appropriate fee award").

Lead Counsel prosecuted this Litigation for more than three years on a wholly contingent basis and bore all the risks of litigating the case through trial and possible appeals. Lead Counsel understood from the outset that they were embarking on a complex, expensive, and potentially lengthy litigation, which could (and did) require the investment of millions of dollars in expenses and attorney time, with no guarantee of ever being compensated for such investment. Lead Counsel

- 16 -

also understood that Defendants were well-financed and would (and, in fact, did) retain highly experienced defense firms.  In undertaking this risk, Lead Counsel ensured that sufficient resources were dedicated to the prosecution of this Action.

The risks of contingent litigation are highlighted by cases that have been lost after thousands of hours have been invested in successfully opposing motions to dismiss and pursuing discovery. *See, e.g.*, *George v. Duke Energy Ret. Cash Balance Plan*, 2011 WL 13218031, at *6 (D.S.C. May 16, 2011) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs, yet have lost the case despite their advocacy.").  For example, a change in law that occurs during the pendency of a class action can – and has – result in the dismissal of a case after the investment of significant time and resources.  As a result of these and other developments, many cases are lost after thousands of hours have been invested in successfully opposing motions to dismiss and pursuing discovery.  *See, e.g.*, *Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review, after plaintiffs' counsel incurred nearly $7 million in expenses, and dedicated over 115,000 hours); *In re Vivendi Universal, S.A. Sec. Litig.*, 842 F. Supp. 2d 522 (S.D.N.Y. 2012) (granting judgment on the pleadings following change of law related to jurisdiction); *In re Williams Sec. Litig. - WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming grant of summary judgment for energy company following change of law related to loss causation).

Even plaintiffs who survive summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of subsequent change in

- 17 -

4883-0122-1012.v2

law); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal after almost seven years of litigation on loss causation grounds and judgment entered for defendant).  Thus, there existed a very real risk here that Lead Counsel would invest substantial resources and receive nothing.

At bottom, the fee in this matter was entirely contingent and fraught with risk; there would be no fee without a successful result.  Nevertheless, Lead Counsel committed significant resources to the vigorous and successful prosecution of this Action for the benefit of the Settlement Class and were fully prepared to litigate through trial, if necessary, to recover the damages suffered by Plaintiffs and the Settlement Class.  As such, this factor further supports Lead Counsel's fee request.

### 6.    The "Undesirability" of the Case

Courts consider also the "undesirability" of a case in awarding attorney fees, recognizing that, given the "positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important" cases, "such decisions must be properly incentivized." *Checking Account*, 830 F. Supp. 2d at 1364; *see also Waters*, 2012 WL 2923542, at *18 ("'The expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery, would make this case highly undesirable for many attorneys.'").  The "undesirability" of this complex class action, and the risk of no recovery, was particularly apparent from its inception, as evidenced by the fact that only one other firm moved to be appointed lead counsel (often numerous firms move in securities class actions).  *See Thorpe*, 2016 WL 10518902, at *11 (when there was no other movant, "this factor supports an upward adjustment"); *Checking Account*, 830 F. Supp. 2d at 1364 (noting this was "'a case from which other law firms shrunk'").  This demonstrates that many experienced firms deemed the case sufficiently risky that they did not

- 18 -

believe that this Action was worth pursuing on a contingent basis.  Accordingly, this factor supports the requested fee award.

### 7.    The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case – over 27,200 hours – was time that Lead Counsel could not devote to other matters.  Moreover, Lead Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work.  Accordingly, this factor also supports the requested fee.  *See, e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at *11 ("'It is uncontroverted that the time spent on the [a]ction was time that could not be spent on other matters.  This factor too supports the requested fee.'"); *Allapattah*, 454 F. Supp. 2d at 1209 ("[t]aking on this resource-sapping, risk-based venture" "necessarily had some adverse impact on the attorney's ability to accept other work").

### 8.    Public Policy Further Supports the Requested Fee

Public policy strongly favors rewarding firms for bringing successful securities actions like this one.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *17 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("'In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.'"); *Checking Account*, 2020 WL 4586398, at *20 ("Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the request fee.").

In sum, for the reasons set forth above, the requested thirty-three percent fee is reasonable under the circumstances, and should be approved by the Court.

## III.    THE REQUESTED EXPENSES ARE REASONABLE

Lead Counsel's application includes a request for expenses, costs, and charges totaling $1,240,844.77 that were reasonably incurred in furtherance of the claims on behalf of the Settlement

- 19 -

Class. These expenses are itemized in the Firm Decls., attached as Exhibits E-G to the Joint Decl. These expenses and charges are properly recovered by counsel. *See, e.g.*, *Hanley*, 2020 WL 2517766, at \*6 ("'all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case'" may be recovered); *NetBank*, 2011 WL 13353222, at \*4 ("It has long been held that 'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.'").

The categories of expenses for which Lead Plaintiffs' Counsel seek payment here are the type that are necessarily incurred in litigation and routinely charged to hourly clients, and, therefore, should be paid out of the common fund.[10] There has been no objection to these expenses. In addition, the total number of documents produced in the Action (more than 2.8 million pages) required a system called Relativity, which is a sophisticated database management program for the hosting of documents collected or produced in the litigation. The amount requested for this category reflects charges for the management of the database. Robbins Geller Decl., ¶6(g).

Lead Counsel was also required to travel in connection with the Litigation and thus incurred the related costs of meals, lodging, and transportation. As detailed in the Firm Decls., in connection with the prosecution of this case over the last three-plus years, the firm paid for travel expenses to, among other things, appear before the Court, participate in depositions, and attend an in-person mediation.

Lead Counsel also incurred the costs of computerized research. *See* Robbins Geller Decl., ¶6(f), Saxena White Decl., ¶6(f). It is standard practice for attorneys to use these services to assist them in researching legal and factual issues. These charges are for electronic research and data

---

[10] The largest component of these expenses was devoted to Plaintiffs' experts and consultants; the Robbins Geller and Saxena White Declarations explain how each expert and consultant contributed to Lead Counsel's prosecution of the Litigation. Robbins Geller Decl., ¶6(d), Saxena White Decl., ¶6(c).

retrieval charges provided through vendors such as Courtlink, LexisNexis Products, PACER, Thomson Financial, and Westlaw.  Other expenses that were necessarily incurred in the prosecution of this Litigation include mediation fees, photocopying, and filing and transcripts expenses.  Because these were all necessary expenses incurred by Lead Counsel, they should be paid from the Settlement Fund.  *See, e.g.*, *Loc. 702, I.B. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (approving nearly $1.7 million in expenses); *In re U.S. Steel Consolidated Cases*, No. 2:17-cv-00579, ECF No. 358 at 2 (W.D. Pa. Mar. 21, 2023) (approving award of $2.7 million in expenses at similar stage of litigation).

## IV.    LEAD PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF TIME AND EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4)

Lead Plaintiffs Central Laborers' Pension Fund and Plymouth County Retirement Association request reimbursement of the cost of their time expended in overseeing the Action and working with their counsel to represent the Settlement Class.  As detailed in their declarations, Lead Plaintiffs were actively involved in the prosecution of the Action and spent considerable time in furthering the Settlement Class's interests.  *Health Ins. Innovations*, 2021 WL 1186838, at *1 (approving award to plaintiffs in securities class action settlement as "reasonable, consistent with the incentive awards approved in other class actions in this district, and adequately recognizes his efforts to obtain recovery for the Settlement Class").

Such awards to class representatives are authorized under the PSLRA and routinely awarded. *See* 15 U.S.C. §78u-4(a)(4) (the court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class"); *In re HD Supply Holding, Inc. Sec. Litig.*, 2020 WL 8572953, at *2 (N.D. Ga. July 21, 2020) (awarding lead plaintiffs $8,208.00, $9,855.72 and $9,007.43 pursuant to 15 U.S.C.

- 21 -

§78u-4(a)(4), as "reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class").

## V.    CONCLUSION

The $28,000,000 Settlement of this Action is the culmination of more than three years' worth of diligent work and skillful litigation by Lead Plaintiffs' Counsel.  For their efforts, Lead Plaintiffs' Counsel respectfully request that the Court approve the fee and expense application and enter an order awarding fees of thirty-three percent of the Settlement Amount and payment of expenses of $1,240,844.77, plus interest earned on both amounts at the same rate as earned by the Settlement Fund, and $9,760.25 to Central Laborers' Pension Fund and $8,281.05 to Plymouth County Retirement Association pursuant to 15 U.S.C. §78u-4(a)(4) for reimbursement of their time and expenses incurred in representing the Settlement Class.

DATED:  December 8, 2023                    Respectfully submitted,

GUIN, STOKES & EVANS, LLC
DAVID J. GUIN
TAMMY M. STOKES
DAWN STITH EVANS

                              s/ David J. Guin
                              DAVID J. GUIN

300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)
davidg@gseattorneys.com
tammys@gseattorneys.com
devans@gseattorneys.com

ROGER BEDFORD, ATTORNEY AT LAW, LLC
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)

- 22 -

4883-0122-1012.v2

Local Counsel for Lead Plaintiffs

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
X. JAY ALVAREZ
(admitted *pro hac vice*)
NATHAN R. LINDELL
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jaya@rgrdlaw.com
nlindell@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
MASON G. ROTH
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
bheikkinen@rgrdlaw.com
mroth@rgrdlaw.com

SAXENA WHITE P.A.
STEVEN B. SINGER
(admitted *pro hac vice*)
SARA DILEO (admitted *pro hac vice*)
KYLA GRANT (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
sdileo@saxenawhite.com
kgrant@saxenawhite.com

- 23 -

4883-0122-1012.v2

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
(admitted *pro hac vice*)
LESTER R. HOOKER
(admitted *pro hac vice*)
JONATHAN LAMET
(admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
jwhite@saxenawhite.com
lhooker@saxenawhite.com
jlamet@saxenawhite.com

Lead Counsel for Lead Plaintiffs

CAVANAGH & O'HARA
JOHN T. LONG
(admitted *pro hac vice*)
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)
johnlong@cavanagh-ohara.com

Additional Counsel for Lead Plaintiffs

- 24 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ DAVID J. GUIN
DAVID J. GUIN

300 Richard Arrington Jr. Blvd. N.
Suite 600/Title Bldg.
Birmingham, AL  35203
Telephone: 205/226-2282
205/226-2357 (fax)

Email:  davidg@gseattorneys.com

# Mailing Information for a Case 2:20-cv-00856-RDP Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  jaya@rgrdlaw.com

- **Walter W Bates**
  Bbates@starneslaw.com

- **Roger H Bedford , Jr**
  rogerbedfordattorneyatlawllc@gmail.com

- **Sara M. DiLeo**
  sdileo@saxenawhite.com

- **James Bringhurst Eubank**
  James.Eubank@beasleyallen.com

- **Dawn Stith Evans**
  devans@gseattorneys.com

- **Jay M Ezelle**
  JEzelle@starneslaw.com

- **Janet A Gochman**
  jgochman@stblaw.com

- **Kyla Grant**
  Kgrant@saxenawhite.com

- **Cole Robinson Gresham**
  cgresham@starneslaw.com

- **David J Guin**
  davidg@gseattorneys.com

- **Bailie L Heikkinen**
  bheikkinen@rgrdlaw.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **Jonathan Dov Lamet**
  jlamet@saxenawhite.com

- **Michael R Lasserre**
  mrl@starneslaw.com

- **Nathan R Lindell**
  nlindell@rgrdlaw.com

- **John T Long**
johnlong@cavanagh-ohara.com

- **Carl Jacob Lundqvist**
jacob.lundqvist@stblaw.com

- **Craig Corey Maider**
cmaider@saxenawhite.com

- **Wilson Daniel Miles , III**
dee.miles@beasleyallen.com

- **Mason G Roth**
mroth@rgrdlaw.com

- **Steven B Singer**
ssinger@saxenawhite.com

- **Ellen Gusikoff Stewart**
elleng@rgrdlaw.com

- **Tammy McClendon Stokes**
tammys@gseattorneys.com

- **Joseph E. White**
jwhite@saxenawhite.com

- **Jonathan K Youngwood**
jyoungwood@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)